# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace, *et al.*

| | |
|---|---|
| Mission Towers, | ) |
|  | ) |
| Appellant, | )    Civil Action No. 07-287 |
|  | ) |
| v. | )    Bankruptcy Case No. 01-01139 (JKF) |
|  | )    Bankruptcy Appeal No. AP 07-16 |
| W.R. Grace, *et al.*, | ) |
|  | ) |
| Appellees. | ) |

## Joint Appellants' Brief Filed On Behalf of Forty-Four Claimants[1]
## Whose Claims Were Dismissed by the Bankruptcy Courts' April 17, 2007 Order
## And Memorandum Opinion

---

[1] The 44 appellants are Hotel Captain Cook - Tower # 2 (Claim No. 11110); Baptist Health Medical Center - Little Rock f.k.a. Arkansas Baptist Medical Center (Claim No. 11128); Santa Teresa Medical Office Building (Claim No. 11018); Washington Township Health Care District f.k.a. Washington Hospital (Claim No. 10668); 99 Founders Plaza (Claim No. 10762); Dodge County Hospital (Claim No. 11550); St. Anthony's Regional Hospital & Nursing Home f.k.a. St. Anthony's Hospital & Hospital in Carroll IA (Claim No. 11151); Y.W.C.A. of Greater Des Moines f.k.a. Y.M.C.A. Building (Claim No. 11153); Carson Pirie Scott Store - Store #537 c/o Lakehurst Mall (Claim No. 11555); Palos Community Hospital f.k.a. Palos Hospital (Claim No. 11066); Mission Towers a.k.a. Foxridge Towers Office Building f.k.a. Foxridge Office Building (Claim No. 10516); Abbeville General Hospital f.k.a. Abbeville Hospital (Claim No. 11133); Jordan Hospital, Inc. (Claim No. 11689); University of New England - Westbrook College Campus f.k.a. Webber Hospital (Claim No. 11701); Bethesda Rehabilitation Hospital (Claim No. 10523); Keller Building f.k.a. Albert Keller Memorial Hospital (Claim No. 11384); Pierre Laclede Center No. 1 & 2 f.k.a. Pierce Laclede (Claim No. 10696); St. Joseph's Hill Infirmary Nursing Home (2 Buildings) (Claim No. 10700); First Health Montgomery Memorial Hospital f.k.a. Montgomery Memorial Hospital (Claim No. 10673); New Hanover Regional Medical Center c/o Ms. Copley, New Hanover County Office of the County Attorney f.k.a. New Hanover Memorial Hospital (Claim No. 10672); Nebraska Skilled Nursing and Rehabilitation f.k.a. Medicenters of America (Claim No. 11046); Virtua Health - West Jersey Hospital Voorhees f.k.a. West Jersey Hospital (Claim No. 11226); Virtua West Jersey Hospital Marlton f.k.a. Garden State Hospital (Claim No. 11389); Harry C. Levy Gardens - Housing Authority of the City of Las Vegas (Claim No. 11572); 1199 SEIU f.k.a. 310 West 43rd Street Building (Claim No. 11703); Cayuga County Office Building f.k.a. Cayuga Company Office Building (Claim No. 10947); Friendly Home Nursing Care & Rehabilitation f.k.a. Deaf Hard of Hearing & Speech Impaired (Claim No. 10747); IBM Metro Employees FCU f.k.a. Manufacturers Hanover Trust (Claim No. 10722); Oneida County Office Building c/o Oneida County Department of Law (Claim No. 10767); Schuyler Hospital (Claim No. 11003); Fulton County Health Center (Claim No. 11158); Ohio Savings Plaza f.k.a. Penton Plaza & Park Plaza Investment Tower Job (Claim No. 11179); McKenzie Willamette Medical Center f.k.a. McKenzie Hospital (Claim No. 11262); Manor Oak Two /Also has another bldg. 1001 Brinton Road, Pittsburgh, PA 15221 (Claim No. 10789); Panda Prints f.k.a. Lehigh Tile/Marble Warehouse (Claim No. 11257); Scottish Rite Cathedral (Claim No. 11200); St. Luke's Hospital - Bethlehem Campus *Bldg. #2 - St. Luke's Hospital - Allentown Campus, 1736 Hamilton Blvd. Allentown, PA 18104 (Claim No. 10998); Titusville Area Hospital f.k.a. Titusville Hospital / Farrell Hospital (Claim Nos. 11106 / 11144); First Tennessee Bank f.k.a. National Bank Building (Claim Nos. 10533, 11722 and 10534); Gundersen Lutheran Medical Center f.k.a. Lacrosse Lutheran Hospital – Addition (Claim No. 11124); The Homeplace of Mondovi Hospital & The Homeplace of Stanley f.k.a. Victory Medical Center f.k.a. Buffalo Memorial Hospital (Claim No. 11422); St. Mary's Medical Center f.k.a. St. Mary's Hospital (Claim No. 10746).

## Table of Contents

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iv

Statement of Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vii

Issues Presented on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    viii

Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    viii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

    I.  Class Counsel Had Authority to File Appellants' Proofs of    8
    Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    II.  Appellants' Ratification of the Filing of a Proof of Claim    11
    by Class Counsel was Effective . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    III.  Appellants' Should Be Afforded the Opportunity to    17
    Conduct Discovery and Present Evidence That Were "Known
    Creditors" Who Did not Receive Actual Notice of the Bar Date
    Order Prior to the Bar Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

### Table of Cases and Authorities

*Boyce v. Chemical Plastics*, 175 F.2d 839 (8th Cir.1949) — 11

*Chemtron v. Jones,* 72 F.3d 341 (3d Cir.1995) — 14, 17, 18, 19

*City of Greenville v. W. R. Grace & Co.*, 640 F.Supp. 559 (D.S.C.1986) — 1

*City of Greenville v. W. R. Grace & Co.,* 827 F.2d 975 (4th Cir.1987) — 1

*City of Trenton v. Fowler-Thorne Co.*, 57 N.J.Super. 196, 154 A.2d 369 (1959) — 11, 16, 17

*Dade County School District v. Johns-Manville Corp.*, 53 B.R. 346 (S.D.N.Y1985) — 8, 9

*Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994) — 13, 14

*Fogel v. Zell*, 221 F.3d 955 (7th Cir.2000) — 18, 19, 20, 21

*Hager v. Gibson*, 108 F.3d 35, 39-40 (4th Cir.1997) — 13

*In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir.1999) — vii

*In re: FIRSTPLUS Financial, Inc.*, 248 B.R. 60 (N.D.Tex.2000) — 13, 14, 15

*In re: American Reserve Corp.,* 840 F.2d 487 (7th Cir.1988) — 8, 10, 12, 22

*In re: Birting Fisheries*, 92 F.3d 939 (9th Cir.1996) — 10

*In re: Charter Co.,* 876 F.2d 866 (11th Cir.1989) — 10

*In re: Chicago, Milwaukee, St. Paul & Pacific R.R.,* 974 F.2d 775 (7th Cir.1992) — 18

*In Re: Eastern Supply Co.*, 267 F.2d 776 (3d Cir.1959) — 12, 13

*In Re: Garner*, 246 B.R. 617 (BAP 9thCir.2000) — 10

*In re: Kaiser Group International, Inc.,* 278 B.R. 58 (D.Del.2002) — 10

*In re: Savage Industries*, 43 F.3d 714 (1st Cir.1994) — 18

*In re: Standard Metals Corp.*, 817 F.2d 625 (10th Cir.1987) — 8, 9

*In re: Standard Metals Corp.*, 839 F.2d 1383 (10th Cir.1987) — 8

*In Re: Telegroup, Inc.*, 281 F.3d 133 (3d Cir.2002) — vii

*In re: Trebol Motors Dist. Corp.*, 220 B.R. 500 (BAP 1st Cir.1998) — 10

*In re: United Companies Financial*, 276 F.R. 368 (D.Del.2002) — 10

*In re: Whitaker*, 882 F.2d 791 (3d Cir.1989) — 10

*Lewis v. Vogelstein*, 699 A.2d 327 (Del.Ch.1997) — 11

*Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) — 18, 21

*Packer Associates v. Johnstone*, 1 B.R. 286 (E.D.Pa.1979) — 11

*Pioneer Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) — 14

*Rakestraw v. Rodriges*, 8 Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401 (1972) — 12

*Reid v. White Motor Co.*, 886 F.2d 1462 (6th Cir.1989) — 10

*SEI v. Norton Company*, 631 F.Supp. 497 (E.D.Pa.1986) — 15, 16

*Strader v. Haley*, 216 Minn. 315, 12 N.W.2d 608, 150 A.L.R. 970 (1943) — 12

*Tulsa Professional Collection Service, Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565(1988) — 19

*Wilson v. Valley Electric Membership Corp.,* 141 B.R. 309 (E.D.La.1992) — 10

*Zeese v. Siegel's Estate*, 534 P.2d 85 (Utah 1975) — 12

11 U.S.C. §§101(10) — 20

11 U.S.C. §301 — 20

3 Am.Jur.2d Agency §198                    12

Rule 2019, Fed.R.Bankr.P.                  11

Rule 7023, Fed.R.Bankr.P.                  10

S.C.Code Anno. §15-5-150.                   1

## Statement of Appellate Jurisdiction

This District Court has jurisdiction over this appeal of a final Order [Doc. No. 15210] and Memorandum Opinion [Doc. No. 15209] of the Bankruptcy Court for the District of Delaware, entered April 17, 2007, expunging the Proofs of Claim of the forty-four joint appellants pursuant to 28 U.S.C. §158(a)(1).

### Questions Presented On Appeal

1.     Did the Bankruptcy Court err in expunging appellants' asbestos property damage claims on the basis that a putative class counsel did not have authority to file the claim on behalf of the claimant who was a member of the putative class?

2.     Did the Bankruptcy Court err in expunging the appellants' asbestos property damage claims on the basis that the appellants were precluded as a matter of law from ratifying a timely proof of claim filed on its behalf by putative class counsel of a class that included the claimant, even where the claimant/class member had received no direct or actual notice of the bar date from the Debtors?

3.     Did the Bankruptcy Court err in expunging the appellants' asbestos property damage claims without an evidentiary hearing or without making specific findings of fact as to when the claimant received actual notice of the bar date?

### Standard of Review

The issues presented in this appeal are purely legal and thus, the appropriate standard of review is *de novo*. *In Re: Telegroup, Inc.*, 281 F.3d 133 (3d Cir.2002)("As the relevant facts are undisputed, this appeal presents a pure question of law, which we review *de novo*."); *citing, In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir.1999).

**Statement of the Case**

The Debtors ("W. R. Grace & Co."), were involved in the manufacture of asbestos-containing surfacing treatment from 1938 through 1978 (*See,* 55 FR 5144, §28, February 13, 1990), and have been a defendant in asbestos property damage litigation since the early 1980's. *See, City of Greenville v. W. R. Grace & Co.*, 640 F.Supp. 559 (D.S.C.1986), *aff'd*, 827 F.2d 975 (4th Cir.1987).  On December 23, 1992, Anderson Memorial Hospital filed a Class Action against Grace and a number of other former manufacturers of asbestos-containing surfacing materials on behalf of

> all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains asbestos-containing surfacing materials.

[Docket No. 10001, at Exhibit G].[2]  The parties litigated the putative class action in State and Federal Court for over eight years prior to the Debtors' Chapter 11 Petition.  Among the many things that occurred during the course of that litigation, two are significant for this appeal.

The first occurred in 1994 when the South Carolina circuit court issued an order striking out-of-state class members from the Anderson Complaint based upon the South Carolina "Door Closing Statute." (S.C.Code Anno. §15-5-150).  [Id, at p. 12-13].  In 1995, the Court denied reconsideration of that order.  [Id].  Because that order did not conclude the case, it was not immediately appealable under South Carolina law.  [Id].  Anderson could only reserve its position for appeal at the conclusion of the case before

---

[2] The Anderson Class excluded (1) any public and private elementary school within the Class Action, *In Re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984), *aff'd in part and vacated in part*, 789 F. 2d 996 (3rd Cir. 1986), *cert. denied*, 479 U.S. 852, 915 (1986); (2) any public and private college or university within the Class Action, *Central Wesleyan College v. W.R. Grace & Co.*, C/A No. 2:87-1860-8 (D.S.C.); (3) any commercial building leased in any part to the United States Government on or after May 30, 1986, within the Class Action, *Prince George Center, Inc. v. United States Gypsum Company, et al.*, C/A No. 5388 (Phil. C.P. Court); or (4) any building owned by Federal or State Government.

1

the circuit court. [Id, at p. 13]. Until that appeal could be resolved, based upon both

legal authorities and a opinion from a class action ethics expert, Anderson and its counsel

were under a fiduciary duty to all absent class members to take steps to preserve known

claims held by out-of-state class members, even after the litigation was stayed by the

Debtors' Bankruptcy. [Id, p. 14].

    The second significant event that occurred in the Anderson litigation prior to the

Debtors' Bankruptcy Petition was that the South Carolina circuit court (based upon the

threat of the Debtors' bankruptcy petition) entered an *ex parte* order conditionally

certifying a state-wide asbestos property-damage action against Grace on February 9,

2001. [Id, at Exhibit H]. At the time the February 9, 2001 Order was entered,

Anderson's class certification motion had been pending for over three (3) years and the

parties were five (5) months removed from a two day evidentiary hearing on class

certification. [Id, at pp. 7-10]. Resolution of the certification motion had been

substantially delayed by the Debtors' repeated requests to amend the class certification

scheduling order and its requests for briefing after the hearing. [Id, at p. 9]. The Debtors

were subsequently provided the opportunity to fully brief the propriety of the certification

order and were given a hearing as well. [Id]. At the close of briefing and after the

hearing, the South Carolina circuit court kept the certification order in effect. [Id].

Grace filed its Chapter 11 petition on April 2, 2001 before any notice to the class could

issue.

    After the Debtors had filed for Bankruptcy, they eventually sought to impose a

claims bar date. The Bankruptcy Court partially agreed, and entered an Order setting a

bar date of March 31, 2003 for traditional asbestos-property damage claimants, but not

other asbestos claimants. [Doc. No. 1960]. The Order adopted in large part the Debtors'
Notice Plan, but did not contemplate that the Debtors provide direct notice to buildings or
building owners with asbestos property damage claims who could be identified through
the Debtors' sales records and documents relating to the asbestos-containing surfacing
materials formerly manufactured by the Debtors. [Doc. No. 10014, pp. 2-5]. The
Debtors later conceded that no effort had been made to identify asbestos-property damage
claimants from its sales records, but argued that such an effort would have been
"unreasonable." [Doc. 11574, pp. 2-5].

As class representative, Anderson, and class counsel, Speights & Runyan, sought
to fulfill their fiduciary duties to absent class members by filing both a Class Proof of
Claim and Proof of Claim forms for each claimant/class member it could identify through
the Debtors' sales records. [Doc. No. 9067, at p. 4]. Before the bar date, Anderson,
through its counsel, filed Proof of Claim forms and attempted to contact and notify
hundreds of claimant/class members identified in the Debtors' sales records, including
each of the forty-four appellants, of the Grace Bankruptcy proceedings. [Doc. No. 9607,
p. 4]. Each of the forty-four appellants provided express written authority for Speights &
Runyan to represent it in the Grace Bankruptcy proceedings, although the written
authority provided was either undated or dated after the March 31, 2003 bar date. [Doc.
No. 15209].

In June and July of 2005, the Debtors requested a waiver from Delaware
Bankruptcy Local Rule 3007-1 to file its Thirteenth Omnibus Objections which sought to
challenge every Proof of Claim filed by Speights & Runyan in the Grace Bankruptcy as
"unauthorized" and sought to depose counsel for Speights & Runyan. [Doc. Nos. 9008,

8908 and 8909]. Speights & Runyan consented to the waiver, objected to the depositions

of its counsel and instead, offered to enter a stipulation regarding the source of its

authority and agreed to "tee up" the issue of its authority for judicial determination.

These matters were heard by the Bankruptcy Court on August 29, 2005 and a consent

Order was entered by the Court on September 22, 2005. [Doc. No. 9501]. Pursuant to

the Order, Speights & Runyan was to categorize all of its asbestos property damage

claims based, *inter alia*, upon the authority by which it had filed the claims. [Id.] These

categories included

> (iii) PD Claims filed by Speights & Runyan for which Speights & Runyan relies
> on the *Anderson Memorial Hospital Case* as its sole authority to file such Claims;
> . . .
> (vi) a list of all pending claims filed by Speights & Runyan for which the claimant
> has provided express written authorization to file the claim and a copy of the
> document or, if redacted, the portion of the document that contains such proof of
> express written authority.

[Id]. Neither the Debtors' objection nor the Order addressed the issue of when "express

written authority" had been obtained.

Simultaneously, Grace also filed its Fifteenth Omnibus Objections to Property

Damage claims which raised substantive legal and factual objections to these claims.

[Doc. No. 9315].

On September 21, in anticipation of the Court's entry of the consent Order,

Speights & Runyan identified one thousand nine-hundred and twenty-three Proofs of

Claim for which it had obtained "express written authority" and produced copies of

documents evidencing that authority. Each of the forty-four appellants was identified as

having provided Speights & Runyan authority to file Proofs of Claim, and evidence of

their "express written authority" was provided.

Additionally, on October 21, 2005, Anderson, through its counsel, filed a Motion for Class Certification under Rules 9014 and 7023, Fed.R.Bankr.P seeking to certify an asbestos property damage class that included all of the claimant/class members for which it had filed Proofs of Claim, including the forty-four appellants involved in this appeal. [Doc. No. 10014].  Anderson also sought discovery, through a Rule 30(b)(6) notice of deposition and document request, of what information Grace had available to it from its business records so that it could have given direct notice of the bar order to these claimants. [Doc. No. 13077, p. 258].  The purpose of this discovery was to determine "what records Grace had which would enable it to give direct notice to property damage building owners who have Grace's product in their buildings." [Id].  On August 21, 2006, the Bankruptcy Court granted the Debtors' Motion to Quash and refused to allow Anderson or its counsel to obtain this discovery, though no written order was entered. [Id, at pp. 283-284].

On November 11, 2005, the Bankruptcy Court entered a scheduling Order setting hearing dates and a briefing schedule for portions of the Debtors' Thirteenth and Fifteenth Omnibus Objections.  [Doc. No. 11035].  This schedule was amended by Order dated December 19, 2005 and the Debtors' remaining "authority objections" under the Thirteenth Omnibus Objection were set to be heard beginning January 24, 2006 through January 26, 2006.  [Doc. No. 11408].

Pursuant to these scheduling orders, the Debtors filed a Reply Memorandum on December 22, 2006 in which it argued for the first time that the forty-four appellants' claims should be barred if the "express written authority" with respect to that claim were not specifically dated prior to the March 31, 2003 bar date. [Doc. No. 11428, at pp. 18-

19]. On January 20, 2006, Speights & Runyan filed its Sur-reply arguing that there were no requirements under the Bankruptcy Code requiring class counsel to have "express written authority" to file a Proof of Claim in a subsequent Bankruptcy Proceeding, and that, in any event, the filing of Proof of Claim forms had been expressly ratified by the forty-four appellants. [Doc. No. 11594]. On January 24, 2006, the eve of the scheduled hearing, the Debtors filed another Reply Memorandum, responding with the argument that unless each of the forty-four appellants ratified the Proof of Claim form before the expiration of the bar date, then their claims were barred by the Bar Date Order. [Doc. No. 11621].

The issue was heard by the Bankruptcy Court on January 25, 2006. [Doc. No. 11729, pp. 20-40]. At the hearing, counsel for Anderson made the following argument:

> Counsel: Now we are left with several buckets of claims with several different factual situations. Grace doesn't dispute it. I don't dispute it. There are some claims that there was oral authority, which I – as far as I understand the cases, is sufficient, but the written authority came later. There are probably some cases like the Anderson group of 600 that later gave authority. There are written authorities which are of course dealing with e-mails, etcetera, etcetera, and we can, if we have to, sit down and go through those now less than one hundred claims one by one and try to figure out, you know, what's the proper disposition.
>
> I suggest, Your Honor, there are two legal issues that will take care of this and could take care of everything left on authority. The first legal issues [sic] is the legal issue of ratification which Ms. Browdy just referred to. If our clients could, in fact, ratify – we're dealing now almost entirely of claimants who retained us but retained us after the bar date, and if those clients could do so and ratify the earlier filing of the claim form, okay, that subset – and again some gave authority before. That takes care of the situation they criticize the most.
>
> * * *
>
> The second way that it goes away, also . . . if there's class certification that resolves these issues, too, because they would be in the class, and we wouldn't have that.

[Doc. No. 11729, pp. 27-28; 34]. In response to this argument, the Court Ordered additional briefing on the ratification issue, reserving the class certification and claim specific factual determination for later. [Id, p. 35-36].

After receiving additional briefs, the issue of ratification was again argued at the August 21, 2006 Omnibus Hearing at which time the court took that legal issue under advisement. [Doc. No. 13077, pp. 222-246]. As has been the Bankruptcy Court's rule that evidentiary hearings would not be allowed during Omnibus Hearings, the presentation to the Court on August 21, 2006 was limited to the threshold legal issue of ratification and claim specific evidence was not presented or argued.

On April 17, 2007, the Bankruptcy Court issued its Order and Memorandum Opinion disallowing and expunging the claims of the forty-four appellants without conducting the claim by claim evidentiary review contemplated at the January 25, 2006 hearing or allowing discovery to determine "what records Grace had which would enable it to give direct notice to property damage building owners who have Grace's product in their buildings." [Doc. Nos. 13077, p. 258, 15209, 15210]. The forty-four claimants subsequently filed notices of appeal.

**Argument**

**I.    Class Counsel Had Authority to File Appellants' Proofs of Claim.**

It is undisputed that the Proof of Claim forms filed by Anderson and its counsel on behalf of the forty-four appellants were timely and preceded the bar date of March 31, 2003. However, in disallowing and expunging the claims of the forty-four appellants, the Bankruptcy Court held that these original filings were "unauthorized." This was error.

As class representative, Anderson had authority to file class proofs of claim on behalf of absent class members. *In re: American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988), although courts have not always class claims under Bankruptcy rules. In *Johns-Manville*, the very first asbestos bankruptcy, the Creditor's Committee for Asbestos-Related Property Damage School Claimants attempted to file a class claim on behalf of the primary and secondary schools nationwide in order to protect the property damage claims of some 37,500 schools. Upon the objection of the debtor, the court dismissed the class proof of claim finding that the Schools Committee had not asserted that it had received the authority to act as agent for any of the putative class members and that §501 excluded class proofs of claim. *Dade County School District v. Johns-Manville Corp.*, 53 B.R. 346 (S.D.N.Y1985).

The first circuit court to address the issue of class proofs agreed with the approach taken in *Johns-Manville*. In *In re: Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *vac'd on other grounds*, 839 F.2d 1383 (10th Cir.1987), the Tenth Circuit panel held that class proofs of claim "violate the statutory scheme of the [Bankruptcy] Act and the Rules." *Id.* Furthermore, the court found that a "class representative cannot be considered the authorized agent of all the creditors in a putative class" and that "consent to being a

8

member of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." *Id.*

The Tenth Circuit later vacated this opinion on reconsideration finding that the class of bondholders the class representative sought to represent were "known creditors" whose address was "reasonably ascertainable." 839 F.2d 1383.[3] The court concluded that it was error for the bankruptcy court and the district court not to require individual notice and an opportunity to file individual proofs of claim under to these "known creditors" and reversed, noting that the "bankruptcy court had a responsibility under the Act, the rules, and as a court of equity to give all creditors an opportunity to present their claims in the proceedings. In view of the disposition of this appeal it is not necessary to consider the class action claims issue." *Id.*

Shortly thereafter, in *In re: American Reserve*, 840 F.2d 487 (7th Cir.1988), the Seventh Circuit came to the opposite conclusion and held that class proofs of claim were permissible in bankruptcy. Specifically, the court in *American Reserve* considered whether the class representatives in a pre-petition uncertified (or putative) class action against the Debtor had authority to file class proofs of claim in the bankruptcy. In reaching the conclusion that they could, the court found that class actions were especially appropriate in bankruptcy, noting that (1) "some of the earliest class suits had been brought as creditors' bills that preceded the 1898 [Bankruptcy] Code", (2) "the bankruptcy code authorizes some filings by representatives" including creditors' agents (which is not specifically enumerated in §501); (3) if class proofs of claim were not authorized then Rule 7023, Fed. R. Bankr. P. would be meaningless. *Id.* The court went on to conclude that

---

[3] See Argument Sec. III, *infra.*

9

Section 501 does not interfere with filing by agents. The representative in a class action is an agent for the missing. Not every effort to represent a class will succeed; the representative is an agent only if the class is certified. Putative agents keep the case alive pending the decision on certification. If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim; the putative agent never obtains "authorized agent" status. If the court certifies the class, however, the self-appointed agent has become "authorized", and the original filing is effective for the whole class (the principals). It follows that there may be class proofs of claims in bankruptcy.

Id (citations omitted).

Since *American Reserve,* every circuit court or bankruptcy appellate panel to address the issue of class proofs of claim has agreed. *See, In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989); *Reid v. White Motor Co.*, 886 F.2d 1462 (6th Cir.1989) (allowing class proofs of claim but rejecting a proof of claim submitted by class counsel as unauthorized because the attorney was not a member of the class he sought to represent);[4] *In re: Birting Fisheries*, 92 F.3d 939 (9th Cir.1996); *In re: Trebol Motors Dist. Corp.*, 220 B.R. 500 (BAP 1st Cir.1998). Furthermore, class proofs of claim have been explicitly permitted in the District of Delaware. *In re: Kaiser Group International, Inc.*, 278 B.R. 58 (D.Del.2002) (Walrath, J) (citing *In re: Whitaker*, 882 F.2d 791, 793, n.1 (3d Cir.1989) as an acknowledgement by the Third Circuit of class proofs of claim in bankruptcy); *In re: United Companies Financial*, 276 F.R. 368 (D.Del.2002) (the "vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding"). Accordingly, there is ample support in the case law for the proposition that

---

[4] Without debating the logic of this reasoning in light of the general bankruptcy rule that proofs of claim signed the attorney for a party are deemed authorized, *see, In re: Garner*, 246 B.R. 617 (BAP 9th Cir.2000), Speights & Runyan holds a Power of Attorney for Anderson Memorial Hospital who is clearly a member of the class it seeks to represent in these proceedings. [Doc. No. 10001, Exhibit A]. However, even if it did not, other courts have held that a class proof of claim filed by the attorney for the class representative are valid and authorized under the Bankruptcy Code. *Wilson v. Valley Electric Membership Corp.*, 141 B.R. 309 (E.D.La.1992) (wherein Judge Sear, former chair of the Advisor Committee on Bankruptcy Rules, held that the class attorney was not only authorized to execute class proofs of claim, but that that the class attorney was not required to file a verified statement pursuant to Rule 2019, Fed. R. Bankr. P.).

Speights & Runyan, as class counsel and as the holder of Power of Attorney from

Anderson Memorial Hospital, was authorized and had authority to file Proof of Claim

forms on behalf of absent class members.  Accordingly, the Bankruptcy Court's holding

that the timely filed Proof of Claim forms were unauthorized of the forty-four appellants

was error.

> II.    **Appellants' Ratification of the Filing of a Proof of Claim by Class**
>        **Counsel was Effective.**

In its Order disallowing and expunging the claims of the forty-four appellants, the

Bankruptcy Court held that, while ratification is a valid legal concept, the ratification by

the forty-four appellants of the timely filed Proof of Claim forms could only be effective

if ratified prior to the expiration of the March 31, 2003 bar date.  This ruling was also in

error.

It is a general rule of agency and black letter law that "ratification results when a

principal affirms a previous unauthorized act by his agent. . . . In essence, ratification by

a principal of his agent's unauthorized act is equivalent to the agent having that particular

authority from the beginning."  *Packer Associates v. Johnstone*, 1 B.R. 286

(E.D.Pa.1979); *Boyce v. Chemical Plastics*, 175 F.2d 839 (8th Cir.1949) (citations

omitted); *Lewis v. Vogelstein*, 699 A.2d 327 (Del.Ch.1997); *City of Trenton v. Fowler-*

*Thorne Company*, 57 N.J.Super. 196, 154 A.2d 369 (1959).  Further, and in contrast to

the ruling of the Bankruptcy Court below, it matters not if the "agent" and the person on

whose behalf the agent is acting had any prior relationship.[5] *Rakestraw v. Rodriges*, 8

---

[5] The existence of a "prior relationship" is satisfied in any event in this case because of the 1992 Class
Action filed by Anderson.  As the court recognized in *American Reserve*,

> the representative in a class action is an agent for the missing. . . .  If the bankruptcy judge denies
> the request to certify a class, then each creditor must file an individual proof of claim;  the putative

Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401 (1972); *Strader v. Haley*, 216 Minn. 315, 12

N.W.2d 608, 150 A.L.R. 970 (1943); *Zeese v. Siegel's Estate*, 534 P.2d 85 (Utah 1975).

More fully stated,

> If one not assuming to act for himself does an act for or in the name of
> another upon an assumption of authority to act as the agent of such other,
> even though without any precedent authority whatever, and if the person
> in whose name the act was performed subsequently ratifies or adopts what
> has been so done, the ratification relates back and supplies original
> authority to do the act. It is equivalent to, or a substitute for, and has the
> effect of curing the absence of, original authority and relates back to the
> time when the unauthorized act was done. **Even though the act may
> have been done without any precedent authority whatsoever,
> ratification creates the relationship of principal and agent.**

3 Am.Jur.2d Agency §198 (citations omitted – emphasis supplied).

The Third Circuit has held that ratification an unauthorized filing of a bankruptcy

petition can be ratified and that ratification relates back to original filing. *In Re: Eastern

Supply Co.*, 267 F.2d 776 (3d Cir.1959). In *Eastern Supply,* the appellant sought

dismissal of a bankruptcy petition, in part, because the attorney who signed the petition

did not have authority from the debtors until after the petition had been signed and filed.

In rejecting this argument, the Third Circuit noted,

> the general rule that the ratification of an act purported to be done for a
> principal by an agent is treated as effective at the time the the act was done.
> In other words, to talk technical even though fictitious language, the
> ratification 'relates back' in time to the date of the act by the agent. We
> have no direct authority saying that this is applicable to bankruptcy
> petitions but in the absence of something to indicate to the contrary, the
> general principle is applicable.

267 F.2d at 778.

---

> agent never obtains "authorized agent" status. If the court certifies the class, however, the self-
> appointed agent has become "authorized", and the original filing is effective for the whole class
> (the principals). It follows that there may be class proofs of claims in bankruptcy.

840 F.2d at 493.

Other Circuits have followed suit.  In *Hager*, the Fourth Circuit panel held that "the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally."  The ratification was held to relate back to the original petition date.  *Hager v. Gibson*, 108 F.3d 35, 39-40 (4th Cir.1997).

In *Boyce*, the Eighth Circuit held that the filing of a bankruptcy petition on behalf of a corporation at the direction of the executive committee of the corporation without the approval of the board of directors or the shareholders was nevertheless valid where the board and shareholders subsequently ratified the action.  In reaching this conclusion, the court recognized, "[i]t is settled law that 'the unauthorized bringing of an action may . . . be ratified by the person in whose name it was brought so as to sustain the action from the beginning."  175 F.2d at 842.

In contrast to these authorities which allow ratification of bankruptcy petitions to relate back to the original filing, the Bankruptcy Court relied in part upon *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994) and  *In re: FIRSTPLUS Finacial, Inc.*, 248 B.R. 60 (N.D.Tex.2000).

*FEC* is inapposite.  In that case, the Federal Election Commission, in its own name, filed a Petition for Certiorari to the United States Supreme Court for review of an adverse decision from the D. C. Court of Appeals.  Such Petitions must be filed within 90 days of the entry of the judgment below and this time requirement is jurisdictional.  513 U.S. at 90.  The Supreme Court, *sua sponte*, ordered the United States Solicitor General to file a brief to address whether or not the Federal Election Commission had statutory authority to represent itself before the United States Supreme Court.  *Id.*  The Solicitor

General filed its response concluding that there was no statutory authority for the Federal Election Commission to file the Petition, but that the Solicitor General had subsequently authorized the filing by letter dated several months beyond the expiration of the 90 day jurisdictional deadline. *Id.* The Supreme Court rejecting the Solicitor General's attempt to ratify the filing of the Petition, holding that the ratification of the Solicitor General could not cure the jurisdictional defect of the Petition.

The ratification urged by the forty-four appellants here is quite different. Compared to the strict jurisdictional requirements of the Supreme Court, the filing of a Proof of Claim pursuant to a bar order is subject to much greater flexibility and equity. For instance, late filed Proof of Claims in Chapter 11 cases may be equitably allowed by Bankruptcy Courts upon a showing of "excusable neglect." *See, Pioneer Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Post bar date claims are also permitted if a claimants can show that it was a "known creditor" who did not receive "actual notice" of the bar order. *Chemetron v. Jones,* 72 F.3d 341 (3d Cir.1995). This flexibility is in stark contrast to the strict jurisdictional mandates of the United States Supreme Court.

Moreover, careful reading of *FIRSTPLUS* reveals that its holding actually supports express retroactive ratification of a proof of claim by a claimant. The issue in *FIRSTPLUS* was whether that court would recognize the holding *In Re: American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988), to wit: the filing of a class proof of claim by class counsel was deemed authorized if the Court later granted class certification. The court in *FIRSTPLUS* disagreed with the Seventh Circuit's holding, reasoning that "ratification by court is not an option because the bankruptcy court is not the principal."

14

248 B.R. at 69. However, the court did not stop there. It went on to properly recognize that

> the creditors whom the putative class representative purports to represent are the principals, in **whom the power to ratify such an act vests.** The court may not stand in the shoes of the creditor-principals and ratify the putative agent's act of filing a class proof of claim."

*Id* (emphasis supplied). Accordingly, *FIRSTPLUS* expressly recognizes that creditor-principals have the power and ability to ratify the filing of a class proof of claim by putative class counsel. Of course, that is exactly what the forty-four appellants did in this case.

Additionally, district courts in this circuit have applied *implicit* ratification to bind a principal, even though the purported agent was a stranger to the principal at the time the acts occurred. Perhaps the most compelling example of how the acts of an attorney, unknown to and unauthorized by the principal, can be ratified and retroactively binding on the principal can be seen in *SEI v. Norton Company*, 631 F.Supp. 497 (E.D.Pa.1986). In *SEI*, the plaintiff sued a limited partnership. Three weeks before trial, the plaintiff amended its complaint to add individual partners who were alleged to have been general partners. One of the individual partners added to the suit was a Mr. van Putten. Without Mr. Van Putten's knowledge or consent, the attorney for the defendant purported to accept service of the amended complaint for Mr. van Putten and filed an answer on Mr. van Putten's behalf. After taking these actions, the attorney for the partnership sent a copy of the amended complaint and answer to Mr. van Putten who then forwarded it to his own counsel in New York. Three weeks later, the case was called to trial. On the third day of trial, Mr. van Putten's New York counsel appeared in court and unsuccessfully challenged the service of the amended complaint on Mr. van Putten.

15

After the jury returned a verdict for the Plaintiff, Mr. van Putten's authorized attorneys moved to set aside the verdict on the basis that the defendant's trial counsel was not authorized to represent Mr. van Putten. *Id.*

In denying the motion to set aside the verdict, the court held that van Putten's actual knowledge of defense counsel's acceptance of service and entry of an appearance on his behalf, coupled with the three week delay in raising the issues with the court, amounted to ratification of the unauthorized actions of defense counsel. The court held, "'An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it.' An affirmance of an unauthorized act can be inferred from the principal's silence, **even though the purported agent was theretofore a stranger to the principal**, whom 'according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent.'" 631 F.Supp. at 502 (emphasis supplied – citations omitted). If implicit ratification of actions done by a person unauthorized and unknown to the principal can bind a principal to a jury verdict in excess of $200,000, then surely subsequent express ratification by a bankruptcy claimant under the circumstances of this case is sufficient.

In *City of Trenton v. Fowler-Thorne Co.*, 57 N.J.Super. 196, 154 A.2d 369 (1959), a New Jersey appellate court applied ratification in similar circumstances. In that case, a single commissioner of the City had caused a lawsuit to be filed. The trial court held that because the commissioner acted without approval of the city commission, the suit was unauthorized. Moreover, even though the filing of the suit had later been ratified by the commission, the ratification had not occurred until after the statute of limitations had expired. Nevertheless, the appellate court cited the general principle that "a principal's

16

ratification of an agents unauthorized act will validate the act from its inception unless such validation will impair 'intervening rights' of third persons. . . . This rule has been applied to validate the unauthorized commencement of a legal proceeding, the holdings being that ratification cures the defect in the original action so that it may proceed as if it had been properly authorized in the first instance." 154 A.2d at 373 (citations omitted). Moreover, the court went on to hold that the ratification related back to the original filing date, making the filing of the suit timely. Accordingly, the Bankruptcy Court's ruling that the ratification of the forty-four appellants could not relate back to the original Proof of Claim was error.

> **III.    Appellants' Should Be Afforded the Opportunity to Conduct Discovery and Present Evidence That Were "Known Creditors" Who Did not Receive Actual Notice of the Bar Date Order Prior to the Bar Date.**

The Bankruptcy Court's finding that the bar date was the absolute cut-off for appellants to ratify the pre-bar date Proof of Claim filings of Anderson presupposes that the appellants are absolutely barred from asserting any claim on their own behalf after the bar date. This was error.

The Third Circuit has clearly recognized that post-bar date claims are permitted if a claimant can show that it was a "known creditor" who did not receive "actual notice" of the bar order. *Chemtron v. Jones,* 72 F.3d 341 (3d Cir.1995). In the case below, Anderson, as class representative, attempted to obtain evidence through discovery from the Debtors that would have determined whether or not the forty-four appellants were "known creditors." This discovery was quashed by the Bankruptcy Court. [Doc. No. 13077, pp. 283-284]. This error was compounded when the Bankruptcy Court

disallowed and expunged these forty-four claims on the threshold issue of ratification without conducting the further proceedings it clearly contemplated at the January 25, 2006 hearing which would have provided the forty-four claimants the opportunity to make an evidentiary record. [Doc. No. 11729, pp. 35-36]. Because the forty-four appellants have been denied the opportunity to establish that they were "known creditors" who did not receive "actual notice" of the bar order, this case should be remanded for further proceedings.

"Th[e] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . But when notice is a person's due, process which is a mere gesture is not due process." *Id,* 339 U.S. at 315, 70 S.Ct. at 657. Thus, in the bankruptcy context, any "known creditor" entitled to notice whose name and address are reasonably ascertainable, is entitled to have the notice sent directly to them. *Chemtron v. Jones,* 72 F.3d 341 (3d Cir.1995); *Fogel v. Zell,* 221 F.3d 955 (7th Cir.2000); *In re: Chicago, Milwaukee, St. Paul & Pacific R.R.,* 974 F.2d 775 (7th Cir.1992); *In re: Savage Industries,* 43 F.3d 714 (1st Cir.1994). A "known creditor" is one whose name and address can be readily ascertained by the debtor, "making it feasible to send the creditor the notice directly and not force him to read the fine print in the *Wall Street Journal.*" *Fogel v. Zell, supra* at 963; *Tulsa Professional Collection Service, Inc.*

*v. Pope,* 485 U.S.. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988); *cited in,*

*Chemetron v. Jones, supra* at 346 ("a 'known' creditor is one whose identity is either

known or 'reasonably ascertainable by the debtor'").

Each of the forty-four appellants were ascertainable from a reasonable review of

Grace's business records. These records were gathered by the Debtors beginning in

1982, cataloged and stored by its lawyers in a document repository. [Doc. No. 11627,

Exhibit 1]. Segregated in the repository are Grace's sales records for its asbestos-

containing products. These records include thousands of purchase orders and billing

invoices for asbestos-containing products (mostly Monokote) which provide the physical

address and building owner where Grace's products were delivered. Additionally, Grace

maintained at least two separate catalogs of the documents in the repository including one

computerized catalog prepared by its counsel to assist in locating documents. [Id, at

Exhibit 2, pp. 139, 140)]. Furthermore, Grace's repository custodian testified that Grace

created and maintained customer lists containing the names and addresses of Grace's

customers for asbestos-containing products. [It, at Exhibit 2, p. 149]. In sum, the names

and addresses of hundreds of buildings where Grace's asbestos-containing products were

installed are readily accessible and have been maintained by Grace in its litigation

repository by its asbestos property damage attorneys for over twenty years.

As the Third Circuit has held, "A creditor's identity is 'reasonably ascertainable'

if that creditor can be identified through 'reasonably diligent efforts.'" *Chemetron,*

*supra,* at 346. Though the Third Circuit specifically declined to limit the "ascertainable

standard" to an examination solely of the debtor's own books and records, more may not

required here. A review of Grace's own records, even without the benefit of its catalogs

and computerized databases, reveals the names and addresses of hundreds of buildings in which Grace's asbestos-containing products were installed.

Moreover, it was known to the Debtors that these building owners with Grace asbestos-containing products in them could have "contingent tort claims" against them. *See, Fogel v.* Zell, *supra,* at pp. 960 – 962 (discussion of "contingent tort claims" and "future tort claims" and whether they fit the definitions of a "creditor" who has a "claim" pursuant to 11 U.S.C. §§101(10) and 301). Grace has faced asbestos property damage suits for more than twenty years. Included in the hundreds of asbestos property damage cases filed against it are numerous class actions, which involved tens of thousands of buildings. Moreover, because the federal NESHAP regulations require the separate and controlled removal of Grace's asbestos-containing products from buildings, at the latest when they are ultimately demolished, Grace's liability for asbestos property damage claims may be more aptly described as future tort liability rather than contingent tort liability, depending upon the facts of each case.

In any event, Grace clearly knew that the remaining, unlitigated buildings, including the forty-four appellants could have (or would have) claims against Grace, subject to whatever defenses might also be available. As the Seventh Circuit recognized in *Fogel v. Zell,* recognition of contingent tort liabilities in bankruptcy proceedings might be complicated "by requiring that provision be made in the allocation of assets of the debtor's estate for future claims that might be difficult to value, but it might be a price worth paying to eliminate an arbitrary difference in treatment." *Fogel v. Zell, supra*, at

961. Constitutionally appropriate notice always includes direct mail notice where feasible.[6] *Mullane v. Central Hanover Bank & Trust, supra.*

Moreover, "[t]he issue is not whether the creditor is known to the [debtor] but whether the creditor's name and address can be readily ascertained by the [debtor], making it feasible send the creditor the notice directly and not force him to read the fine print in the *Wall Street Journal.*" *Fogel v. Zell*, supra, at p. 963. Or, as stated so eloquently in *Mullane*,

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type interested in the back pages of a newspaper, and if makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.
>
> * * *
>
> As to known present beneficiaries of known place of residence, . . ., notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

*Id*, 339 U.S. at 315 – 318; 70 S.Ct. at 658 – 659.

---

[6] "Were feasible" was described by the Seventh Circuit to mean where the cost of direct notice does not "eat up" the debtors estate or where the claims are so small they do not justify the expense. *Fogel v. Zell*, supra, at 963. Neither was the case here.

These forty-four appellants should have, but did not, receive direct notice of the bar date. These forty-four appellants (through their class representative) should have, but were not permitted, to take discovery and make an evidentiary showing in this regard. This case should be remanded with instructions to permit them to do so.

## Conclusion

These forty-four appellants have had their claims disallowed despite the undisputed fact that their claims were filed prior to the expiration of the bar date. These claims were authorized under the Bankruptcy Code pursuant to *American Reserve* and it progeny. Moreover, even if the claims were not authorized, each of these appellants individually ratified the Proof of Claim filed on its behalf and desire to participate in this Bankruptcy. They should be allowed to do so. But if they are to be disallowed and expunged because their ratification did not occur until after the bar date, due process and equity should have afforded them the opportunity to gather and present evidence to make the case for presenting a late filed claim.

DATED: July 16, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:        loizides@loizides.com

- and -

22

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC  29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace, *et al.*

| | |
|---|---|
| Mission Towers, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| W.R. Grace, *et al.*, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Civil Action No. 07-287

Bankruptcy Case No. 01-01139 (JKF)
Bankruptcy Appeal No. AP 07-16

## CERTIFICATE OF SERVICE

I, Christopher D. Loizides, hereby certify that on the 16th day of July, 2007, I did

cause to be served copies of the foregoing **Joint Appellants' Brief** on the parties listed

and in the manner indicated on the attached service list.

DATED: July 16, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

## SERVICE LIST

## VIA HAND DELIVERY

Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
919 No. Market Street, 17th Floor
Wilmington, DE  19801

## VIA FIRST CLASS MAIL

Teresa K. D. Currier, Esquire
Buchanan Ingersoll & Rooney, PC
1000 West Street, Suite 1410
Wilmington, DE  19801

Marla R. Eskin, Esquire
Campbell & Levine, LLC
800 N. King Street, Suite 300
Wilmington, DE  19801

Michael R. Lastowski, Esquire
Duane Morris, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE  19801

David M. Klauder, Esquire
Office of the United States Trustee
844 N. King Street, Room 2207
Wilmington, DE  19801

Theodore Tacconelli, Esquire
Ferry Joseph & Pearce, P.A.
824 Market Street, Suite 904
P. O. Box 1351
Wilmington, DE  19899-1351

John C. Phillips, Jr., Esquire
Phillips, Goldman & Spence, P.A.
1200 No. Broom Street
Wilmington, DE  19806

Lewis Kruger, Esquire
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Thomas M. Mayer, Esquire
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036

Roger Frankel, Esquire
Richard H. Wyron, Esquire
The Washington Harbour
Orrick, Herrington & Sutcliffe LLP
3050 K Street, N.W., Suite 200
Washington, DC 20007-5135

Scott Baena, Esquire
Bilzin Sumberg Baena Price & Axelrod, LLP
First Union Financial Center
200 So. Biscayne Bl., Suite 2500
Miami, FL 33131-2336

David B. Siegel
W.R. Grace & Company
7500 Grace Drive
Columbia, MD 21044

**VIA FACSIMILE AND FIRST CLASS MAIL**

David M. Bernick, Esquire
Janet S. Baer, Esquire
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601
*Fax:     (312) 861-2200*

James J. Restivo, Jr., Esquire
Douglas E. Cameron, Esquire
Traci S. Rea, Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
*Fax:     (412) 288-3063*