# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                )

)        **Civil Action No. 07-287 RLB**

**W. R. GRACE & CO.**, *et al.*,           )        **Hon. Ronald L. Buckwalter**

)        **United States District Judge**

*Debtors.*        )        **(by special designation)**

)        **Bankruptcy Case No. 01-01139 (JKF)**

### On Appeal From The United States Bankruptcy Court
### For The District of Delaware (Fitzgerald, J.)

### APPELLEES' BRIEF

David M. Bernick, P.C.
Lisa G. Esayian
Samuel L. Blatnick
Michael T. Dierkes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois   60601
(312) 861-2000

Laura Davis Jones
James E. O'Neill
PACHULSKI STANG ZIEHL YOUNG JONES
    & WEINTRAUB, LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware   19899-8705
(302) 652-4100

August 20, 2007

## TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

STATEMENT OF JURISDICTION.......................................................................3

STATEMENT OF THE ISSUES............................................................................3

STANDARD OF REVIEW .....................................................................................3

STATEMENT OF THE CASE AND THE FACTS ...............................................4

    I.     The Bar Date and Notice Program.........................................................4

    II.    The Claims Filed By S&R. ......................................................................6

    III.   The Debtors Worked To Determine Whether S&R Represented These
         Claimants. ..............................................................................................7

    IV.   The Bankruptcy Court Found That S&R Was Not Authorized Before The
         Bar Date To Represent These Claimants. ...............................................9

    V.    The *Anderson Memorial* South Carolina Litigation. ...........................10

ARGUMENT...........................................................................................................11

    I.     The Bankruptcy Court Correctly Determined That Unauthorized Claims
         Could Not Be Ratified After The Bar Date. ..........................................11

    II.    S&R's Role As Counsel To The Named Plaintiff In An Uncertified South
         Carolina  Putative Class Action Did Not Afford S&R Authority To File
         These Claims...........................................................................................16

    III.   Claimants' Knowledge Of The Bar Date Is Irrelevant To This Appeal. ...............20

         A.     S&R Had Two Years To Obtain Actual Authority, But Did Not.............20

         B.     S&R, Not Grace, Failed To Notify Its Putative Claimants........................20

         C.     Publication Notice Was Proper for these Claimants, Who Were
              "Unknown" Creditors. .............................................................................22

CONCLUSION .......................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Anderson Memorial Hospital v. W.R. Grace Co., et al.,*
  Civ. No. 92-CP-25-279 (S.C. Comm. Pleas 1992) .................................. 8, 9, 10, 11, 17, 18

*Boyce v. Chemical Plastics,*
  175 F.2d 839 (8th Cir. 1949) ........................................................................................ 15

*Brunson v. American Koyo Bearings,*
  623 S.E.2d 870 (S.C. App. 2005) .................................................................................. 19

*Chemetron Corp. v. Jones,*
  72 F.3d 341 (3d Cir. 1995)...................................................................................... 23, 24

*City of Trenton v. Fowler-Thorne Co.,*
  154 A.2d 369 (N.J. Super. 1959) .................................................................................. 13

*Cook v. Tullis,*
  85 U.S. 332 (1874).......................................................................................................... 12

*Doe v. Howe,*
  607 S.E.2d 354 (S.C. App. 2004) .................................................................................. 19

*Farmer v. Monsanto Corp.,*
  579 S.E.2d 325 (S.C. 2003) ...................................................................................... 18, 19

*Federal Election Com'n v. NRA Political Victory Fund,*
  513 U.S. 88 (1994)............................................................................................ 1, 12, 13, 15

*In re Amdura Corp.,*
  170 B.R. 445 (D. Colo. 1994)........................................................................................ 17

*In re American Reserve Corp.,*
  840 F.2d 487 (7th Cir. 1988) .............................................................................. 17, 18, 19

*In re Broadband Wireless Intern. Corp.,*
  295 B.R. 140 (10th Cir. BAP 2003)............................................................................... 11

*In re Charter Co.,*
  125 B.R. 650 (M.D. Fla. 1991) ...................................................................................... 24

*In re Charter Co.,*
  876 F.2d 866 (11th Cir. 1989) ........................................................................................ 19

*In re Continental Airlines,*
  177 B.R. 475 (D. Del. 1993).............................................................................................. 3

*In re Eastern Supply Co.*,
    267 F.2d 776 (3d Cir. 1959) ............................................................................. 15

*In re Electronic Theatre Restaurants Corp.*,
    57 B.R. 147 (Bankr. N.D. Ohio 1986) ........................................................... 17

*In re FIRSTPLUS Financial Inc.*,
    248 B.R. 60 (Bankr. N.D. Tex. 2000) ...................................................... 15, 16

*In re Kolstad*,
    928 F.2d 171 (5th Cir. 1991) .......................................................................... 14

*In re Standard Metals*,
    817 F.2d 625 (10th Cir. 1987) ................................................................. 17, 18

*In re Udell*,
    454 F.3d 180 (3d Cir. 2006) ............................................................................ 3

*Lebovitz v. Mudd*,
    347 S.E.2d 94 (S.C. 1986) ............................................................................. 19

*Mellon Bank, N.A. v. Metro Communications, Inc.*,
    945 F.2d 635 (3d Cir. 1991) ............................................................................ 4

*Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente*,
    125 F.3d 9 (1st Cir. 1997) .............................................................................. 14

*Murphy v. Owens-Corning Fiberglass Corp.*,
    550 S.E.2d 589 (S.C. App. 2001) .................................................................. 19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ....................................................................................... 21

*Pacificorp and VanCott Bagley Cornwall & McCarthy v. W. R. Grace, et. al*,
    No. 05-764, 2006 WL 2375371 (D. Del. Aug. 16, 2006) ............................ 2, 6

*Reid v. White Motor Co.*,
    886 F.2d 1462 (6th Cir. 1989) ................................................................. 18, 19

*SEI Corp. v. Norton Co.*,
    631 F. Supp. 497 (E.D. Pa. 1986) ................................................................. 16

*Town of Nasewaupee v. City of Sturgeon Bay*,
    251 N.W.2d 845 (Wis. 1977) ......................................................................... 13

**Statutes**

28 U.S.C. § 158(a) ................................................................................................. 3

S.C. Code Ann. §14-3-330(2) ........................................................................ 19

S.C. Code Ann. §15-5-150 ........................................................................... 18

**Other Authorities**

Restatement (Second) of Agency § 90 (1958) ........................................... 1, 13

**Rules**

Federal Rule Bankruptcy Procedure 3001(b) .......................................... 11, 16

# INTRODUCTION

Appellants ask this Court to overturn a Bankruptcy Court order disallowing forty-four[1]

Asbestos Property Damage Claims[2] for which the law firm of Speights & Runyan ("S&R") did

not have authority from the actual claimants to file claims on their behalf at any time before the

Debtors' claims Bar Date.  In so arguing, Appellants seek now -- more than four years after the

March 2003 Bar Date -- to undo several prior Bankruptcy Court rulings that were never

appealed.

Appellants argue that undated and post-Bar Date authorizations from the claimants

ratified S&R's authority to file these claims.  The Bankruptcy Court properly rejected this

argument because it runs afoul of the well-established rule that an agent cannot ratify a

principal's unauthorized acts when an intervening deadline occurs between the time of the

unauthorized act and the alleged ratification.  Mem. Op. at 5 [Dkt. 1]; *Federal Election Com'n v.*

*NRA Political Victory Fund*, 513 U.S. 88 (1994); *see also* Restatement (Second) of Agency § 90

(1958) ("If an act to be effective in creating a right against another or to deprive him of a right

must be performed before a specific time, an affirmance is not effective against the other unless

made before such time.").

In an attempt to show that somehow it did have timely authority, S&R argues it was

authorized to file these claims because S&R was counsel to a putative class representative in an

uncertified South Carolina state court class action.  Appellant Br. at 8-11 [Dkt. 7].  However, this

---

[1] The Bankruptcy Court's April 17, 2007 Order expunged seventy-one unauthorized claims. Between the original briefing on the authority issues for to these claims in December 2005 and January 2006 and entry of the April 17, 2007 Order, twenty-seven of the claims were either expunged by the Bankruptcy Court on other grounds or withdrawn by S&R. Accordingly, forty-four claims remain at issue.

[2] The Bankruptcy Court set March 31, 2003 as the deadline for asserting all Asbestos Property Damage Claims, defined in the Bar Date Order as claims "relat[ing], for example, to the cost of removal, diminution of property value or economic loss caused by asbestos in products manufactured by the Debtors or from vermiculite mined, milled, or processed by the Debtors." [Bnkr. Dkt. 2382].

argument is not properly part of this appeal. In 2005, the Bankruptcy Court found that even if S&R is putative counsel to some class, its status as class counsel did not give it authorization to file individual claims on behalf of putative class members. [Bnkr. Dkt. 11080]. Because S&R did not appeal this ruling, it is law of the case. Therefore, in the opinion being appealed here, the Bankruptcy Court did not address the already-resolved issue of S&R lacking authority to file individual claims premised on its role as putative class counsel, and S&R's attempt to seek an appeal on this issue is almost two years late. Moreover, even if this Court were to consider this unappealed issue, S&R is not putative class counsel to these forty-four claimants because (i) they are not South Carolina residents, (ii) the putative class included only South Carolina claimants, and (iii) no class was certified as to Grace.

Appellants lastly argue that the Bankruptcy Court should have performed a factual inquiry to determine whether each claimant received actual notice of the Bar Date, presumably to show that Appellants *would have* filed timely proofs of claim. But the time to appeal the Debtors' publication notice program was in 2003. This Court has already determined that the notice program was sufficient and Grace did not have to provide actual notice to potential creditors not known to Grace and not discoverable through the exercise of "reasonable diligence." *See Pacificorp and VanCott Bagley Cornwall & McCarthy v. W. R. Grace, et. al.*, No. 05-764, 2006 WL 2375371 (D. Del. Aug. 16, 2006).

The Bankruptcy Court also correctly found that allowing Appellants' late authorizations would eviscerate the finality of the Bar Date and prejudice the Debtors and creditors who timely filed claims. Mem. Op. at 6 [Dkt. 1]. Moreover, prior to the April 2007 opinion at issue here, the Bankruptcy Court correctly determined that S&R is responsible if any potential claimants did not receive notice of the Bar Date. Having successfully lobbied the Court to eliminate

requirements from the Bar Date Order that would have ensured actual notice to Appellants, S&R is estopped from arguing that Grace should have provided such notice.

For these reasons, the Bankruptcy Court's order disallowing the forty-four unauthorized claims was not clearly erroneous, and this Court should deny these appeals.

## STATEMENT OF JURISDICTION

Grace does not contest S&R's statement of appellate jurisdiction.

## STATEMENT OF THE ISSUES

1.      Whether the Bankruptcy Court correctly disallowed forty-four asbestos property damage claims filed by a law firm, S&R, that filed the claims without authorization from the claimants.

2.      Whether the Bankruptcy Court erred in not finding that S&R's role as counsel for a putative named plaintiff in an uncertified South Carolina state court class action gave S&R authority to file proofs of claim in this Chapter 11 case on behalf of non-South Carolina claimants.

3.      Whether the Bankruptcy Court correctly decided that S&R was responsible if any property damage claimants did not receive actual notice of the Bar Date and, therefore, there was no need for factual inquiry concerning notice to Appellants.

## STANDARD OF REVIEW

This Court sits as an appellate court for the purpose of reviewing final orders in bankruptcy cases, 28 U.S.C. § 158(a), and uses the same standards of review as a court of appeals would use. *See In re Udell*, 454 F.3d 180, 183 (3d Cir. 2006). The standard of review to be applied turns on the nature of the issues presented on appeal. *See In re Continental Airlines*, 177 B.R. 475, 478 (D. Del. 1993); *see also* Fed. R. Bankr. P. 8013. The Bankruptcy Court's factual findings are accorded great deference and are not disturbed unless clearly erroneous. *Id.*

3

Legal conclusions are reviewed de novo. *Udell*, 454 F.3d at 183. For mixed questions of law, the Bankruptcy Court's finding of "historical or narrative facts" must not be disturbed unless clearly erroneous, and its "choice and interpretation of legal precepts and its application of those precepts to the historical facts" are reviewed de novo. *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991).

**STATEMENT OF THE CASE AND THE FACTS**

The Appellees are debtors in possession in consolidated chapter 11 cases filed on April 2, 2001. The Bankruptcy Court's April 22, 2002 Bar Date Order required asbestos property damage claims against the Debtors to be filed by March 31, 2003 (the "Bar Date"). [Bnkr. Dkt. 1963]. An April 17, 2007 Bankruptcy Court order disallowed and expunged forty-four claims signed and filed by S&R lawyers but not authorized by claimants before the Bar Date. This Appeal challenges the April 2007 order and purports to challenge earlier, unappealed Bankruptcy Court rulings.

## I. The Bar Date and Notice Program.

In order to assess its asbestos liabilities and work towards confirmation of a plan of reorganization, in June of 2001, Grace moved for a bar date for asbestos property damage claims. [Bnkr. Dkt. 586]. Many parties strongly objected, and for the next year, the Debtors worked with the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), the Bankruptcy Court, and other interested parties to resolve the PD Committee's opposition and to craft the Bar Date Notice, the Notice Package and a comprehensive system of publication (the "Bar Date Notice Program").

During this process, the Bankruptcy Court considered the scope of the Bar Date Notice Package and Program on several occasions and determined that the Debtors' program of actual notice to more than 200,000 known asbestos claimants, coupled with an extensive print media

4

notice program, was broad and more than adequate to reach all potential asbestos property damage claimants. [*See, e.g.*, Bnkr. Dkt. 2057, 4/22/02 Tr. at 97]. On April 22, 2002, after nearly ten months of negotiations and multiple hearings, the Bankruptcy Court (i) entered the Bar Date Order, which set March 31, 2003 as the bar date for filing Asbestos Property Damage Claims; (ii) approved the Asbestos Property Damage Proof of Claim Form; and (iii) approved the Notice Program. [Bnkr. Dkt. 1963]. The Bar Date Order specifically affirmed and approved the notice program:

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar Date . . . [*Id.* at 5].

To ensure notice to as many potential claimants as possible, the Bar Date Order originally required all counsel of record for Asbestos PD Claimants to either (i) certify that they had contacted or attempted to contact their clients, provided them with the Bar Date Package and advised them regarding their rights to assert a claim against the Debtors before the Bar Date; or (ii) provide Grace with the current names and addresses of their clients who may have claims against Grace, so that Grace could send them the Bar Date Notice Package. [*Id.*].

On June 21, 2002, the PD Committee -- of which Daniel Speights of the S&R law firm serves as co-chair -- filed a motion asking the Bankruptcy Court to abate this requirement. [Bnkr. Dkt. 2274]. When the Committee argued its motion, the Court recognized that the property damage claimants' counsel, including S&R, were taking on the risk that their claimants might not receive actual notice:

> THE COURT:  Well, look. They -- the attorneys are the ones at risk, not the Debtor, because if they blow a bar date and their clients don't file one, the excusable neglect standard is undoubtedly not going to say, 'I didn't get the notice from my attorney,' and undoubtedly I'm going to say, 'too bad, your attorneys got

the notice, go contact their malpractice carrier.'  I think it's for the attorneys' safety. [Bnkr. Dkt. 2502, 7/22/02 Tr. at 103-104].

The PD Committee responded: "The attorneys don't need the safety net . . . And so we would ask that they be relieved of that obligation. [*Id.*]. Accordingly, in September 2002, the Bankruptcy Court abated this requirement from the Bar Date Order. [Bnkr. Dkt. 2745 at 2]. In light of this record, the Bankruptcy Court recognized that Grace did all that it could to provide actual notice to asbestos property damage claimants. [Bnkr. Dkt. 11707, 1/26/06 Tr. at 76].

    Neither S&R nor anyone else appealed the orders approving the Notice Program.[3]  The orders became final and represent law of the case. And, this Court has already affirmed the sufficiency of Grace's notice program. *Pacificorp*, 2006 WL 2375371 at *15 ("[T]he Court finds that the debtor in this case adequately published notice of the bar date. [Grace] spent a considerable amount of money publishing the notice in both national and local publications, and Appellants have not challenged the sufficiency of the publication notice.").

## II.    The Claims Filed By S&R.

    In stark contrast to the seven asbestos property damage lawsuits that were pending against Grace when it filed for bankruptcy relief in 2001, approximately 4,300 PD proofs of claim were filed in response to the Bar Date. S&R, a law firm which had pursued putative class actions against Grace and other manufacturers of asbestos containing materials for many years, filed almost 3,000 individual claims as well as two putative class proofs of claim. Not a single S&R-filed claim was personally signed by an actual claimant. Instead, attorney Dan Speights signed almost 2,000 S&R claims, and another S&R attorney signed approximately 1,000 claims. Not surprisingly, the "Verified Statement of Multiple Representation" that S&R filed as required

---

[3] In May 2002, the PD Committee sought leave to appeal an earlier version of the Bar Date Order, because that version established a Bar Date only for PD Claims, but not for asbestos personal injury or ZAI claims. However, the PD Committee's May 2002 Motion for Leave to Appeal did not challenge the Notice Program.

by both the Federal Rules of Bankruptcy Procedure and a specific Bankruptcy Court order demonstrated many problems with these 3,000 claims. [Bnkr. Dkt. 7221]. Among the principal problems, hundreds of entries on S&R's Verified Rule 2019 Statement, including the forty-four claims at issue in this Appeal, were filed on behalf of "buildings" or "job sites" with no indication that any real client existed or authorized the claim.

Further, in December 2004 when Debtors served counsel of record for PD claims with notices of intent to object to their claims, the Debtors received a letter from counsel for a labor union that owned a building in Ohio. The union's counsel wrote that S&R-filed Claim No. 11591 "had been *filed on behalf of my client without authorization*." [Bnkr. Dkt. 9311, Ex. Q] (italics added). The union's counsel complained that he had filed a proper PD claim, No. 2785, on the union's behalf and that S&R's claim for the same building was unauthorized. The Debtors received similar responses from other claimants.

**III.    The Debtors Worked To Determine Whether S&R Represented These Claimants.**

After unsuccessful attempts at consensual resolution of the problems with the S&R claims, Debtors objected to S&R's claims and served discovery targeted to uncover whether S&R actually represented the claimants whose buildings were at issue. The Debtors subpoenaed several supposed S&R "clients" for depositions of persons knowledgeable as to whether the claimant had (i) retained S&R to represent it in the Debtors' bankruptcy case and (ii) authorized S&R to file a proof of claim on its behalf. [Bnkr. Dkt. 8645]. In response, many of these "claimants" wrote to Grace that S&R did *not* have authority to represent them. *See, e.g.*, American Medical Association affidavit [Bnkr. Dkt. 9311, Ex. A]; Harvard Vanguard Medical Associates letter and affidavit [Bnkr. Dkt. 9311, Ex. C]; Maryland Casualty Company letter [Bnkr. Dkt. 9311, Ex. E].

7

While the Debtors filed objections and pursued discovery to determine whether S&R had authority to file these thousands of claims, S&R began to "withdraw" hundreds of these claims.

Against this backdrop, on August 29, 2005, the Bankruptcy Court directed S&R to produce evidence that it had authority, as of the Bar Date, to file proofs of claim on behalf of claimants for whom S&R previously failed to demonstrate authorization. [Bnkr. Dkt. 9349, 8/29/05 Tr. at 73-78; Bnkr. Dkt. 9501]. On September 1, 2005, Debtors filed their Thirteenth Omnibus Objection to almost 3,000 claims for which S&R lacked authority to represent the claimants, including the forty-four claims at issue here. [Bnkr. Dkt. 9311]. On September 23, 2005, the Bankruptcy Court ordered S&R to provide the Debtors with evidence pertaining to the status of S&R's claims, including "a list of all pending claims filed by Speights & Runyan for which the claimant has provided express written authorization to file the claim and a copy of the document or, if redacted, the portion of the document that contains such proof of express written authority." [Bnkr. Dkt. 9501].

For the forty-four claims at issue in this appeal, even after months of discovery, objections, and the September 23, 2005 Bankruptcy Court order, S&R was unable to produce any evidence of pre-Bar Date claimant authority. Instead, S&R relied on (i) supposed authority as counsel to the named plaintiff in a putative state court class action and (ii) claimant authorization forms that were either undated or dated after the Bar Date.

During an October 31, 2005 hearing, the Bankruptcy Court dealt with the first of these arguments and determined that S&R's role as counsel to a putative named plaintiff in a South Carolina suit titled *Anderson Memorial Hospital v. W. R. Grace & Co., et al.,* did not give S&R authority to file individual claims on behalf of claimants in Grace's bankruptcy proceeding. The Court ordered S&R to withdraw 552 non-South Carolina claims and 52 South Carolina claims

8

filed by S&R with no basis for its purported authority except its role as putative "Anderson

Memorial" class counsel. [Bnkr. Dkt. 11025, 10/31/05 Tr. at 90]. In November 2005, the Court

expunged these claims. [Bnkr. Dkt. 11080]. S&R did not appeal. The *Anderson Memorial*

matter is discussed further in Section V below.

      The Bankruptcy Court heard oral arguments about S&R's lack of authorization to file the

forty-four claims at issue during hearings in January 2006. After a multi-month stay of the

Grace bankruptcy proceeding, during the August 21, 2006 hearing, the Bankruptcy Court

determined that, to the extent that S&R purports to represent Appellants, S&R had a duty to

notify Appellants of the Bar Date:

> THE COURT: There shouldn't be a potential problem. If you have an obligation
> on behalf of the Anderson putative class to file proofs of claim of their behalf
> because of this ethics opinion, why don't you at least have the same obligation to
> notify them of the fact that there's a bar date and to make sure that they get the
> information concerning the bar date and actual notice. I mean, the contradiction, I
> think, is you can't on the one hand tell me you have a fiduciary duty to go part
> way but not the whole way with respect to the notice issue. [Bnkr. Dkt. 13077,
> 8/21/06 Tr. at 255].

*     *     *

> THE COURT: The bigger problem, Mr. Speights, I don't know how on the one
> hand you tell me you've got an ethical obligation to file a proof of claim on behalf
> of somebody and at the same time, don't have an ethical obligation to notify them
> that there's a bar date that means that they have to file a proof of claim. [*Id.* at
> 259].

During the same hearing, the Bankruptcy Court considered and took under advisement the issue

of whether the claims filed by S&R without pre-Bar Date authority were properly filed. [Bnkr.

Dkt. 13077, 8/21/06 Tr. at 246].

**IV.     The Bankruptcy Court Found That S&R Was Not Authorized Before The Bar Date
To Represent These Claimants.**

      On April 17, 2007, the Bankruptcy Court issued its Order and Memorandum Opinion

finding that S&R's undated and post-Bar Date authorizations did not establish that the claims

9

were properly filed on the Bar Date. Accordingly, the Bankruptcy Court disallowed the forty-four claims at issue in this Appeal. In doing so, the Bankruptcy Court determined that, "as a general matter, unauthorized acts [by a principal] can be ratified or affirmed. However, ratification is not effective when it takes place after a deadline." Mem. Op. at 5 [Dkt. 1]. The Bankruptcy Court further determined that allowing unauthorized claims would subvert the Bar Date's purposes:

> Additionally, allowing claimants to use late ratifications to extend the deadline established by the bar date compromises the underlying purposes of a proof of claim bar date. The practical, commercial rationale underlying the need for a bar date are [sic] manifest. The creditors and bankruptcy court must be able to rely on a fixed financial position of the debtor in order to evaluate intelligently the proposed plan of reorganization for plan approval or amendment purpose [sic]. After initiating a carefully orchestrated plan of reorganization, the untimely interjection of an unanticipated claim, particularly a relatively large one, can destroy the fragile balance struck by all the interested parties in the plan. [*Id.* at 7] (internal citations and quotations omitted).

## V.    The Anderson Memorial South Carolina Litigation.

S&R's appeal in part is based on its supposed authority as counsel for a putative class of asbestos property damage claimants. In 1992, S&R, a South Carolina law firm, filed *Anderson Memorial Hospital v. W.R. Grace et al.*, in the South Carolina Court of Common Pleas, seeking certification of a nationwide class of private building owners. [Bnkr. Dkt. 9546 at Ex. 6]. After the state court struck non-residents' class claims under the state's "door-closing" statute [*Id.* at Ex. 7], in 1996, S&R filed a second amended complaint limited to buildings in South Carolina [*Id.* at Ex. 9], which remains operative.

On February 9, 2001, in response to an *ex parte* "Emergency Petition For A Rule To Show Cause Why A Conditional Class Should Not Be Certified Against W.R. Grace" filed by S&R, the South Carolina court conditionally certified the South Carolina class. [*Id.* at Ex. 11]. This conditional order was then superceded by the state court's final order certifying a class of

10

South Carolina building owners in July 2001, after Grace's chapter 11 filing. [*Id.* at Ex. 13].

The South Carolina judge directed Dan Speights that "The Order should specifically state that

the Order affects only the three remaining Defendants, due to the stay as to W.R. Grace." [*Id.* at

Ex. 18]. The text of the final Order shows, the Bankruptcy Court has recognized, and S&R has

admitted, that this final order did not apply to Grace.[4] [Bnkr. Dkt. 13894, 11/20/06 Tr. at 80].

Thus, no *Anderson Memorial* class of any kind was certified as to Grace, and the

operative *Anderson Memorial* state court complaint does not encompass Appellants' claims for

buildings not located in South Carolina.

## ARGUMENT

### I.     The Bankruptcy Court Correctly Determined That Unauthorized Claims Could Not Be Ratified After The Bar Date.

Fed. R. Bankr. P. 3001(b) provides that "A proof of claim shall be executed by the

creditor or the creditor's authorized agent." As the Bankruptcy Court recognized, because Grace

objected to a large number of S&R claims as lacking such authority, and it was necessary for the

Bankruptcy Court to order S&R in September 2005 to provide to Grace "a list of all pending

claims filed by Speights & Runyan for which the claimant has provided express written

authorization to file the claim and a copy of the document or, if redacted, the portion of the

document that contains such proof of express written authority." Mem. Op. at 2 n. 4 [Dkt. 1].

S&R then had the burden of establishing pre-Bar Date authorization for these claims. *See, e.g.,*

*In re Broadband Wireless Intern. Corp.*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (After a party

has objected to a claim, "the creditor [claimant] has the ultimate burden of persuasion as to the

---

[4] "On March 30, 2001, Grace filed for bankruptcy which automatically stayed all further proceedings in this case against Grace." [Bnkr. Dkt. 9546, Ex. 13 at 5].

validity and amount of the claim.") (citations omitted).  For the forty-four claims at issue, S&R did not have pre-Bar Date authority.

Although unauthorized acts generally can be later ratified or affirmed, the Bankruptcy Court correctly determined that such ratifications are not effective if they occur *after a deadline*. Mem. Op. at 5 [Dkt. 1].  The March 2003 Bar Date was, as the Bankruptcy Court found, precisely this type of intervening deadline.  [*Id.* at 5-7].  As the Bankruptcy Court stated, the Supreme Court specifically recognized this principle of agency law in *Federal Election Com'n,* 513 U.S. at 98, where the Court considered whether the Solicitor General's post-deadline authorization of a certiorari petition filed by the Federal Election Commission (which could not request certiorari without the Solicitor General's authorization) could relate back to the filing date.  The Court expressly concluded that a principal's post-deadline authorization does *not* relate back to the date of the unauthorized filing so as to make it timely.  *Id.* at 99.  Thus, the Solicitor General's post-deadline ratification of the Commission's unauthorized petition was ineffective.  *Id.*  Critically, *Federal Election* also involved an attorney-client relationship.

As the Supreme Court recognized, retroactive ratification would grant the solicitor general "unilateral power" to extend the filing deadline for certiorari petitions.  *Id.*  Similarly, if the Bankruptcy Court recognized post-Bar Date authorizations, claimants would have unilateral authority to extend the Bar Date, to the detriment of the Bankruptcy Court, the Debtors and timely claimants.  Such a result would conflict with the finality of a Bar Date and well-established principles of agency law, because the "intervening rights of third persons cannot be defeated by the [post-deadline] ratification."  *Id.* at 98, *quoting Cook v. Tullis*, 85 U.S. 332, 338 (1874).

*Federal Election* is consistent with other cases regarding late-authorized court filings discussed by Appellants. *See, e.g., City of Trenton v. Fowler-Thorne Co.*, 154 A.2d 369 (N.J. Super. 1959); *Town of Nasewaupee v. City of Sturgeon Bay*, 251 N.W.2d 845, 848 (Wis. 1977); *see* Appellants Br. at 16-17 [Dkt. 7]. In *City of Trenton*, the court allowed the city to ratify an unauthorized lawsuit filed by a city commissioner after the statute of limitations had lapsed. The court explicitly noted, however, that this result would have been different if third parties had intervening rights: "a principal's ratification of an agent's unauthorized act will validate the act from its inception unless such validation will impair 'intervening rights' of third persons. . ." 154 A.2d at 373 (emphasis added; internal citation omitted). Similarly, the *Nasewaupee* court refused to recognize ratification of an attorney's unauthorized commencement of a lawsuit, where ratification came after expiration of the statute of limitations and expressly rejected S&R's argument:

> Ordinarily, a subsequent ratification relates back to the time of the original transaction. However, that rule is not applicable *when the rights of others have intervened by the passage of time*. The rule presupposes that the principal who could have acted initially retains that power at the time of the ratification. Such is not the case here.

251 N.W.2d at 848 (emphasis added; internal citation omitted).

This result is consistent with the Restatement (Second) of Agency § 90, which provides "If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." As the comments to Section 90 make clear, "[t]he bringing of an action, or of an appeal, by a purported agent can not be ratified after the cause of action or right to appeal has been terminated by lapse of time." *Id.* at Comment (a).

The Bar Date did exactly this. It terminated the right to bring a claim. The very purpose of a bar date is to "enable a debtor and his creditors to know, reasonably promptly, what parties

are making claims against the estate and in what general amounts," *In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991), and to assure "finality" regarding the universe of claims. *See Mercado-Boneta v. Admin. del Fondo de Compensacion al Paciente*, 125 F.3d 9, 17 (1st Cir. 1997).

Given the finality that a Bar Date is intended to assure, as the Bankruptcy Court found, there are ample reasons why "allowing claimants to use late ratification to extend the deadline established by the bar date compromises the underlying purposes of a proof of claim bar date." Mem. Op. at 7 [Dkt. 1]. Rather than claimants deciding whether to assert claims, attorneys would instead be allowed to file unauthorized "placeholder claims" on behalf of anyone, and then obtain "authorization" any time after the bar date had lapsed. Thus, rather than knowing the universe of claimants <u>on</u> the bar date -- the purpose of a claims bar date -- the debtors and bankruptcy court would instead face a mixed bag of actual claims and "placeholders" filed on behalf of parties that might (or might not) subsequently ratify the unauthorized filings.

Complicating matters further, debtors would not know which "claims" were authorized and which were not yet (and might never be) authorized by the claimants. Proofs of claim are allowed unless they are objected to by the debtor or another interested party. Therefore, under Appellants' proposed rule, proofs of claim could be allowed and considered in the feasibility of a plan of reorganization, even though the claimants have no knowledge of their participation in the chapter 11 and never authorized the claims. And, under Appellants' rule, as happened here, a claimant or authorized agent may file a proof of claim while an unauthorized attorney files a duplicative placeholder claim. And, claimants could submit late claims simply by grasping on to an attorney's improper filings. All of this would undercut the equitable goals of bankruptcy courts, prejudice claimants who complied with the Bar Date, and cause the debtor to waste resources in dealing with claims that should never have been filed.

14

Nothing in Appellants' brief changes the rule that a claim cannot be authorized after a Bar Date. Appellants rely heavily on cases standing for the general principal that an agent may ratify the unauthorized acts of its principal. *See* Appellants Br. at 11-13 [Dkt. 7], *citing to, e.g., In re Eastern Supply Co.*, 267 F.2d 776 (3d Cir. 1959); and *Boyce v. Chemical Plastics*, 175 F.2d 839 (8th Cir. 1949). That is not the issue in this appeal. In fact, the Bankruptcy Court explicitly stated that, "as a general matter, unauthorized acts [by a principal] can be ratified or affirmed." Mem. Op. at 5 [Dkt. 1]. The issue here is whether such ratification may occur after an intervening deadline, where the rights of third parties would be adversely affected. S&R cites no case allowing this.

S&R's attempts to distinguish the cases properly relied on by the Bankruptcy Court are similarly unavailing. S&R argues that the "filing of a Proof of Claim pursuant to a bar order is subject to much greater flexibility and equity" than the certiorari filing requirement in *Federal Election*. Appellants' Br. at 14 [Dkt. 7]. The record in the Debtors' bankruptcy case proves otherwise. Unlike the filing deadline in *Federal Election*, which was a standard deadline not developed for the specific facts and parties in that case, Grace's Bar Date was the product of months of deliberate negotiations and discussions among many parties (including Daniel Speights) and the Bankruptcy Court. The entire Bar Date program was meticulously tailored to meet the specific needs of the parties in this case and memorialized by the Bankruptcy Court in a binding order unchallenged by S&R or Appellants.

Likewise, S&R's description of, and reliance on, *In re FIRSTPLUS Financial Inc.*, 248 B.R. 60 (Bankr. N.D. Tex. 2000), is both misplaced and misleading. *See* Appellants' Br. at 14-15 [Dkt. 7]. *FIRSTPLUS* dealt with whether the filing of a class proof of claim by class counsel would be deemed authorized if the court later certified the class. The court found that the

15

putative representative of the proposed class was not an "authorized agent" with authority to file

a class proof of claim, and, accordingly, the court disallowed the class proof of claim. 248 B.R.

at 68. In reaching this conclusion, the court expressly rejected the position advocated by S&R in

this appeal. The court stated "Rule 3001(b) allows a creditor to decide to file a proof of claim

and to instruct an agent to do so; it does now allow an 'agent' to decide to file a proof of claim

and then inform a creditor after the fact." *Id.* Thus, *FIRSTPLUS* does not in any way support

S&R's position, and the Bankruptcy Court properly relied on it.

Appellants also rely on *SEI Corp. v. Norton Co.*, to support the proposition that a party

who delays in objecting to unauthorized actions by counsel purportedly representing them may

be bound by the attorney's unauthorized acts. 631 F. Supp. 497, 502-03 (E.D. Pa. 1986). But

here, the Bankruptcy Court properly determined that late ratification causes harm to third parties

(*i.e.* the Court, the Debtors and other creditors).

Thus, S&R has failed to provide any reason why the Bankruptcy Court's refusal to allow

post-Bar Date ratification of claims should be overturned.

## II.    S&R's Role As Counsel To The Named Plaintiff In An Uncertified South Carolina Putative Class Action Did Not Afford S&R Authority To File These Claims.

S&R also argues that as "putative class counsel," it was authorized to file these proofs of

claim. Appellants' Br. at 8-11 [Dkt. 7]. The Bankruptcy Court rejected this argument in October

2005, and S&R did not appeal. Therefore, in its April 17, 2007 opinion, the Bankruptcy Court

did not discuss the possibility of S&R being authorized to file individual claims as counsel to a

putative class, and, S&R cannot be permitted to raise this issue in this appeal. But, even if

examined on the merits, this argument fails. A putative class counsel is not the authorized agent

of each creditor in the putative class, and, in any event, S&R was not putative class counsel on

behalf of these forty-four non-South Carolina claimants.

16

In its October 2005 ruling, the Bankruptcy Court correctly determined that at the time of the Bar Date, S&R lacked authority to file individual claims on behalf of purported *Anderson Memorial* class claimants. Accordingly, the Court ordered S&R to withdraw 552 out-of-state claims and 52 in-state, so-called *Anderson Memorial* claims. [Bnkr. Dkt. 11025, 10/31/05 Tr. at 90]. In November 2005, the Court expunged these claims. [Bnkr. Dkt. 11080]. S&R did not appeal. Having already determined this issue, the Bankruptcy Court was correct not to re-examine it or allow S&R to use it as a basis for authority.

Despite this law-of-the case, S&R tries to resuscitate the notion that its role as putative class counsel somehow authorized it to file individual claims on behalf of claimants who did not authorize those claims. This argument fails for two reasons.

*First*, "a class representative cannot be considered the authorized agent of all of the creditors of the putative class." *In re Standard Metals*, 817 F.2d 625, 631 (10th Cir. 1987), *modified on other grounds*, 839 F.2d 1383 (1988).[5] This is because "[a]n agent may file a proof of claim only for those individuals who have expressly authorized the agent to do so. Attempts to file proofs of claim on behalf of individual class members have been rejected where there was no showing that each member of the class had authorized the "agent" to file on his or her behalf." *Id.*, *citing In re Electronic Theatre Restaurants Corp.*, 57 B.R. 147, 148-49 (Bankr. N.D. Ohio 1986).

S&R seeks to circumvent this principle by relying on *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988). The Seventh Circuit held that a bankruptcy court may allow class proofs of claim (a holding never adopted by the Third Circuit), but did not go further and

---

[5] After the 1988 *Standard Metals* opinion, the 10th Circuit issued an unpublished order "stating its opinion in *Standard Metals* was vacated only insofar as it addressed the notice issue." *In re Amdura Corp.*, 170 B.R. 445, 448 (D. Colo. 1994). Thus, the 10th Circuit's 1988 opinion did not affect the statement in its 1987 opinion that "a class representative cannot be considered the authorized agent of all of the creditors of the putative class."

eviscerate Fed. R. Bankr. P. 3001's requirement that a proof of claim be "executed by the creditor or the creditors' authorized agent." Thus, *American Reserve* and its progeny have no effect on Rule 3001's requirement. *See also Reid v. White Motor Co.*, 886 F.2d 1462, 1471-72 (6th Cir. 1989) (affirming bankruptcy court's denial of class treatment; "[i]t is well-settled that consent to being a member or the representative of a class 'in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue,'" *quoting Standard Metals*, 817 F.2d 625 at 631).

*Second*, no *Anderson Memorial* class has ever been certified as to Grace, and thus S&R is not putative class counsel. In 1994, the *Anderson Memorial* court held, pursuant to the "clear mandate" of South Carolina's door closing statute, S.C. Code Ann. §15-5-150, that it had no subject matter jurisdiction over the claims of non-resident putative class members whose buildings were not located in South Carolina. [Bnkr. Dkt. 9546 at Ex. 7, p. 3]. The state court denied S&R's motion for reconsideration [*Id.* at Ex. 8], S&R did not appeal, and in 1996, Anderson Memorial Hospital filed its *Second Amended Class Action Complaint*, which sought certification of a class only of South Carolina claimants. [*Id.* at Ex. 9]. Nine years later, in another S&R case, the South Carolina Supreme Court confirmed that the state's door-closing statute prohibits nonresidents from participating in a class action against a foreign corporation. *Farmer v. Monsanto Corp.*, 579 S.E.2d 325, 328 (S.C. 2003). Thus, the pending *Anderson Memorial* putative class complaint is limited to South Carolina claimants, and the forty-four claims at issue, relating to buildings in other states, are not part of the putative class.

S&R tries to suggest that the state court's "door closing" ruling was not immediately appealable, and, therefore, S&R had a "fiduciary duty to all absent class members to take steps to preserve known claims held by out-of-state class members. . ." Appellants' Br. at 1-2 [Dkt. 7].

18

This is incorrect. Under South Carolina law, certain interlocutory orders are "immediately appealable." *Doe v. Howe*, 607 S.E.2d 354, 356 (S.C. App. 2004); *see also Brunson v. American Koyo Bearings*, 623 S.E.2d 870, 872 (S.C. App. 2005). S.C. Code Ann. §14-3-330(2), in particular, permits immediate appeal of an order "affecting a substantial right when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleading in any action." Thus, Anderson Memorial could have immediately appealed the "door closing" order, but elected not to. *See Murphy v. Owens-Corning Fiberglass Corp.*, 550 S.E.2d 589, 593 (S.C. App. 2001) (order dismissing claims against pursuant to the door closing statute is "directly appealable under Section 14-3-330(2) because it affects a substantial right and strikes out part of a pleading"), *overruled on other grounds* in *Farmer*, 579 S.E.2d 325; *see also Lebovitz v. Mudd*, 347 S.E.2d 94, 96 (S.C. 1986) ("An order granting a Rule 12(b) motion as to one of multiple claims is directly appealable under 14-3-330(2) because it affects a substantial right and strikes out part of a pleading.").

Appellants' cases do not support the conclusion that putative class counsel has authority to file individual claims. Appellants again misapply cases dealing with class proofs of claim, where courts found that counsel to a putative class in a case pending at the time of bankruptcy may file a class proof of claim in a debtor's bankruptcy. *See* Appellants' Br. at 8-10 [Dkt 7], discussing *American Reserve*, 840 F.2d at 493 ("Although we conclude that a representative may file a proof of claim on behalf of a class of similarly-situated persons, this does not necessarily mean that the Huddlestons may represent a class of policyholders. . .); *In re Charter Co.*, 876 F.2d 866, 876 (11th Cir. 1989) ("We hold that a proof of claim filed on behalf of a class of claimants is valid. . ."); *Reid*, 886 F.2d at 1470 (same). The issue in this appeal is not when or

19

whether a bankruptcy court may recognize a class proof of claim,[6] but rather whether counsel to a pre-Chapter 11 putative class action may unilaterally file individual proofs of claim on behalf of parties that were not and could not have been in the putative class.

Having properly found two years ago that S&R's role as putative class counsel did not authorize it to file individual claims, the Bankruptcy Court did not abuse its discretion in refusing to allow S&R to base its authority on its role as counsel to Anderson Memorial.

### III.    Claimants' Knowledge Of The Bar Date Is Irrelevant To This Appeal.

Appellants argue that the Bankruptcy Court erred by not requiring a factual inquiry regarding whether each Appellant actually received notice of the Bar Date. Appellants' Br. at 17-22 [Dkt. 7]. The Bankruptcy Court was well within its discretion, for three reasons.

#### A.    S&R Had Two Years To Obtain Actual Authority, But Did Not.

*First*, as the Bankruptcy Court found, the "Debtors filed their motion for a bar date on June 27, 2001, and the court entered the Bar Date Order on April 22, 2002, establishing March 31, 2003, as the claims bar date. Therefore, Speights had nearly two years between the Bar Date motion and the expiration of the bar date, and eleven months between entry of the Bar Date Order and the expiration of the bar date, during which he could have obtained authority to file the claims." Mem. Op. at 2 n. 5 [Dkt. 1]. Thus, Speights had plenty of time to obtain actual authority from his purported claimants, but did not. In such a situation, there was no reason to examine whether the Debtors notified these claimants.

#### B.    S&R, Not Grace, Failed To Notify Its Putative Claimants.

---

[6] S&R filed two Anderson Memorial class proofs of claim in this Chapter 11, one on behalf of a putative class of South Carolina building owners and one on behalf of putative class of "worldwide" building owners.

*Second*, the Bankruptcy Court determined on multiple occasions that if potential PD claimants received constructive but not actual notice, that is the fault of the PD Committee -- of which Dan Speights is a member and co-chairman -- not of Grace, for two reasons.

The first reason is that the Bar Date Order originally required all counsel of record for Asbestos PD Claimants either to (i) certify that they had contacted or attempted to contact all of their clients, to provide them with the Bar Date Package and advise them of their rights to assert a claim against the Debtors by the Bar Date; or (ii) provide Grace with the clients' names and addresses of clients, so that Grace could mail them the Bar Date Notice Package. [Bnkr. Dkt. 1963]. At the request of the PD Committee, including Dan Speights, the Bankruptcy Court abated this requirement. [Bnkr. Dkt. 2274; Bnkr. Dkt. 2745 at 2]. In doing so, the Bankruptcy Court made it clear that claimants' attorneys were at risk, and, the PD claimants' attorneys accepted that risk. [Bnkr. Dkt. 2502, 7/22/02 Tr. at 103-104].

Because S&R, through the PD Committee, successfully moved the Bankruptcy Court to strike provisions from the Bar Date Order that would have ensured that all of S&R's purported clients received actual notice, the Bankruptcy Court correctly determined that any lapse in notice is attributable to S&R, not Debtors. [Bnkr. Dkt. 11707, 1/26/06 Tr. at 76; Bnkr. Dkt. 13077, 8/21/06 Tr. at 255-257]. Neither S&R nor anyone else appealed the orders approving the Notice Program. The orders became final and represent law of the case. Thus, discovery of the Debtors on this issue would have made no sense.

In addition, having successfully persuaded the Bankruptcy Court to eliminate the requirement that counsel certify they had contacted their clients before the Bar Date, S&R was estopped from pursuing discovery designed to determine whether Appellants were entitled to more notice. *See New Hampshire v. Maine*, 532 U.S. 742, 743, 749 (2001) ("[W]here a party

21

assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he

may not thereafter, simply because his interests have changed, assume a contrary position,

especially if it be to the prejudice of the party who has acquiesced in the position formerly taken

by him . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in

one phase of a case on an argument and then relying on a contradictory argument to prevail in

another phase.") (internal quotations omitted).

The second reason is that the Bankruptcy Court correctly determined that, to the extent

S&R purports to be putative class counsel for Appellants and therefore to have authority to file

individual claims on their behalf, S&R had a duty to notify Appellants of the Bar Date: "If you

have an obligation on behalf of the Anderson putative class to file proofs of claim on their behalf

. . . , why don't you at least have the same obligation to notify them of the fact that there's a bar

date and to make sure that they get the information concerning the bar date and actual notice. I

mean, the contradiction, I think, is you can't on the one hand tell me you have a fiduciary duty to

go part way but not the whole way with respect to the notice issue." [Bnkr. Dkt. 13077, 8/21/06

Tr. at 255]. Thus, the Bankruptcy Court determined S&R is estopped from both relying on its

role as putative class counsel and arguing that Grace, not S&R, should have notified these

claimants of the Bar Date.

### C. Publication Notice Was Proper for these Claimants, Who Were "Unknown" Creditors.

*Third*, the forty-four claimants were "unknown" creditors and, as such, were properly

served through the Debtors' Bankruptcy Court-approved publication notice program. *See*

*Pacificorp*, 2006 WL 2375371 at *10. The claims are for buildings where Grace asbestos-

containing materials allegedly were installed over thirty years ago.[7] In *Pacificorp*, in these Grace

bankruptcy proceedings, this Court addressed issues concerning Grace's notice to current and

former owners of properties to which Grace shipped vermiculite for processing decades ago.

The owners alleged they had not received timely notice of Grace's Bar Date and sought to file

late proofs of claim. In affirming the Bankruptcy Court's denial of their motion to file a late

claim, this Court specifically found Grace had no direct relationship with these claimants and

"did not know the identities of those current and prior owners." *Id.* at \*10 and n. 19. Because

the link between Debtors and the potential claimants was so "highly attenuated," the putative

claimants were unknown claimants, and Grace's publication notice was sufficient. *Id.* at \*10.

Grace did not have an obligation to conduct a search to determine the former and current owners

of approximately thirty sites where Grace asbestos-containing vermiculite was processed. *Id.*

In reaching this conclusion, this Court rejected the argument that current and former

owners were entitled to actual notice, because such a rule would require Grace to "search for

numerous current and prior owners at numerous sites," which exceeds the required "reasonable

diligence." *Id.* This Court properly relied on the Third Circuit's decision in *Chemetron Corp. v.

Jones*, 72 F.3d 341, 348 (3d Cir. 1995)("[c]reditors cannot be required to provide actual notice to

anyone who potentially could have been affected by their actions; such a requirement would

completely vitiate the important goal of prompt and effectual administration and settlement of

debtors' estates.").

The same result is particularly appropriate here. The Debtors would have been required

to conduct searches for thousands of buildings where Grace asbestos containing building

materials might have been installed. The claims were filed in the *names of the buildings*, not in

---

[7] *See* Proofs of Claim for the forty-four claims, at items 32 through 77 at Grace's May 17, 2007 Counter-
Designation of Items to be Included in the Record.

the names of or on behalf of legal entities that are capable of being creditors in this Chapter 11. *See, e.g.*, Claim No. 10516 (filed by S&R for the "Foxridge Office Building"); Claim No. 10534 (filed by S&R for the "First National Bank Building"); Claim No. 10696 (filed by S&R for the "Pierre Laclede Building"). "Reasonable diligence" does not require such a broad search to "to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Chemetron*, 72 F.3d at 346, *quoting In re Charter*, 125 B.R. 650, 654 (M.D. Fla. 1991). And, Debtors ceased manufacturing the products at issue almost thirty years before the Bar Date. In the ensuing decades, buildings were demolished, sold and changed hands, often repeatedly. That is exactly why publication notice, rather than actual notice, is held to be legally adequate for these types of potential claimants.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's opinion should be affirmed.

August 20, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

And

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB, LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Civil Action No. 07-287 (RLB) |
| | ) | Hon. Ronald L. Buckwalter |
| | ) | United States District Judge |
| W. R. GRACE & CO., et al., | ) | (by special designation) |
| | ) | |
| Debtors. | ) | Bankruptcy Case No. 01-01339 (JKF) |

## <u>CERTIFICATE OF SERVICE</u>

I, Laura Davis Jones, hereby certify that on the 20th day of August, 2007, I caused

a copy of the following document to be served on the individuals on the attached service list(s) in

the manner indicated:

**Appellees' Brief**

_____
Laura Davis Jones (Bar No. 2436)

WR Grace FAX Core Group, Speights,
Loizides Service List
Case No. 01-1139 (JKF)
August 20, 2007
Document # 130169
**20 – Facsimile**

*Facsimile 302-426-9947*
Mark T. Hurford, Esquire
Marla Rosoff Eskin, Esquire
Matthew G. Zaleski, III, Esquire
(Counsel for Asbestos Personal Injury
Claimants)

*Facsimile 302-658-6548*
Mark D. Collins, Esquire
(Counsel for The Chase Manhattan Bank)

*Facsimile 312-861-2200*
Janet S. Bear, Esquire
(Counsel to Debtor)

*Facsimile 302-658-6395*
Steven M. Yoder, Esquire
(Local Counsel to DIP Lender)

*Facsimile 302-573-6497*
David Klauder, Esquire
(United States Trustee)

*Facsimile 410-531-4545*
Mark Shelnitz
(W. R. Grace & Co.)

*Facsimile 212-644-6755*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
(Official Committee of Personal Injury
Claimants)

*Facsimile 212-806-6006*
Lewis Kruger, Esquire
(Official Committee of Unsecured
Creditors)

*Facsimile 305-374-7593*
Scott L. Baena, Esquire
(Official Committee of Property Damage
Claimants)

*Facsimile 212-715-8000*
Philip Bentley, Esquire
(Counsel for Equity Committee)

*Facsimile 312-993-9767*
J. Douglas Bacon, Esquire
(Counsel to DIP Lender)

*Facsimile 302-657-4901*
Michael R. Lastowski, Esquire
(Counsel to Official Committee of
Unsecured Creditors)

*Facsimile 973-424-2001*
William S. Katchen, Esquire
(Counsel to the Official Committee of
Unsecured Creditors)

*Facsimile 302-552-4295*
Teresa K.D. Currier, Esquire
(Counsel to the Equity Committee)

*Facsimile 202-429-3301*
Peter Van N. Lockwood, Esquire
Albert G. Lauber, Esquire
Nathan D. Finch, Esquire
Max C. Heerman, Esquire
(Counsel for Asbestos Personal Injury
Claimants)

*Facsimile 302-655-4210*
John C. Phillips, Jr., Esquire
(Counsel to David T. Austern as Future
Claimants' Representative)

*Facsimile 202-339-8500*
Roger Frankel, Esquire
Richard H. Wyron, Esquire
Matthew W. Cheney, Esquire
(Counsel to David T. Austern as Future
Claimants' Representative)

*Facsimile 302-575-1714*
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
(Counsel for Property Damage Claimants)

*Facsimile 803-943-4599*
Daniel A. Speights, Esquire
Marion C. Fairey, Jr., Esquire
(Counsel for various PD Claimants)

*Facsimile 302-654-0728*
Christopher D. Loizides, Esquire
(Counsel for Various PD Claimants)

W. R. Grace Email Core Group, Speights,
Loizides Service List
Case No. 01-1139 (JKF)
Document Number: 130168
20 – Electronic Delivery

(Counsel to Debtors and Debtors in
Possession)
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE 19801

*Electronic Delivery*
*mlastowski@duanemorris.com*
*rriley@duanemorris.com*
(Counsel to Official Committee of
Unsecured Creditors)
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

*Electronic Delivery*
*syoder@bayardfirm.com*
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

*Electronic Delivery*
*meskin@del.camlev.com*
*mhurford@del.camlev.com*
(Local Counsel to Asbestos Claimants)
Marla Eskin, Esquire
Mark T. Hurford
Campbell & Levine
800 North King Street, Suite 300
Wilmington, DE 19801

*Electronic Delivery*
*Collins@RLF.com*
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Electronic Delivery*
*mjoseph@ferryjoseph.com*
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

*Electronic Delivery*
*David.Klauder@usdoj.gov*
(United States Trustee)
David Klauder, Esquire
Office of the United States Trustee
844 King Street, Room 2311
Wilmington, DE 19801

*Electronic Delivery*
*currier@klettrooney.com*
(Equity Committee Counsel)
Teresa K. D. Currier
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

*Electronic Delivery*
*jbaer@kirkland.com*
*dbernick@kirkland.com*
(Counsel to Debtor)
David B. Bernick, P.C.
Janet Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

*Electronic Delivery*
*mark.shelnitz@grace.com*
(W. R. Grace & Co.)
Mark Shelniz
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

*Electronic Delivery*
*lkruger@stroock.com*
*kpasquale@stroock.com*
(Official Committee of Unsecured
Creditors)
Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

*Electronic Delivery*
*ei@capdale.com*
*rct@capdale.com*
(Official Committee of Personal Injury
Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152

*Electronic Delivery*
*sbaena@bilzin.com*
(Official Committee of Property Damage
Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price &
Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

*Electronic Delivery*
*pbentley@kramerlevin.com*
*tmayer@kramerlevin.com*
(Equity Committee Counsel)
Philip Bentley, Esquire
Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

*Electronic Delivery*
*pvnl@capdale.com*
*ndf@capdale.com*
*tws@capdale.com*
*jwd@capdale.com*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

*Electronic Delivery*
*WSKatchen@duanemorris.com*
(Counsel to Official Committee of
Unsecured Creditors)
William S. Katchen, Esquire
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, NJ 07102-3889

*Electronic Delivery*
*carol.hennessey@lw.com*
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

*Electronic Delivery*
*rfrankel@orrick.com*
*rwyron@orrick.com*
*mcheney@orrick.com*
(Counsel to David T. Austern, Future
Claimant's Representative)
Roger Frankel
Richard H. Wyron
Matthew W. Cheney
Orrick Herrington & Sutcliffe LLP
3050 K Street, NW
Washington, DC 20007

*Electronic Delivery*
*jcp@pgslaw.com*
(Counsel to David T. Austern, Future
Claimant's Representative)
Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 North Broom Street
Wilmington, DE 19806

*dspeights@speightsrunyan.com*
Daniel A. Speights, Esquire
Speights & Runyan
(Counsel for various PD Claimants)

*loizides@loizides.com*
Christopher D. Loizides, Esquire
Loizides & Associates
(Counsel for various PD Claimants)