## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | *Civil Action No. 07-287 RLB* |
| | ) | Hon. Ronald L. Buckwalter |
| W. R. GRACE & CO., et al. | ) | United States District Judge |
| | ) | (by special designation) |
| Debtors. | ) | Bankruptcy Case No. 01-01139 (JKF) |

## MOTION FOR LEAVE TO COUNTER-DESIGNATE AN ADDITIONAL ITEM IN THE RECORD ON APPEAL OF THE BANKRUPTCY COURT'S ORDER DISALLOWING 71 UNAUTHORIZED SPEIGHTS & RUNYAN CLAIMS

The above-captioned Debtors, by and through their counsel, in connection with the Appellants' Notices of Appeal (Dkt. Nos. 15308, 15311, 15314, 15316, 15318, 15320, 15322, 15324, 15326, 15328, 15330, 15332, 15334, 15336, 15338, 15340, 15342, 15344, 15346, 15347, 15350, 15352, 15354, 15356, 15358, 15360, 15362, 15364, 15366, 15370, 15373, 15376, 15380, 15384, 15386, 15388, 15391, 15394, 15396, 15398, 15400, 15403, 15407, and 15410) of the Bankruptcy Court's April 17, 2007 Order Expunging 71 Asbestos Property Damage Claims for Failure to Establish Written Authority Prior to the Bar Date (Dkt. No. 15210) and the Memorandum Opinion relating thereto (Dkt. No. 15209), request leave to counter-designate an additional item to be included in the record on appeal.

Appellants' brief addresses substantive matters that were considered by the Bankruptcy Court during argument on October 31, 2005 in a related matter in Debtors' Chapter 11 case. For purposes of responding fully to Appellants' arguments, Debtors request leave to supplement the record to include the relevant excerpts from the transcript of that hearing. The relevant pages, which are taken from Bankr. Dkt. 11025, are attached hereto as Exhibit A.

Debtors' request should be granted for several reasons. *First*, Debtors only request the addition of one item, which was made relevant to this Appeal because Appellants' opening brief goes beyond the scope of the Bankruptcy Court opinion that is the subject of this Appeal and

1

seeks to introduce arguments that were rejected by the Bankruptcy Court during the October 31, 2005 hearing. *Second*, Debtor's counsel afforded Appellants advanced notice by contacting Appellants' counsel and asking whether they would consent to having this item added to the record; Debtors' counsel did not receive any response from Appellants' counsel. *Third,* allowing the designation of an additional item is particularly appropriate in the context of this Appeal, where Debtors previously granted Appellants a substantial courtesy by agreeing to a 32-day extension of Appellants' deadline for filing their opening brief. Finally, Debtors' request would not prejudice Appellants, because (i) the one item that Debtors' seek to designate is an excerpt of a Bankruptcy Court transcript that Appellants already have and have had for some time; and

*[Remainder of page intentionally left blank]*

2

(ii) given that Appellants' have 10 days until their reply brief is due, Appellants will have ample

opportunity to review the transcript for purposes of their reply.  Therefore, the Debtors request

that the Court grant Debtors leave to designate the attached excerpts as an additional item in the

record for this Appeal.

Dated: August 20, 2007

Respectfully submitted,

> KIRKLAND & ELLIS LLP
> David M. Bernick, P.C.
> Janet S. Baer
> Lisa Esayian
> Samuel L. Blatnick
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> And
>
> PACHULSKI STANG ZIEHL YOUNG JONES
> & WEINTRAUB, LLP
>
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill, III (Bar No. 4042
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in
> Possession

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-1139 (JFK)
                                .
                                .
W.R. GRACE & CO.,               . USX Tower – 54th Floor
                                . 600 Grant Street
                                . Pittsburgh, PA  15219
                Debtor.         .
                                . October 31, 2005
. . . . . . . . . . . . . . . . 8:50 a.m.

TRANSCRIPT OF TRIAL
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             Kirkland & Ellis, LLP
                            By:  MICHELLE BROWDY
                                 SAMUEL BLATNICK
                            Aon Center
                            200 East Randolph Drive
                            Chicago, IL  60601

                            Reed Smith, LLP
                            By:  DOUGLAS E. CAMERON, ESQ.
                            435 Sixth Avenue
                            Pittsburgh, PA  15219

Co-Chair for the Property   Speights & Runyon
Damage Committee:           By:  DAN SPEIGHTS, ESQ.
                                 BUD FAIREY, ESQ.
                            200 Jackson Avenue, East
                            P.O. Box 685
                            Hampton, SC  29924


Audio Operator:             Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

Date __11·10·05__
Docket # __11025__

```
APPEARANCES (CONT'D):

For W.R. Grace & Co.:          W.R. Grace & Co.
                               (Legal Department)
                               By:  RICHARD C. FINKE, ESQ.
                                    WILLIAM SPARKS, ESQ.
                                    MARK SHELNITZ, ESQ.
                                       (Telephonically)
                               7500 Grace Drive
                               Columbia, MD  21044

For Read, Morgan & Quinn:      Stutzman, Bromberg, Esserman
                                 & Plifka, PC
                               By: DAVID PARSONS, ESQ.
                                       (Telephonically)
                               2323 Bryan Street, Suite 2200
                               Dallas, TX  75201

For ZAI Additional            Scott Law Group
Special Counsel:               By:  Darrell Scott, Esq.
                                       (Telephonically)

For the P.D. Committee:        Ferry, Joseph & Pearce, P.A.
                               By:  THEODORE TACCONELLI, ESQ.
                               824 Market Street, Suite 904
                               Wilmington, Delaware  19899
                               (Telephonic appearance)

For the Official Committee     Kramer, Levin, Naftalis &
of Equity Security Holders:        Frankel, LLP
                               By:  GARY M. BECKER, ESQ.
                               919 Third Avenue
                               New York, NY  10022

For the Asbestos Claimants'    Campbell & Levine, LLC
Committee:                     By:  MARK HURFORD, ESQ.
                               800 N. King Street, Suite 300
                               Wilmington, DE  19801

For David T. Austern,          Phillips, Goldman & Spence, P.A.
Future Claimants Rep:          By:  JOHN C. PHILLIPS, JR., ESQ.
                                       (telephonically)
                               1200 North Broom Street
                               Wilmington, DE  19806


Telephonic Appearances:        John O'Connell, Esq.
                               David Seigel, Esq.
                               Jasamad Thomason, Esq.
```

J&J COURT TRANSCRIBERS, INC.

3

1          THE COURT:  Good morning.

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.  This is the matter of

4  W.R. Grace, Bankruptcy No. 01-1139.  Today is the time set for

5  an argument on certain objections to the claims filed by

6  Speights and Runyan on behalf of a number of entities.  The

7  participants I have listed by phone John O'Connell, David

8  Seigel, Mark Schelnitz, David Parsons, William Sparks, Jasamad

9  Thomason (phonetic), Theodore Tacconelli, Daryl Scott, Mark

10 Hereford, Gary Becker and John Phillips.  I'll take entries in

11 court.  Good morning.

12         MS. BROWDY:  Good morning, Your Honor.  Michelle

13 Browdy on behalf of the debtors.  With me is my colleague

14 Samuel Blatnick.

15         THE COURT:  I'm sorry, would you say your name again?

16         MR. BLATNICK:  Samuel Blatnick.

17         THE COURT:  Thank you.  Good morning.

18         MR. SPEIGHTS:  Good morning, Your Honor.  Dan

19 Speights on behalf of Anderson and with me is my colleague, Bud

20 Fairey.

21         THE COURT:  I'm sorry, I'm having trouble hearing the

22 second names.  I apologize.

23         MR. SPEIGHTS:  Dan Speights and Bud Fairey.

24         THE COURT:  Bud Fairey, thank you.

25         MR. SPEIGHTS:  Thank you, Your Honor.

                    **J&J COURT TRANSCRIBERS, INC.**

4

1              THE COURT:  Okay.

2              MS. BROWDY:  Thank you very much, Your Honor.  Before

3    we begin, I'd like to hand up an agreed order for the

4    withdrawal and expungement of 1,495 asbestos property damage

5    claims.  These are the claims without product ID and it's

6    through the stipulation we're able to moot the issue of a

7    California conspiracy claims which was otherwise going to be

8    heard this morning.

9              THE COURT:  All right.  Thank you.  This doesn't have

10   a docket number related to it.  Obviously, there's only one

11   item on the agenda, but I need a docket number.

12             MS. BROWDY:  Yes, Your Honor.  It would be related to

13   a 13th omnibus objection to the Speights and running claim

14   which would be Docket No. 9311.

15             THE COURT:  Okay.  Thank you.

16             MS. BROWDY:  Thank you, Your Honor.

17             THE COURT:  All right.  That order's entered.

18             MS. BROWDY:  Thank you, Your Honor.  And as you can

19   see, I have a number of papers.  If it's okay, I'd like to

20   address the Court from counsel table?

21             THE COURT:  Sure.

22             MS. BROWDY:  Thank you, Your Honor.

23             THE COURT:  You can be seated if you'd like.

24             MS. BROWDY:  I'll stand.  Your Honor, we know how

25   busy this Court is and we appreciate you taking the time to

                    **J&J COURT TRANSCRIBERS, INC.**

5

1 have this special hearing for us today. We wouldn't have asked

2 for it if we didn't think it was critically important to the

3 bankruptcy case. As we've told the Court before, we're

4 concerned, we believe that the Speights case -- the Speights

5 claims are really holding up the resolution of the Chapter 11.

6 And again, we wouldn't have asked for this special setting if

7 it wasn't of importance.

8          To walk through the claims issues this morning, I

9 have a few slides and I'd like to hand up a copy to Court and

10 to opposing counsel.

11          THE COURT:  All right.  Thank you.

12          MS. BROWDY:  Your Honor, we've known for sometime now

13 that there are problems with the Speights claims.  As we noted

14 for the Court in July that although there was only a handful of

15 property damage claims pending at the time of the filing of the

16 Chapter 11, in response to the notice of the bar date, we

17 received more than 4,000 claims and 3,000 of those, or 75

18 percent, were signed and filed by lawyers from the Speights

19 firm.  We knew the numbers were off.  We didn't understand

20 exactly why.

21          When the verified 29 team statement came in, we

22 started to realize there were some significant problems of the

23 authority to file those claims.  We were able to report to the

24 Court by September that having dug more deeply into the

25 property damage claims and filed our objections, the onerous

6

1   objection to all claims, that, in fact, of the 4,000 claims,

2   only 3400 or so were what we call traditional asbestos property

3   damage claims.   The remainder were things like Category Two

4   claims for milling and mining operations.   There were people

5   who submitted medical monitoring requests on property damage

6   claims form and the like.

7        So really, again, it was just about 3400 claims that

8   were what we would call traditional property damage claims.

9   And the Speights firm was responsible for 85 percent of those

10  claims.

11       And as you can see in the third bar in this chart,

12  Your Honor, we have been working diligently to try to resolve

13  claims without taking up this Court's time.   In fact, we have

14  another 100 claims withdrawn just from the last time I appeared

15  before Your Court -- this Court last week, Your Honor, and we

16  have gotten rid of almost half of the claims that were filed.

17  And we're now to the point where there's roughly 1800 property

18  damage claims.

19       And still, even after withdrawing more than 1700

20  claims, including the 1500 that we handed up to Your Honor this

21  morning, Speights still has two-thirds of all property damage

22  claims filed in this case.   That's not twice as many claims as

23  any other individual claimant.   That means this firm signed and

24  filed twice as many claims as all the other traditional

25  property damage claimants in this bankruptcy put together.

7

1  Something's wrong here.

2       Now, we've told Your Honor that we're going to try to

3 break this into manageable pieces and we think, again, there's

4 problems with all of these Speights claims.  They're dealing

5 with the <u>Anderson Memorial</u> issue, allows us to address, again,

6 with a simple legal argument 600 claims, just, again, by virtue

7 of visiting with you here today.  So, there's certainly

8 problems in the remaining Speights claims, but our focus this

9 morning is going to be on the <u>Anderson Memorial</u> claims.

10       Before we dive into the legal argument, Your Honor,

11 I'd like to give, again, the Court a flavor of how we tapped

12 into these <u>Anderson</u> claims and how we know that there are

13 problems in them.

14       As we told the Court in the 13th omnibus objection

15 which is challenging the authority of the Speights firm to file

16 these claims, we had so many claims from that firm, it was just

17 hard to get our arms around what was even in there.  What do

18 you do with 3,000 claim forms.

19       So what we did over the summer, Your Honor, was we

20 chose randomly 10 claims and we figured let's pull some claims

21 up, do some discovery, see what's in there and it will give us

22 a better flavor for what's in the mix of these 3,000 claim

23 forms.  And one of the claims that we chose was the American

24 Medical Association.  Again, we chose 10 or so, all spelled out

25 in our 13th omnibus objection.

**J&J COURT TRANSCRIBERS, INC.**

8

1          And like the other 3,000 claims submitted by the
2    Speights firm, this was signed by a Speights attorney.  Again,
3    all the claims submitted by Speights were filed either by --
4    were signed either by Dan Speights or his colleague.  And
5    again, the claim form was approved by this Court.  It has to be
6    signed under the penalty of perjury saying that the statements
7    are true, correct and not misleading.

8          And again, we took discovery of this handful of
9    claimants and found -- we've attached to the opening brief of
10   this matter in Exhibit 4 the responses we got to that
11   discovery.  And I think you'll see that eight of the ten people
12   we asked said that Speights had not had permission from them to
13   file the claims.  And I've chosen just one example here.  It's
14   an affidavit from the American Medical Association.  I've blown
15   up paragraphs three and four.  But again, the whole affidavit
16   is attached to our opening brief as Exhibit 4.

17         And the American Medical Association testified, but I
18   spoke with various representatives of the law firm of Speights
19   & Runyon in late 2002 and early 2003.  The subject of
20   discussion was whether Speights & Runyon would represent the
21   AMA in this bankruptcy proceeding.  I informed Speights &
22   Runyon that the AMA did not wish Speights & Runyon to represent
23   it in this proceeding.  Based on inquiry, I believe that no AMA
24   representative authorized Speights & Runyon to file a proof of
25   claim on behalf of the AMA or otherwise represent the AMA in

9

1  this or any other proceeding.  And again, this is the AMA.  We

2  saw the signed, submitted proof of claim form submitted by the

3  Speights firm.  And again, this is just one of a handful of

4  examples that we got when we started to make this

5  investigation.

6          In response, Your Honor, we had briefing on the 12th

7  and 13th omnibus objections which were challenging the

8  authority of Speights to bring these claims.  And what we got

9  was an admission from the Speights firm.  This is a page from a

10 brief that they filed in August that says, you know what, for

11 1,000 of these claims, the individuals either haven't responded

12 to a request for expressed authorization or we haven't even

13 been able to locate them.  So it took more than two years from

14 the time that claims came in for us finally get the admission

15 that what Speights had done was submit individual claim forms

16 on behalf of people they couldn't even contact, couldn't locate

17 and who had given them expressed authorization.

18         And that led, Your Honor, to the briefing and

19 argument that brings us here today.  And we got the order from

20 this Court in September demanding that Speights identify with a

21 list of all pending product -- property damage claims filed by

22 Speights & Runyon for which Speights & Runyon relies on the

23 Anderson Memorial Hospital case as its sole authority to file

24 such PD claims.

25         So, that's how we got here and we've attached as

                    J&J COURT TRANSCRIBERS, INC.

10

1  Exhibits 1 and 2 of our opening brief the lists of claims that

2  the Speights firm produced in response to this order.  Exhibit

3  1 is a list of the claims outside of the State of South

4  Carolina that are supposedly filed under the authority of

5  <u>Anderson Memorial</u>.  And Exhibit 2 are the claims for billings

6  inside the State of South Carolina for which the Speights firm,

7  again, has no expressed authority, but in response to this

8  court order, said, we filed these under the sole authority of

9  the <u>Anderson Memorial</u> case.  So we're here today to disallow

10 and expunge the claims on Exhibit 1 and 2.

11          Now, as we indicated, I believe, in a footnote to our

12 opening brief, Your Honor, there's a little slippage, I think

13 there's about 50 additional claims that the debtor's believe

14 were filed under the authority of <u>Anderson Memorial</u>.  I've

15 provided that list to the Speights firm and I'm sure we can

16 sort out those mechanical issues later on.

17          But again, this is how we ended up teeing up this

18 <u>Anderson Memorial</u> issue to be decided by the Court.  Now,

19 there's been a lot in the briefs about the <u>American Reserve</u>

20 case and we certainly saw at some length in the Speights

21 response papers, gee whiz, <u>American Reserve</u> and other cases

22 made clear that you can have a class proceed in a bankruptcy.

23 And I think it's important to bear in mind, Your Honor, we're

24 not here on a referendum as to whether or not a class can

25 proceed in a bankruptcy.  <u>American Reserve</u> and a number of

**J&J COURT TRANSCRIBERS, INC.**

11

1  other cases say, or have said, that you can, but it's very

2  clear in American Reserve and the other cases; I would cite the

3  Ephedra case in our brief, I would cite the Zenith case in our

4  brief, I would cite the Kaiser and Weed cases that I believe

5  Mr. Speights cited; and, of course, the American Reserve

6  decision itself which is for those courts that do permit a

7  class action to go forward, you have to come to the bankruptcy

8  court and get permission.  This is a decision that's in the

9  discretion of the bankruptcy court.  None of these decisions

10 say that you can simply submit individual claim forms and sign

11 them under the penalties of perjury on behalf of claimants that

12 you've never met and that you don't represent.

13      Again, American Reserve makes very clear, you got to

14 come first to the bankruptcy court.  And, Your Honor, this

15 Court recognized as much as well.  In fact, we've attached as

16 Exhibit 3 some -- of our reply brief some excepts from the

17 February 25th, 2002 hearing, almost four years ago, where this

18 Court was expressly addressing the issue of the claims form,

19 the notice in the bar date for property damage claims.  And

20 this Court could not have been more clear, page 107 to 108, "If

21 you're going to request that a class proof of claim be filed, I

22 need an appropriate motion by a representative of the putative

23 class by a law firm that is competent to handle it.  Until I

24 get such a motion, there will be no class proofs of claim

25 because I think that's what I need."

J&J COURT TRANSCRIBERS, INC.

12

1       And the discussion went on to page 110, "Unless and

2  until I get that motion, there will be no class proofs of claim

3  because I think that's the way I need to get it raised." That

4  was almost four years ago. Again, the Court was clear, if you

5  want to proceed on a class-wide basis, you've got to come to

6  me. And that's fairly consistent with American Reserve and the

7  other cases cited.

8       But Your Honor, that's not what Speights did. The

9  Speights firm, ignoring the dictates from this Court, submitted

10  Claim 1108 -- 11008, I'm sorry, an individual proof of claim

11  for Anderson Memorial Hospital itself. And in fact, Mr.

12  Speights response papers submit some apparent authorizations

13  that would suggest that individually, Anderson Memorial

14  Hospital is a proper claimant of Mr. Speights.

15       But then, again, ignoring what this Court said,

16  Speights submitted Claim 9911 and 9914, both of which are

17  attached to our reply briefs. They are purported class-wide

18  proofs of claim, again, in direct violation to what this Court

19  said. 9911 is a purported class proof of claim for out-of-

20  state claims. 9914 is a purported class proof of claim for in-

21  state claims.

22       And, Your Honor, if that's all that Mr. Speights had

23  submitted, we probably could have brought this matter to the

24  attention of the Court months, if not years ago. But that's

25  not what Speights did. In addition to those, we got hundreds

**J&J COURT TRANSCRIBERS, INC.**

13

1   upon hundreds upon hundreds of additional individual claims.

2   And again, it's taken us years to find out that these

3   additional, more than 600 out-of-state claims and more than 50

4   South Carolina claims, signed and filed as individual, separate

5   claim forms, that those are supposedly filed under the

6   authority of Anderson because again, that's not what Speights

7   came out and said he did.  It took us -- again, discovery, it

8   took us the 2019 statement, it took us an order from this

9   Court, it took us years to figure out that that's what these

10  claims are.

11          And if there's any question, Your Honor, that Mr.

12  Speights had no authority from this Court to go forward on a

13  class-wide basis, Docket Entry 10014, the motion for class

14  certification filed a week ago last Friday proves it.  I mean,

15  it was stunning.  If you saw the response papers, one of the

16  exhibits was, gee, I'll move now for class certification.  The

17  Court told any claimant or the Court told the attorneys at that

18  hearing in February of 2002, Mr. Speights was there, if you

19  want a class proof of claim, come to me.  And he waited till

20  years after the bar date had passed, and years after he had

21  signed and submitted these individual claim forms.

22          And, of course, what Speights didn't tell you was,

23  again, look at Claim 9911 or 9914 which are attached to our

24  reply brief, in direct violation of this Court's order, they

25  submitted these class proofs of claims on behalf of buildings

**J&J COURT TRANSCRIBERS, INC.**

14

1  under supposedly the authority of the <u>Anderson Memorial</u> case.

2  But again, I don't think we'd have nearly the problems that we

3  do today if that's all that he had submitted because what

4  happens when you don't file the dictates of <u>American Reserve</u>,

5  what happens when you don't come to the bankruptcy court to try

6  to seek permission to go forth on a class-wide basis?  Well,

7  we've learned that when you submit hundreds upon hundreds of

8  individual claim forms for people you don't represent, you have

9  problems.

10         You go -- and again, the opening brief at Exhibit 4,

11  you go and you talk to those claimants and they say, I never

12  approved this, I never authorized this claim to go forward.

13  You get claim forms submitted with false information.  I've

14  given a couple examples that I'll go through here, but you can

15  look at thousands of claim forms submitted by the Speights firm

16  have false information.  Question 18, when did you first know

17  of the presence of asbestos in the property of the Grace

18  product for which you're making this claim?  Answer, 2003.

19  Question 20, when did you first learn that the Grace product,

20  for which you are making this claim, contained asbestos.

21  Answer, 2003.

22         Your Honor, this information was filled in on behalf

23  of what Speights has admitted was at least a thousand claimants

24  they've -- he's never met.  They didn't respond to requests for

25  authorization.  They couldn't find the addressees.  How can you

J&J COURT TRANSCRIBERS, INC.

15

1  possibly know the date that this information became available.

2  This is purely fabricated information.

3          And, Your Honor, what's most telling is now Speights

4  is saying, well, I submitted all these individual claim forms

5  under the authority of the <u>Anderson Memorial</u> case.  The

6  <u>Anderson Memorial</u> case was filed against Grace in 1992.  So at

7  least if you were going to be honest about that and say these

8  individual claim forms were submitted on the basis of <u>Anderson</u>

9  <u>Memorial</u>, he should have written the date 1992.  But instead,

10  this is, again, purely fabricated information.  Of course,

11  these people didn't learn this information in 2003.  We have no

12  idea what these claimants knew because Speights and the debtors

13  and the Court have never spoken with them.  Speights simply

14  manufactured this information.  And it's replete on thousands

15  of these claim forms.

16          They're asked when were renovations made?  Oh, there

17  were multiple renovations over various years.  What product do

18  you have?  Only surface treatment.  Who -- in what manner were

19  the Grace products modified or disturbed?  Oh, it was affected

20  by numerous custodial and maintenance activities renovated --

21  in renovations.  This is purely manufactured responses.  You

22  can look at claim form after claim form after claim form and it

23  will have these same generic responses, or really generic non-

24  responses because Speights had to make it up because that's

25  what happens when you submit individual claim forms for

16

1  claimants you've never met.

2       We also learned, for example, when we objected to a

3  number of these claims as having been previously settled, the

4  Speights firm came back to us and said, you know, prove it.

5  Where are these settlements.  And that seemed a little odd

6  because you would think that if you had settled the claim, you

7  would know it.  And then we realized that the problem arises

8  because, again, Speights submitted individual claim forms for

9  parties he doesn't represent.  So you'll see we attached in

10  Exhibit 4 a letter response which says we've gone back to these

11  claims.  The settlements we're talking about were executed with

12  other firms, not you.  We can't disclose it to you.  These are

13  confidential.  That's what happens when you submit claim forms

14  on behalf of people you don't represent.

15       And we have another example in our opening brief at

16  Exhibit 4, a sample of a letter that we got back in December of

17  2004 where Laborers 310 said, gee, I noticed a claim that

18  appears to have been filed on behalf of my client without

19  authorization because again, these are the kinds of problems

20  that you run into when you don't file American Reserve and you

21  just go ahead and hand in thousands of claim forms on behalf of

22  people you've never met.

23       With that background, then, Your Honor, it takes us

24  to the two straightforward issues that the Court's being asked

25  to addressed today.  First, did Speights have authority to file

J&J COURT TRANSCRIBERS, INC.

17

1 hundreds of out-of-state claims based on <u>Anderson Memorial</u>.

2 And then the second issue is whether Speights had authority to

3 file the South Carolina claims.  So I'm going to focus first on

4 the out-of-state claims.

5        And again, we didn't learn until the verified 2019

6 statement that even what the purported was for the filing of

7 these claims.  So let's start with the out-of-state claims.

8        If you go to the Speights' verified 2019, Speights

9 attaches the 1992 original complaint from the <u>Anderson Memorial</u>

10 case.  And in the <u>Anderson Memorial</u> case, Speights went to its

11 home court, its home county of Hampton County, South Carolina,

12 filed a putative class action for essentially all the buildings

13 in the world.  They're not even limited to U.S. buildings.

14 But, for simplification, let's say it sought class

15 certification for out-of-state buildings and in-state

16 buildings.  And again, that was filed in the home state, South

17 Carolina, in 1992.

18        And again, if you look at the verified 2019

19 statement, it attaches a copy of this 1992 complaint and you'll

20 see that on slide 20, I've circled the little C because that's

21 the index that we're given in the 2019 statement because then

22 you look for entry after entry after entry and for those

23 buildings, if there's a little C, then those cases were

24 supposedly filed under the authority of this original complaint

25 from 1992.

**J&J COURT TRANSCRIBERS, INC.**

18

1        What Speights 2019 statement doesn't disclose to the

2   Court, Your Honor, though, is that more than 10 years ago, the

3   Hampton County, South Carolina court was asked to certify the

4   class and struck all out-of-state buildings from the class.

5   This was the  August 8th, 1994 opinion from the Hampton County

6   court.  We've attached it to our opening brief at Exhibit 7.

7   That wasn't referenced in the 2019 statement.  But this order

8   makes clear that the out-of-state buildings were not recognized

9   as a class in South Carolina.

10        Similarly, Speights' 2019 statement didn't tell you

11   that in May of 1996, the court in South Carolina, when asked to

12   reconsider the issue, said, no.  The August 8th, 1994 opinion

13   is adapted in full through the execution of this order.  So the

14   South Carolina court, not once, but twice rejected the notion

15   that out-of-state claims could go forward in South Carolina

16   and, in fact, struck those claims.  And the basis for that,

17   Your Honor, is what they have down there called the door

18   closing statute that essentially an out-of-state claimant can't

19   use a state court to sue an out-of-state defendant.  So again,

20   the Anderson Memorial state court opinion through out the out-

21   of-state claims.

22        What Speights didn't tell you in the 2019 statement

23   is that the complaint the Speights firm attached is not even

24   operative.  There's a second amended complaint from 1996 tha's

25   limited to in-state buildings.  But that's not what Speights

**J&J COURT TRANSCRIBERS, INC.**

1 attached to 2019 statement.  It was instead attaching the 1992

2 complaint that has been rejected and superceded.

3        Speights also didn't tell you in the 2019 statement

4 that in April 2003, more than a year and a half before that

5 2019 statement was due, that the South Carolina Supreme Court

6 in the <u>Farmer v. Monsanto</u> case held that the door closing

7 statute prevented non-residents whose cause of action did not

8 arise in state from joining class actions against foreign

9 corporation.  The Supreme Court of South Carolina has addressed

10 this issue and agreed with the trial court in the Anderson

11 decision saying the door closing statute prevents these out-of-

12 state claims from going forward.

13        Speights knew about the <u>Farmer v. Monsanto</u>, Speights

14 was on the brief for their respondents.  And in fact, it's

15 interesting, Your Honor, if you look at the response brief that

16 the Speights firm submitted, instead they tried to hand up the

17 unpublished opinion from the trial court judge in the <u>Farmer</u>

18 case that got turned over by the South Carolina Supreme Court.

19 It was clear by the time the glorified 2019 statement was

20 submitted that there was no basis for going forward in a state

21 court class action against these out-of-state residents.  It

22 was absolutely clear that there was no authority to file those

23 out-of-state claims.

24        I think we're also going to heard the word thrown a

25 lot -- thrown around a lot on the response argument.  I was a

J&J COURT TRANSCRIBERS, INC.

20

1  fiduciary, I had a fiduciary responsibility to go forward on

2  behalf of these putative class members. And I would just point

3  out, Your Honor, the Court invited claimants in the 2002

4  argument, if you're going to go forward on a class, come to me,

5  I need a motion, I need to consider it. And Speights never did

6  that. Speights simply went ahead on his own and submitted

7  these individual claim forms that we had to dig through for

8  years to figure out what was the real basis.

9        And what I thought was interesting here, Your Honor,

10 is when we finally started to take discovery over the summer

11 and started to get into what was behind these claims form, all

12 of a sudden Speight started to withdrawing, withdrawing claims

13 that were filed under the authority supposedly of the <u>Anderson</u>

14 <u>Memorial</u> decision. And I've attached a list of dozens of these

15 individual claims that got withdrawn in June and July while

16 supposedly Speights was representing these basis on -- these

17 claimants on a class basis. I mean, it just shows I'll

18 represent them when its convenient, I'll pull them when it's

19 convenient.

20       And the last thing I want to address, Your Honor, on

21 the out-of-state claims is the issue of <u>Central Wesleyan</u>

22 because I expect that Speights is going to raise this as he has

23 in his papers and in the brief argument we did back in August.

24 In the <u>Central Wesleyan</u> decision, there you had a federal court

25 in South Carolina wedding on a conditional basis a Class 4

21

1 forward. And the federal court said, well, the door closing

2 statute isn't going to apply to us. We can go forward. And

3 what Speights doesn't tell you is that not only the <u>Farmer v.</u>

4 <u>Monsanto</u>, the South Carolina Supreme Court, not only did they

5 expressly consider <u>Central Wesleyan</u>, but the <u>Anderson Memorial</u>

6 case, if you look at the final order, they expressly looked at

7 the <u>Central Wesleyan</u> decision and says, it doesn't apply here.

8 <u>Central Wesleyan</u> was what was going on in federal court. The

9 door closing statute talks about what you can do in the South

10 Carolina state courts.

11     Well, what Speights has told this Court in the 2019

12 statement and in the briefs I have the authority to go forward

13 in this bankruptcy court because I had permission from the

14 state court. Speights isn't bringing a federal court action

15 from South Carolina up to this court. He's trying to bring a

16 state court action and the state courts held <u>Central Wesleyan</u>

17 doesn't apply, the door closing statute does, out-of-state

18 claims can't go forward.

19     So the bottom line, Your Honor, on the 600 or so

20 individual claims submitted from out-of-state supposedly under

21 the authority of <u>Anderson Memorial</u>, Speights has no state court

22 order certifying that class. He has no federal court order

23 certifying that class. He has no order from this Court

24 permitting those claims to go forward on a class basis. He has

25 no permission from the individual claimants to go forward on

**J&J COURT TRANSCRIBERS, INC.**

22

1  their behalf.  And that class was never certified.  There was

2  never notice and opportunity to opt out.  It's -- essentially

3  what Speights is here saying, give full faith and credit to the

4  out-dated, rejected, superceded 1992 class action complaint

5  that I filed.  And on that basis, I should have authority to

6  file hundreds upon hundreds of claims for people I've never

7  met.  Totally flies in the face of _American Reserve_ and this --

8  what this Court recognized in 2002 and all of those out-of-

9  state claims should be disallowed and expunged.

10       I want to move on now to the in-state claims, Your

11  Honor.  In support of filing dozens of South Carolina claim

12  forms on behalf of building orders that Speights had never met,

13  if you look at the verified 2019 statement, the Speights firm

14  cites and attaches three orders; a February 9th, 2001 order, a

15  June 18th, 2001 order and a July 5th, 2001 order.  And those

16  are all attached to Speights verified 2019 statement.

17       And then if you go down the list of the individual

18  claims in the 2019 statement for all those South Carolina in-

19  state buildings, he'll cite to these three orders.  And for the

20  Court's convenience, we've attached these as Exhibits 11, 12

21  and 13 to our opening brief.

22       But what Speights doesn't tell Your Honor is the

23  February 9th opinion was a conditional ex parte order and that

24  the June and July orders were ultra vires because they post-

25  date the filing of this bankruptcy and they would violate the

**J&J COURT TRANSCRIBERS, INC.**

23

1  automatic stay as to Grace.  And I just want to visit a little

2  bit about a couple of these orders.

3          The February 2001 order, Your Honor, I think is worth

4  looking at.  Remember, the Anderson complaint was originally

5  filed in state court in 1992.  By 1994, the state court had

6  struck all out-of-state claims so the focus was just on in-

7  state buildings.  But nearly 10 years have passed and there was

8  no order from the court granting certification of South

9  Carolina class.

10         And again, what the Speights 2019 attaches is this

11 February 9th order that says, I'm going to conditionally

12 certify this.  And when you look at the first sentence, it

13 says, Anderson Memorial Hospital has petitioned this court for

14 emergency relief which is based on the verified petition of

15 counsel and the court decides that under the circumstances, the

16 court's going to take the ex parte request as okay.  And he

17 again conditionally certifies the class.

18         But what's stunning, Your Honor, is the verified

19 petition, signed and submitted by Mr. Speights, that led to

20 this conditional ex parte offer -- order, and Your Honor, I

21 know you have a lot of reading to do, if you don't have a

22 chance to read anything else, I would commend to you Exhibit 10

23 of our opening brief which is Speights' request essentially to

24 avoid the automatic stay that is anticipated to be coming down

25 from this Court.  If you look at -- again, remember the ex

                    J&J COURT TRANSCRIBERS, INC.

24

1  parte conditional emergency order is entered on February 9th.

2  What happened on February 8th of 2001 was that the Speights

3  firm submitted an emergency petition for a rule to show cause

4  why a conditional class should not be certified against W.R.

5  Grace and Company and W.R. Grace and Co. Com.

6        And what's the basis for getting this emergency class

7  certification?  And again, I'll quote the petition from

8  Speights.  "Grace disclosed last week that it may be forced to

9  file for bankruptcy protection and have to seriously consider

10  reorganization under Chapter 11.  Once Grace files for

11  bankruptcy, this court may be deprived or jurisdiction."  So

12  essentially, Speights is running into his home court in South

13  Carolina and saying, you know what, Grace is going to go into

14  the tank.  If that happens, you're not going to be able to

15  certify the class, you're going to lose jurisdiction.  So

16  you've got to go ahead and do it now.

17        And look at the verification.  Again, this is what's

18  pretty stunning.  Look at the verification that's attached to

19  that February 8th request for relief.  It's submitted,

20  verified, Daniel Speights, being duly sworn, verifies the

21  following, and again this is all attached to our opening brief

22  at Exhibit 10.  Speights tells the South Carolina court under

23  oath, "based on my experience, representing asbestos property

24  damage claimants in bankruptcies filed by Johns-Mandville

25  National Judgement and Celotex, bankruptcy courts treat

                    **J&J COURT TRANSCRIBERS, INC.**

25

1  previously certified class claims much more favorably than
2  other claims.  Absent conditional certification prior to
3  bankruptcy filing, a bankruptcy court may not grant the South
4  Carolina building owners the preferential class treatment this
5  court may determine they deserve."

6        And Your Honor, I just ask you to consider what the
7  -- Mr. Speights is doing here when he says, gee, I'm acting as
8  a fiduciary, I have to do this on behalf of the class.  Compare
9  what he's doing with what American Reserve says.  American
10 Reserve says, if you want to go forward in the bankruptcy, you
11 come to the bankruptcy court.  The bankruptcy court has
12 discretion.  It will take factors into account.  Come to me and
13 I'll make the decision.  And instead, you have Speights running
14 into court in South Carolina to try to deprive this Court from
15 making its decisions and to tell the South Carolina court, I
16 want to be treated more favorably.  You better hurry up and
17 enter this order before the automatic stay goes into effect and
18 you lose jurisdiction.  That's what this February 8th petition
19 is saying.

20       And then look to the other orders that Mr. Speights
21 attaches to the 2019 statement, they're from June and July of
22 2001, those are ultra vires, Your Honor.  Those violate the
23 automatic stay.  They're entered after Grace went into
24 bankruptcy.  Those orders again are attached to the 2019
25 statement can't apply to Grace.  They're, again, ultra vires.

J&J COURT TRANSCRIBERS, INC.

26

1          Speights also doesn't mention, when he attaches these

2     to the 2019 statement that the South Carolina class was an opt-

3     out class that not notice or opportunity to opt out was ever

4     given.

5          And then, Your Honor, at the hearing we had in

6     August, Mr. Speights made a rather stunning revelation which is

7     I know all about this July order because I drafted it.  And

8     Speights came and told the Court that's how it's done in South

9     Carolina, but honestly, I have no doubt that that is how it's

10    probably done in Hampton County, South Carolina.  And Speights

11    says, the judge came to me and said draft the order and I did

12    it.

13         Well, after -- and again, he presented that order to

14    the Court at that August hearing.  And afterwards, I went back

15    and got a full copy of that order.  What that order says is,

16    please draw an order for my review -- and stop the order

17    rather, it's a request from the South Carolina trial court to

18    Mr. Speights saying draft up this final order.  But the court

19    tells Mr. Speights in this letter, it's attached as Exhibit 18

20    to our opening brief, "please draw an order for my review

21    granting plaintiff's motion for class certification as

22    requested.  The order should specifically state that the order

23    affects only the three remaining defendants due to the stay as

24    to W.R. Grace.  I'm not sure, but my order may run afoul of the

25    stay."

27

1       So clearly the South Carolina court was concerned, we

2   can't make this ruling apply to Grace because they're in

3   bankruptcy.  It would violate the automatic stay.  But Speights

4   attached it, again, to his 2019 as part of the basis for his

5   authority for filing these claims for individual claimants in

6   this Court.  Your Honor, there are two possibilities, either

7   that order supposedly applied to Grace and Mr. Speights drafted

8   it up and that was a willful violation of the automatic stay.

9   Or alternatively, Mr. Speights knew it didn't apply to Grace

10  and was trying to mislead the court, this Court, and the

11  debtors when he attached it to their filed 2019 statement.

12  There is no other explanation.

13      Of course Mr. Speights purports to rely on that

14  order.  He attached it to the 2019 statement.  He cited it in

15  his 2019 statement.  He raised it with the Court.  And it was

16  purely, Your Honor, in violation of the automatic stay.  And,

17  Your Honor, as we indicated in our opening papers, Mr. Speights

18  should be particularly sensitive to this because we know from

19  the Dana (phonetic) opinion that we cited in our paper that

20  he's already been tagged by a federal court for having violated

21  the automatic stay, by running down to the Anderson court in

22  South Carolina and trying to get orders that violate the stay.

23      I -- just don't take my report.  Read the Dana

24  decision which is cited in our opening paper.  Speights knows

25  about this, knows there are problems with potentially

J&J COURT TRANSCRIBERS, INC.

28

1  violating the automatic stay. He's represented to this Court

2  and to other courts, he's experienced bankruptcy counsel, he

3  should know better than this.

4       So the bottom line is did Speights have the authority

5  to file claims for the in-state claimants. The February 2001

6  order was conditional ex parte order designed to evade the

7  automatic stay. The other 2001 orders were ultra vires. They

8  were drafted by Speights in violation of the order -- of the

9  automatic stay. There was no order from this Court permitting

10 him to file on behalf of South Carolina claimants. He had no

11 permission from the claimants themselves. It was supposedly an

12 opt-out class. They had no notice of the opportunity to opt

13 out. Claimants rights -- didn't have authority to file those

14 claims for the South Carolina claimants.

15       I just have one more point to make, Your Honor, and

16 then I'll sit down. I want to discuss briefly the Celotex case

17 because I expect that Mr. Speights is going to raise it.

18 They've raised it in their papers and it was raised in the

19 August hearing. And as we indicated in our reply papers, I

20 just think that the Celotex orders have been thrown around by

21 the other side in a misleading way in this Court.

22       Speights now has twice cited to this Court a May 1996

23 order from Celotex and I sat in that hearing in August and I

24 thought it sounded like he was saying  that the Celotex court

25 has already decided in a bankruptcy context the issues that

J&J COURT TRANSCRIBERS, INC.

29

1 this Court is being asked to decide.  And that would be pretty

2 persuasive authority, I would expect, Your Honor.

3          So we went back to look to try to figure out what

4 actually did happen in <u>Celotex</u>.  And it turnes out that this

5 May 1996 order that Speights has now cited to the Court twice

6 is an agreed order that the parties agreed to entry of after

7 negotiations and it does reference the <u>Anderson Memorial</u> case.

8 But there was no adjudication by the <u>Celotex</u> court as to

9 whether or not Mr. Speights had authority to represent the

10 <u>Anderson Memorial</u>, quote, unquote, class claimants.  It wasn't

11 a contested matter before <u>Celotex</u>.

12          And similarly, the December '96 order that Mr.

13 Speights cited in August and attached to his paper again, there

14 was no adjudication of the issues faced in this Court.

15 Instead, again, we had to go back and dig out these facts, but

16 we found, and we've attached it to our reply brief at Exhibit

17 5, that in fact there is a pending adversary complaint, a

18 proceeding in <u>Anderson Memorial</u>, challenging this very issue.

19 And again, we've attached a copy of this complaint at Exhibit

20 5.  It was updated as recently as last month.  I believe the

21 adversary proceeding was initiated in 2002.  And it's an

22 amended complaint for declaratory relief as to asbestos

23 property damage claims submitted by Anderson Memorial Hospital.

24          And if Your Honor looked at the complaint, we've

25 pulled out in particular paragraph 21, but again, the whole

**J&J COURT TRANSCRIBERS, INC.**

30

1  thing is attached to our papers, what's been challenged here?

2  To the extent that Anderson filed the disputed claims as a

3  representative for a putative class action or a group claimant

4  as defined by the PD Claims Procedures, the PD Claims

5  Procedures do not provide any specific right or authority for

6  Anderson to file the disputed claims on behalf of the owners of

7  the buildings.  It's the same contested issue that we have

8  here.  The <u>Celotex</u> court hasn't decided this yet.

9       Speights hasn't told you, also, that <u>Celotex</u> isn't

10  paying on the disputed Anderson claims and we have a letter to

11  that effect attached as Exhibit 6.  And Speights also doesn't

12  tell you, by the way, that if you look at the disputed claims

13  attached to that adversary proceeding in the <u>Celotex</u> case and

14  you look at the claims he's submitted here, there are dozens

15  where he's seeking double recovery.  He's telling both sides

16  that they provided the fire proofing in the same buildings.

17  There are all kinds of problems with Speights references to the

18  <u>Celotex</u>, Your Honor, and we can only imagine what else we'd

19  learn if we get the opportunity to take discovery of Speights

20  firm.

21       The bottom line, Your Honor, is that we're asking

22  this Court to disallow and expunge all claims purportedly filed

23  on the basis of the Anderson Memorial complaint.  That's Claims

24  9911 and 9914 which are purported class proofs of claim filed

25  expressly in violation of this Court's order.  But it's also

31

1 the hundreds of individual claims identified as Exhibits 1 and

2 2 of our opening briefs which are the claims that Mr. Speights

3 admitted, based on the court order entered on September 23rd of

4 this year saying you've got to tell us what claims were filed

5 solely under the authority of <u>Anderson Memorial</u>. Those are his

6 lists attached to Exhibit 1 and 2.

7         We also ask Your Honor, we think that fees and costs

8 are appropriate for all this investigation. There's just so

9 much improper behavior going on on the other side that we think

10 clearly we make the statutory basis for receiving fees and

11 costs.

12         And finally, Your Honor, we think that the October

13 21st motion for class certification, Docket 10014 should be

14 struck. The Court framed the issues on the PD class and the

15 notice and the like -- the PD notice and claim forms in 2002.

16 The claims have been in since 2003. This is just another

17 attempt by Speights to delay, to stretch out these proceedings.

18 This motion for class certification is three years too late.

19 We shouldn't have to spend the time and money of the estate

20 responding to that motion. Thank you, Your Honor.

21         THE COURT: Mr. Speights.

22         MR. SPEIGHTS: May it please the Court, I came here

23 to argue the law, Your Honor. I came here to argue the law

24 because that's what we agreed to hear first. And I say at

25 almost at every turn, that I'm going to refrain from dealing

32

1  with all of these spurious, factual allegations that not only,

2  in many cases, are false or incomplete or misleading, but which

3  have nothing whatsoever to do with the two purely legal issues

4  which are before you today.

5        That's why I was so careful when we were together in

6  Wilmington the last time when we scheduled this to tell Your

7  Honor that they can tee up whatever they want.  We have agreed

8  to tee up the legal issues first which require no discovery.

9  And if they go into facts of discovery, I'm going to stand up

10 at this hearing on October 31 and say, wait a minute, Your

11 Honor, all we have is two legal issues.  And I have my

12 argument.  I actually typed it yesterday when I got into

13 Pittsburgh which is purely the law of whether we had the legal

14 authority to file those class claims on behalf of Anderson

15 state and Anderson putative.

16        But at some point, Your Honor, I've got to say

17 something about all of this.  Actually, I was thinking as I

18 heard counsel go on and on and was trying to write down

19 feverishly all the misstatements, that what I would really like

20 is a copy of this transcript so that I could annotate it for

21 Your Honor and tell you at every turn -- what Grace says is

22 either wrong or misleading or incomplete.  And that's not what

23 we should be doing today, but I just wrote down feverishly just

24 a few points.

25        We have gotten rid of 1,000 claims or whatever.  I'm
                    **J&J COURT TRANSCRIBERS, INC.**

1   the one who called W.R. Grace and suggested to do what I had

2   suggested doing with Mr. Fink, the gentleman in the first row

3   here who I've dealt with for a number of years, of dealing with

4   those conspiracy claims.  It wasn't Grace.  It had nothing to

5   do with authority.  It had to do with my views on conspiracy.

6   And I would be glad to explain that, if it were relevant.

7           They say, we couldn't get our arms around this, there

8   were so many problems.  They didn't have problems getting their

9   arms around this, Your Honor.  The fact is, I've been talking

10  -- the fact is the claims themselves refer to Anderson Memorial

11  Hospital, all of these buildings, 600 buildings in dispute,

12  referred to Anderson Memorial Hospital complaint.  The fact is

13  that I was talking to Grace.  The fact is that in November of

14  2003, shortly after the bar date, I met with Mr. Fink and he

15  already had one of his spreadsheets and he had all of these

16  objections analyzed, et cetera, et cetera.

17          They knew what was going on.  And what happened was,

18  after the deal fell through for reasons not my fault, I

19  supported the deal.  After the deal fell through, Kirkland and

20  Ellis, maybe rightly, maybe wrongly, I'm not here to criticize

21  them, decided to go to war.  And so my discussions with Mr.

22  Fink and Mr. Beber (phonetic) in early 2005, where we were

23  dealing with these claims and sharing information, all of a

24  sudden that door is slammed shut.  They had the information.

25  They had it all along.

                    J&J COURT TRANSCRIBERS, INC.

34

1          They throw out to you, Your Honor, Toledo, this
2     Toledo order and say, I should have -- I violated some stay.
3     That could not be further from the truth, Your Honor.  First of
4     all, there was no automatic stay involved.  Secondly, I was
5     defending the bankruptcy court against a district court who
6     didn't like what the bankruptcy court did.  Thirdly, the order
7     they cite makes no finding whatsoever as to me.  One of my co-
8     counsel wrote a letter and the district judge wouldn't too
9     happy with him.  And lastly, Your Honor, the order they cite to
10    you was vacated.  They're up here citing an order that was
11    vacated to you as -- which doesn't deal with a bankruptcy stay
12    as supposedly some more mud to sling on me.
13         They sling mud on the judiciary of South Carolina.
14    What's interesting is they sling mud on Judge Hayes who lives
15    200 miles from me and who has statewide jurisdiction of all
16    asbestos cases because he's one of the best judges in the state
17    and the Chief Judge Jean Toal appoints the top judges to deal
18    with this mess and I think Your Honor can understand why you
19    need somebody to deal with this mess.  Judge Hayes, who had
20    never appeared before before the Anderson case.
21         Judge Hayes did say to write an order.  He told me
22    what to put in it.  He changed it around.  He was careful with
23    the order itself which is attached.  It explicitly states that
24    it does not affect Grace.  I was not trying to get around some
25    automatic stay.  Judge Hayes was explicit on that.

**J&J COURT TRANSCRIBERS, INC.**

35

1          What's interesting is the door closing order, which I

2    don't particularly like, as you might gather, was granted by

3    Judge Howard, Judge Hayes predecessor, and it was drafted by

4    Grace and the other defendants in the same manner.  They

5    drafted a letter from Judge Howard, but they don't stand up

6    here and tell you that Judge Howard is somehow -- some

7    backwards southern judge because the order was written or typed

8    by the law firm.  In fact, Judge Howard is not from Hampton,

9    he's from Charleston.  He's about 75 or 80 miles from where I

10   live.

11          I mean, there's not some vast conspiracy going on in

12   South Carolina.  They say, Your Honor, there was an -- this

13   order is ex parte.  That's what they say, ex parte

14   certification order.  And they know that.  All Judge Hayes did

15   was to -- it's like a TRO in a domestic dispute.  Judge Hayes

16   had had this case for years and years.  The record was closed.

17   He had heard all the evidence.  The only thing he was waiting

18   on was a transcript because Grace, in about four to five months

19   of time, because they said we want to file another brief after

20   the transcript's here.

21          There's not one bit of evidence that was put before

22   Judge Hayes after he signed that conditional order in February.

23   But what they know and what they don't tell you is that he

24   said, come and we'll have a hearing to see whether to keep this

25   order in place.  And then we had a hearing and Grace's South

36

1 Carolina counsel and Grace's New York counsel, now federal

2 judge Kevin Castel, Grace's counsel appears in South Carolina

3 and argues vehemently, would not tell the judge whether they

4 were going to file bankruptcy or not, but argues against the

5 entry of the order. And Judge Hayes, at the end of the

6 hearing, said, having heard fully from both of you, I will

7 continue the order.

8      They keep throwing out <u>Celotex</u>. I could talk about

9 <u>Celotex</u> for three days, Your Honor. And I assure you that we

10 have been consistent about what we've said about <u>Celotex</u>.

11 <u>Celotex</u> was a plan of reorganization and this one had the

12 maximum number of votes. <u>Celotex</u> is Anderson claims have been

13 allowed in large part, some have been rejected by the claims

14 administrator in <u>Celotex</u>. The trustees in <u>Celotex</u>, chosen by

15 the bodily injury committee, we were crammed down in <u>Celotex</u>,

16 chosen by them in an action supported by Mr. Insulbuck

17 (phonetic) and Mr. Rice and all -- they had intervened in it,

18 of trying to keep many property damage claims from being paid.

19      New York City and the State of Utah and the State of

20 Illinois, et cetera, et cetera, they're trying to stop the

21 payment because we have a common trough, we have a common fund

22 in <u>Celotex</u>. And they believe that the more money -- the less

23 money that's paid to putative claimants, not just Anderson, but

24 I represent Clemson. I've done more work on Clemson there than

25 I have on Anderson in that bankruptcy. The more money -- or

37

1  the less money that goes into the payment of PD claims, the

2  more money goes to PI claims.  So, yes, there's litigation down

3  there and yes, the trustee's are challenging, and yes, the --

4  excuse me, Your Honor.

5         And yes, Your Honor, two bankruptcy judges, Judge

6  Thomas Baynes who got so infuriated after having the case for

7  12 years and after ruling against the trust and saying pay a

8  lot of these PD claims, it's the claims administrator who

9  decides, recused himself after 10 or 12 years on the case.  The

10 case then went to Judge Glenn, Judge Paul Glenn who has now

11 issued orders in every situation, upholding the property damage

12 claims administrator.  Anderson just hadn't gotten up yet.  It

13 will probably get up very soon.

14        And in addition, Judge Glenn has now been affirmed by

15 the district court in Florida that the trustees did not have

16 the authority to fail or refuse to pay these claims.  I mean,

17 Your Honor, I can go on and on.

18        Perhaps the one I should address because I believe

19 this is the fourth or fifth hearing in which, after the claim

20 has been withdrawn, the fourth or fifth hearing that -- and I

21 want a legal hearing to argue about American Reserve and

22 Charter and what the fiduciary responsibilities are.  The

23 fourth or fifth hearing -- the AMA comes up again.  The claim

24 was withdrawn in early summer.  And they use that one as

25 supposedly -- the others they've known about for three or four

38

1  years, that I filed claims under the Anderson umbrella.  But

2  they claim, it's not what the affidavit says, they claim that

3  the AMA -- I was told or more appropriately, I guess, or more

4  accurately, my associate was told not to file the claim.  And

5  Your Honor, in July 29, I think that date's right or maybe it

6  was 21st -- maybe July 20th.  When I was on that plane to

7  California, you got real upset when somebody told you that

8  somebody told my firm not to file a claim and we did so.  And I

9  don't blame you for getting upset.  And it did not happen.  And

10 I'm prepared to meet that factual assertion.

11         THE COURT:  Wait just a second.

12         MR. SPEIGHTS:  I've had an affidavit from Ms.

13 Stenmeyer (phonetic) in my bag since we met two hearings ago.

14 But Your Honor also said that claim's been withdrawn.  We're in

15 an expungement process and today we're here dealing with facts.

16 And I am assured from my records --

17         THE COURT:  You lost me for one second, Mr. Speights.

18 What didn't happen.  You never got a phone call from --

19 somebody in your firm never was told by the AMA not to file a

20 claim?  What is it that didn't happen?

21         MR. SPEIGHTS:  We were not told not to file, I know

22 that's a double negative.  From my investigation, I wasn't

23 involved in it.  You know, this one -- there's so many slight

24 of hands.  Just one of the curiouser ones is if you look at

25 their -- if you look at their fee records and you see Speights

39

1   & Runyon, it's always S&R.  That's the way we've been referred

2   to, like K&E.  Well, now, we're not K&E, but we've been

3   referred to as S&R since 1987.  But if you go in all the briefs

4   they've filed here, it's always Speights & Runyon, quote,

5   Speights because they know that and I take responsibility for

6   my firm and I'm not backing away from what my people did and I

7   believe what my people did was honoring their duties to this

8   class, but they know that I don't have firsthand knowledge.

9        Once they raised this issue, I have an affidavit from

10  Ms. Stenmeyer and I have the factual investigation into the

11  matter.  The claim was always going -- a factual investigation

12  into the matter which convinces me that the American Medical

13  Association did not tell us not to file the claim.  There were

14  a number of discussions about the claim.  And ultimately, the

15  AMA decided not to go forward with the claim and told Speights

16  & Runyon to withdraw the claim.  Now, that's a factual issue.

17       THE COURT:  But the question -- but the real -- it is

18  a factual issue.  But the real question isn't whether you were

19  told not to file it, it's whether you were told to file it.

20  That's how you get authority.  It's expressed authority that's

21  required.  You just don't go willy-nilly filing claims on

22  behalf of entities and buildings in any bankruptcy case just

23  because you can.

24       MR. SPEIGHTS:  And that brings us to the legal issue,

25  Your Honor.  That is the legal issue.  Whether we have the

                   **J&J COURT TRANSCRIBERS, INC.**

40

1  legal authority because at the end of the day, while AMA has

2  been expunged and is not before you, there are claims here, and

3  I believe 500 and something claims, which are members of a

4  putative class or certified class.  And we believe that we have

5  the authority to file those as a matter of law.  And that's

6  what I came to argue today and hopefully I can convince you of

7  that, Your Honor.  But I just had to address some of these

8  factual assertions and there are many, many more, if I get the

9  transcript, I can annotate it for you, which try to obfuscate

10  the narrow legal issue before you.  Let me step back, if I

11  could, Your Honor, and go --

12           THE COURT:  Well, let me ask one factual question

13  first because I want to make sure there isn't a disagreement

14  about this.  Whatever the class action was that was certified,

15  it was apparently an in-state class in South Carolina, correct?

16           MR. SPEIGHTS:  Yes, ma'am.

17           THE COURT:  All right.  And it was an opt-out class,

18  is that correct?

19           MR. SPEIGHTS:  Yes, ma'am.

20           THE COURT:  And notice never went out to the putative

21  class members to provide them the opportunity to do the opt-

22  out?

23           MR. SPEIGHTS:  That's correct.

24           THE COURT:  So you don't, at this point, know who the

25  class members are because that class, based on whatever it is,

**J&J COURT TRANSCRIBERS, INC.**

41

1  hasn't yet been given notice and a chance to decide whether to

2  be in or not to be in?

3          MR. SPEIGHTS:  That's correct, Your Honor.  And for

4  good reason, as Your Honor I'm sure understands that right

5  after the class was certified, both Mr. Grace in February and

6  as to USG and Mogul and U.S. Mineral in June, all of these

7  people, all of these companies declared bankruptcy in the

8  court.  So that --

9          THE COURT:  Well, I do understand it.  I guess my --

10  what I want to get to is how there is authority as a matter of

11  law to file it when the class itself isn't yet determined.

12  That's where I think the legal issue has to go.

13          MR. SPEIGHTS:  And I'm happy to go there, Your Honor,

14  and maybe I shouldn't go back to where I wanted to start, but

15  as Grace wanted to put its spin on things and wanted to place

16  its -- everything in context as it sees the world, I want to

17  take about five minutes and tell you how I see the world and

18  then get down to the nut of the issue.

19          THE COURT:  All right.

20          MR. SPEIGHTS:  The authority issue.  You know, Your

21  Honor, in medicine, and I do mean in medicine, that sounds a

22  strange way to start, there are physicians who treat disease

23  and there are physicians who try to prevent disease.  And the

24  same is true with asbestos litigation.  There are lawyers who

25  represent people with disease or, sometimes, allegedly with

J&J COURT TRANSCRIBERS, INC.

42

1 asbestos disease.  And there are lawyers and clients who try to

2 prevent asbestos disease.

3         You know, my side of the bar, and I've seen in many

4 transcripts of Mr. Bernick going toe-to-toe with Mr. Baena,

5 talking about property damage claims.  But on behalf of my

6 constituency of property damage claimants, and I've represented

7 them since I first sued Grace in July 1982, property damage

8 claimants first of all are building owners, have saved a huge

9 number of lives.  They really have.

10         You know, all of the -- not all, but most of the

11 asbestos disease of the past years, and it was a terrible,

12 destructive number of cases of asbestos disease, occurred, for

13 instance, in shipyards, not because, and this is something that

14 the BI fellows don't talk about a whole lot, not because of

15 people applying the material in a wet state often, but because

16 of all the rip-outs which created these monstrous dusty

17 conditions and huge numbers of disease.  The same thing

18 occurred with the asbestos insulators, not people who applied

19 it, but before you applied it, you had to rip out the old.

20         And the same thing would have occurred with Grace's

21 material which was essentially, the vast majority sold in the

22 1960s and placed on beams and ceilings throughout America, the

23 same thing would have occurred if we didn't have federal

24 regulations and if we didn't have building owners who spend

25 millions of dollars to safely remove the asbestos from

                    **J&J COURT TRANSCRIBERS, INC.**

43

1  buildings, there would be hundreds of thousands of additional

2  victims of asbestos disease.

3        We are in the prevention business.  In addition, we

4  have saved Grace a countless number of lawsuits by preventing

5  those.  And it's sort of ironic that we come along trying to

6  get Grace to pay for our saving them money, our saving them all

7  of these asbestos lawsuits and have Grace team up with the

8  bodily injury group, and I believe there is a -- I believe

9  there is something in the winds, I may be wrong, I think

10 they'll come to you very shortly -- team up with the asbestos

11 bodily injury group and say, well, these people who are never

12 sick and never were exposed to Grace's product are entitled to

13 money and the people who save us by safely removing the

14 asbestos are not entitled to a cent.

15        I'm very proud to have represented the property

16 damage claimants since 1982.  And I want to tell you why this

17 fits in with Anderson.  I won a bunch of cases against Grace,

18 or settled a bunch of cases.  Got an $8 million verdict

19 affirmed by the Fourth Circuit when Grace hired Griffin Bell

20 (phonetic), the former attorney general, to argue in the face

21 of it.  I tried the case.  Mr. Westbrook (phonetic) argued the

22 appeal.  In case he's on the phone, I don't want to take credit

23 for the appeal.

24        And then Grace does something very smart.  They hire

25 a whole new team of lawyers, in-house lawyers under Mr. Beber

44

1  and Mr. Sparks and Mr. Fink and others.  And they said, we've

2  got to get hold of this situation.  Grace wasn't even on the

3  bodily injury radar screen then.  All of the cases and all of

4  the settlements back during that time, almost all, were

5  property damage settlements.  But that was the situation and

6  they did some very smart things for their client, W.R. Grace.

7       The first thing they did was they formed an

8  organization known as a Safe Building Alliance.  And that is

9  discussed in a Third Circuit Appellate decision which the Safe

10 Building Alliance, massive amounts of money, publicized to all

11 the world misinformation.  I would say saying, leave your

12 asbestos in place, don't remove it.  Leave it in place, don't

13 remove it until demolition of the building or substantial

14 renovations.  Now, Grace was altruistic.  Grace did that

15 because it wanted everybody to wait until the statute of

16 limitations run under their view of the statute of limitations.

17      And the second thing they did was they influenced the

18 regulators.  Everybody influences regulators.  They're walking

19 the halls of EPA and all the other agencies, it seems, in

20 Washington.  But they got the EPA to back off and in the early

21 90s, they got the EPA to publish what's called the Green Book.

22 And the Green Book says, unlike earlier versions of what EPA's

23 guidance was, that in many cases, it's better to leave the

24 asbestos in place and wait until demolition of the building.

25      So it's 1992.  I just got back from North Dakota

**J&J COURT TRANSCRIBERS, INC.**

45

1 trying that NDU case that I've cited to you often on statute of

2 limitations.  The worse 12 weeks of my life.  Grave got a

3 verdict on the statute of limitations and on liability.  The

4 first loss that I had incurred.  And I had to face the Green

5 Book in this new defense.  And I came back to South Carolina

6 and drafted a complaint of a, we'll call it a National Class

7 Action.  Grace is technically correct, that they did not have

8 geographical boundaries.  It certainly included Canadian

9 buildings.

10         I came back and drew a complaint.  And I was torn

11 whether to file the case in South Carolina or not because I was

12 aware of the door closing statute, the original door closing

13 statute case came from my home county.  But then Federal Judge

14 Bloch ruled in the Central Wesleyan College class, that the

15 door closing statute was not an impediment where the named

16 class representative was a South Carolina citizen.  So I filed

17 the case in 1992 in South Carolina.

18         Now, that was a big deal, I think, to Grace.  And

19 when they tell you, Your Honor, we only have seven cases, what

20 they don't tell is before 1992, the majority of cases filed

21 against Grace, property damage cases, were filed by Speights &

22 Runyon.  And we decided to put our eggs in the basket of

23 Anderson class action.  And we pursued that litigation for a

24 number of years.  It was contentious.  It was difficult.  We

25 won the venue motion to keep it in Hampton.  We lost the door

J&J COURT TRANSCRIBERS, INC.

46

1  closing motion and we couldn't appeal it.  We took discovery

2  all over the country.  We had an adversarial evidentiary

3  hearing on certification.  We had multiple discussions with

4  Grace.  We have out-of-pocket expenses of close to a million

5  dollars.  We've got millions of dollars in fees.

6        I'm not saying that decides the legal issue today,

7  but the idea that all of a sudden Mr. Speights or Mr. Speights

8  associate, sometime in March of 2003 was off her rocker when

9  she filed a bunch of claims, she had a lot of -- she had a lot

10  in front of her when she filed those claims that said that she

11  should do it.  She had the <u>Celotex</u> order.  She had an ethical

12  opinion by a law school professor.  And I have that affidavit.

13  I have an affidavit from a law school professor once we get

14  into the facts.

15        She had the court hearing that attended where the

16  judge in that case heard all the evidence and she had -- forget

17  -- I don't think the order, the later order applies to Grace.

18  I've never said that.  The order itself says it doesn't.  But

19  she had Judge Hayes saying there was absolutely no basis for

20  the attack that we didn't have authority to file <u>Celotex</u>

21  claims.  So she filed those, we filed those, my law firm filed

22  those in good faith.

23        Now, there's something else interesting about this,

24  Your Honor.  And -- excuse me, Your Honor.  I read the -- in

25  the transcript, Your Honor, which is a 2002 transcript, which

**J&J COURT TRANSCRIBERS, INC.**

47

1  was first mentioned in the reply argument.  I don't know if

2  they just discovered it or whether they had some reliance on it

3  all along.  But the 2002 argument is very interesting for a

4  number of reasons.  And I'm going to address them in a few

5  minutes.

6          But among other things, it's Mr. Bernick, when they

7  were arguing about the bar date order, the appropriate bar date

8  order before Your Honor, they suggested that he didn't want a

9  class proof of claim.  He argued strenuously against it.  And

10 Mr. Bernick wanted people to furnish data.  That's what Mr.

11 Bernick's position was.  And at the end of the hearing, as I

12 interpret it, and I was there and you were there, but it's been

13 a long time for both of us, you said to Mr. Bernick and Mr.

14 Baena, well, you guys need to work out this bar date order, et

15 cetera, et cetera.  And the bar date order goes out and never

16 mentions class claims unlike some other bankruptcies.  Mr.

17 Bernick got his way, in my opinion, that the bar date order did

18 not say you must file a request for -- file a class proof of

19 claim, et cetera.

20         More importantly, American Reserve, which I'll get to

21 in a few minutes, does not require you to do that.  The law is

22 not that you have to do that as I'll discuss in a few minutes.

23 But in any event, not only did we file these claims based upon

24 everything that we heard in South Carolina, not only based upon

25 ethical advice, but what I think what we actually did was

                    J&J COURT TRANSCRIBERS, INC.

48

1  consistent with Mr. Bernick's explanation to the Court in 2002.

2         So let's get to the law.  By stipulation, we have

3  agreed to first go forward on purely legal issues.  The first

4  two legal issues are whether, as a matter of law, we had

5  authority to file these two claims.  That's all before the

6  Court.  None of this other stuff is before the Court.  If it

7  is, I want discovery.

8         My response is simple and straightforward.  The cases

9  we have cited to you say we not only had the right, but the

10 duty to file these class proofs of claim.  I believe <u>American</u>

11 <u>Reserve</u> clearly holds that.  It has been followed.  It's an

12 opinion that is written by two of the most distinguished judges

13 in the United States including Justice -- Judge Posner.  It's

14 cited by Mr. Bernick.  It's been followed by the Eleventh

15 Circuit in <u>Charter</u>.  We cited it repeatedly in the brief.  And

16 what the court said in <u>American Reserve</u> is that counsel for a

17 putative class are counsel for the missing.

18        THE COURT:  I'm sorry, say again?

19        MR. SPEIGHTS:  Counsel for a putative -- does this

20 work?

21        THE COURT:  Yes.

22        MR. SPEIGHTS:  If I could just place on there.  It's

23 the only overhead I have, Your Honor.

24        THE CLERK:  I don't think it's turned on.

25        THE COURT:  Counsel for the putative classes what?

49

1      MR. SPEIGHTS:  Counsel for the missing.

2      THE COURT:  Okay.

3                        (Pause)

4      MR. SPEIGHTS:  If I could, Your Honor, a Rule 23

5 class action --

6      THE CLERK:  Excuse me, sir, you'll need a mic.

7      MR. SPEIGHTS:  I'm sorry.

8      THE CLERK:  Here's a hand mic if you --

9      MR. SPEIGHTS:  Thank you.  "A Rule 23 class action is

10 not simply a device by which one plaintiff prosecutes the case

11 after many have separate suits or intervene in a pending suit,

12 it is a device by which the representative is an agent of

13 persons who have not appeared or given even passive consent."

14      MS. BROWDY:  Excuse me, could I get a citation to

15 where in the case you are?

16      MR. SPEIGHTS:  I've got the WestLaw at page 6.  Do

17 you have a WestLaw of -- okay.

18      MS. BROWDY:  Thank you.

19      MR. SPEIGHTS:  Paragraph that starts 3001(b).  And

20 then in the next paragraph is what I was citing to, Your Honor.

21 "The representative in a class action is an agent for the

22 missing.  Not every effort to represent a class will succeed.

23 The representative is an agent only if the class is certified.

24 Putative agents keep the case alive pending the decision on

25 certification.  If the bankruptcy judge denies a request to

                    **J&J COURT TRANSCRIBERS, INC.**

50

1  certify a class, then each creditor must file an individual
2  proof of claim.  The putative agent never obtains 'authorized
3  agent' status.  If the court certifies the class, however, the
4  self-appointed agent has become 'authorized' and the original
5  filing is effective for the class of principles.  It follows
6  that there may be proofs of claims in bankruptcy."
7        Now that's the leading case followed by all of the
8  circuit courts that have dealt with the issue since then.  And
9  that recognizes -- and that in case there's nowhere in that
10  opinion that I can find nor did I even think that anybody would
11  ever suggest before today that you needed to get permission
12  from the court to file the class proofs of claim.
13        THE COURT:  But why do I -- I mean, I'm not sure
14  today's the day to argue the class proof of claim issue because
15  I don't think it's scheduled for today.  But I do have one
16  concern and that's I already have the individual claims.  Why
17  do I need a class claim now.  I mean, maybe at some point we
18  can get into those details, but filing a class proof of claim,
19  it would seem would eliminate the need to file the individuals.
20  I understand in at least one case it's been done the other way
21  and there were individual claims filed and then a class
22  certified later, I think primarily for the purpose of dealing
23  with those proofs of claim in a plan context.  But, I mean,
24  that's kind of reinventing the wheel, but I'm really not sure
25  that's the issue for today.

51

1          MR. SPEIGHTS:  Well, Your Honor, the reason it's the

2 issue is we did it both ways.

3          THE COURT:  But you only -- you haven't filed the

4 request to file a class -- or are you saying you filed the

5 class proof of claim as these 9911 and 9913 claims?

6          MR. SPEIGHTS:  We filed a class proof of claim.

7          THE COURT:  Okay.

8          MR. SPEIGHTS:  And we filed individual proofs of

9 claim of members of the putative class.

10         THE COURT:  All right.

11         MR. SPEIGHTS:  We did it both ways.  And we were sort

12 of in that situation, damn if you do and damn if you don't.

13 The way we did it I think is consistent with what Mr. Bernick

14 wanted.  Maybe not, but if you read that transcript, it's

15 consistent with what we were advised.  You know, you're sitting

16 in this situation where you were told you have a fiduciary duty

17 and we were told that by the ethics professor.  And we did it

18 both ways.

19         I would actually ask the question the opposite of

20 Your Honor.  I would say, why did you file the individual ones

21 if you already were filing the class proofs of claims.

22         THE COURT:  Well, either, but the reality is we don't

23 need both.

24         MR. SPEIGHTS:  And that might be the case.  And my

25 solution of this whole problem I think deals with that problem,

52

1  Your Honor.  And I'm skipping over three pages and getting to

2  the heart of the matter.  I could discuss all the other cases.

3       What the cases teach and the best one on this is the

4  Charter case which was the next one along which was an Eleventh

5  Circuit case in the face of an objection by the debtors, well,

6  it's untimely now because it's been two or three years down the

7  road.  I don't think we're untimely for reasons I can address.

8       And what the Eleventh Circuit said is no, when they

9  file an objection to your claim, that triggered, at that point,

10  your right -- that made it a contested proceeding and gave you

11  the right to file a motion to certify.  And that's what

12  happened here.  They filed objections in September.  We filed a

13  motion to certify the Anderson class within a matter of weeks.

14  We had always -- I say always -- we had researched that and we

15  thought that's what the cases told us.  When they object, you

16  file your motion to certify.

17       And in fact, the cases teach us, especially the

18  Charter case, but others as well, that it's good to have this

19  period of time.  People can talk.  You can try to resolve

20  issues, et cetera, et cetera, just as we were trying to do.

21  But you do not -- you're not untimely if you file it within a

22  reasonable time after they file a motion to object.

23       And my solution is very simple, Your Honor.  And I

24  almost was going to stand up here today and give you a 10-

25  minute solution before I had to face that onslaught again.  My

53

1  solution is very simple.  We've now filed the motion to

2  certify.  What this case, this quote teaches us right here is

3  that we have a -- we are putative agents.  We are tentative

4  agents.

5       All Your Honor needs to do is to resolve the motion

6  to certify.  If you resolve the motion to certify by saying,

7  Mr. Speights, I'm denying the motion to certify, it evaporates

8  the authority.  It's gone.  Not because it's some nasty

9  allegation that we did something improperly.  Because it's a

10 matter of law.  That's what the legal import is.  They win on

11 the authority issue for all of these 500 and something claims

12 if you don't certify without any of these factual issues

13 getting involved.

14      And if Your Honor certifies the class action, then we

15 have authority, direct authority under that quote that I just

16 read to you.  And all of this other can go away.  All Your

17 Honor needs to do -- their response is not due yet -- their

18 response needs to be filed, we need to have a case management

19 order and we'll argue.

20      And why is that not in Grace's interest?  Well, the

21 first thing -- you know, I can hear Ms. Browdy from this right

22 ear almost over here, her brain is thinking.  Why is it not in

23 Grace's interest.  Well, it should be in Grace's interest

24 because I believe it will get rid of this issue in a quick and

25 expeditious manner with very little discovery, et cetera, et

54

1  cetera.  I think it's in Grace's interest because it results in

2  a full hearing on this issue on behalf of absent class members

3  who can never complain again which ever way the Court decides.

4  You certify and they're here.  You don't certify, they had

5  their day in court, they had their due process.

6        I mean, I don't know why they might say well, it

7  delays.  Mr. Speights is up here shuffling his feet and trying

8  to delay.  Well, Your Honor, Grace had two and a half years to

9  object to these claims.  And they waited.  And they waited

10 because -- I don't criticize them for waiting.  In fact, it

11 would have suited me if they had waited another 10 years.  But

12 they waited because they were working toward a consensual plan

13 of reorganization.  And when that fell apart, they went on the

14 attack.  But there is no, as I see it, downside to deciding --

15 to resolve it as we said.

16        Now, Your Honor, I must say this.  There's also --

17 I'm not inviting this, but in response to what I expect to

18 hear, there's no downside to Grace because they can make every

19 argument, or almost every argument they want to make in

20 response to the motion to certify.

21        If they want to tell you not to recognize the South

22 Carolina judge's order because it was ex parte or whatever,

23 they can make that argument on the motion to certify.  They can

24 ask you not to recognize it.  If they want to attack me

25 personally, they can do that in the guise of adequacy of

55

1 counsel. If they want to argue about the validity of any of

2 these claims, if they want to argue about anything that's been

3 done, they can do it in the context of a certification hearing.

4          Excuse me one minute, Your Honor.

5                    (Pause)

6          MR. SPEIGHTS: Your Honor, I don't know actually

7 where -- you know, I've been at this profession a good many

8 years. But I don't know actually where we are and I need to

9 go. I've said my piece on the facts. I don't think there's --

10 I've said my piece on the history. I think I've given you a

11 little context. And I've said my position which is we believe

12 that these cases provided for us putative authority to file

13 these claims.

14          I would be happy to go into detail about what the

15 putative class and what the amended complaint was. I'd be

16 happy to go into detail about the entire history. I'd be happy

17 to go into detail about what Your Honor said during the 2002

18 hearing. There are a number of statements Your Honor made.

19          But at least I think, Your Honor, unless you have

20 questions and if I didn't answer your questions, I want you --

21 I beg Your Honor to ask me again because I'm not trying to

22 avoid your questions. I'm going to sit down and see what they

23 say because it just seems to me that I've never been in a

24 situation where the law was so absolutely clear that we had a

25 right to file class proofs of claims and once they object, to

56

1  move to certify and Your Honor decides whether to allow to

2  certify or not certify.  And we can do that and get rid of all

3  this mess one way or the other.

4          THE COURT:  Well, okay.  I'm having, I guess, two

5  problems.  One is I see a distinction between the possible

6  authority to file a class proof of claim and the authority to

7  file individual claims.

8          As to the class proof, for purposes of this

9  discussion right now, I'm just going to accept the proposition

10 that as a putative class representative, you have authority to

11 file those claims because I don't want to deal with that right

12 now in this context.

13         What I am concerned about is where the authority to

14 file the individual claims is because even if you can act as an

15 agent, even if you have the authority to file putative claims

16 on behalf of a class, filing an individual claim is a much

17 different thing.  And those people, whoever the entity for

18 which you're filing that proof of claim, does have to give you

19 authority, does have to either sign or have you sign the proof

20 of claim under penalty of perjury, does have to answer the

21 questionnaire correctly, not with made up information on the

22 spur of the moment.

23         And so that is very troubling to me.  I am willing to

24 deal, as I said, right now with the class issues in the context

25 in the motion to certify the class.  But that does not, in my

                    **J&J COURT TRANSCRIBERS, INC.**

57

1   view, abrogate the responsibility to deal individually with

2   individual clients in an individual -- on an individual claim

3   basis and make sure that the correct authority is there.  And I

4   don't think that the two are necessarily the same.

5           And I'm concerned if there is no authority to file

6   the individual claims as to why they're filed.  And I haven't

7   heard anything in your argument that addresses those individual

8   claims.  So that's number one.

9           I have another, but in the process of stating that

10  one, I forgotten temporarily what it is.  It will come to me.

11          MR. SPEIGHTS:  And I appreciate that, Your Honor, and

12  I hope you'll appreciate the predicament we're in when we have

13  a series of cases, the majority view saying you file your

14  putative class action proof of claim.  Other cases saying --

15  and the Third Circuit had ruled explicitly on this, other cases

16  going back to Manville and saying you have to file individual

17  proofs of claim.  We think we have the authority.  We -- and I

18  believe this gets into the facts that we have to deal with and

19  I'd like to be able to show you the facts why we believe we had

20  the fiduciary authority to file those claims because they are

21  members of the class and why we thought we were doing what Mr.

22  Bernick wanted in getting more information.

23          You know, in retrospect now, it's three or four years

24  later, and we can second guess and say, well, if you had the

25  two class claims, we really didn't need to file the individual

                    **J&J COURT TRANSCRIBERS, INC.**

58

1  claims because they were covered by the class.  And then we --

2  I believe we would get to this spot.  We'd just have two class

3  claims.  We arguing if you grant certification, we're home

4  free.  We represent those 500 as well as a bunch of others.

5        And if you don't grant certification, then you've got

6  a problem, Your Honor, and this was what Mr. Bernick, I'm sure,

7  was concerned about as well.  If you don't, then you've got to

8  go out with, I believe the law would say, with some notice

9  saying you had refused the certified.  At least, there's a

10  debate among the cases about what you'd do if you refuse to

11  certify a class.

12        THE COURT:  Well, we may -- that issue, however, is

13  clearly taken away by virtue of the fact that we had a bar date

14  for individual property damage claims.  There cannot be a

15  person in the country who can argue at this point that that bar

16  date notice doesn't apply.

17        So as to the individual data -- individual claimants,

18  they got notice that they had to file a proof of claim and if

19  they haven't, whether they attempt to be part of a class or

20  not, I think at this point, they're not going to get into a

21  class because they didn't file a proof of claim.  Therefore, I

22  don't know how you get into a class when you had a chance to

23  file an individual claim and you didn't.  That's why I'm

24  concerned that at this point that may be duplicative.

25        But again, that's not for today.  For today the issue

59

1  is this, some of there individual claimants may have their own

2  counsel.  They may decide to file on there own.  They are not

3  aware that they were a member of a putative class anywhere

4  because the opt-out notice was never sent.  So if they choose

5  to file an individual claim, they've done it.  If they don't

6  choose to file an individual claim, I don't see how Speights &

7  Runyon or any other firm can do it for them without that

8  express authority because they don't know anything about the

9  putative class, they haven't been given an opt out.

10      MR. SPEIGHTS:  Let me try it this way, Judge.  And

11  I'm looking for a solution.  We talked about, and I hope I can

12  say this without over-skirting my work product and everything

13  else.  We actually talked about why not withdraw the 500 claims

14  outside of South Carolina.  South Carolina is a whole different

15  ball of wax, certified class.  Why not withdraw those without

16  prejudice similar to what we did on the conspiracy claims, and

17  then argue the motion to certify.

18      Now, we withdrew some claims, I'm glad I reminded

19  myself with that since, we withdrew some claims but it's

20  because these people told us to withdraw.  We weren't violating

21  our fiduciary duty.  People told us to withdraw like AMA and

22  others, we withdrew them.  That's what that's all about.

23      But why not, after this war is declared on us in

24  sometime earlier this year, why not just withdraw those?  That

25  would be the easy thing to do.  Before September 1, Speights &

60

1  Runyon could have come and withdrawn those 500 claims and taken

2  the position they were covered by the class proof of claim.

3          THE COURT:  You could have withdrawn the 500 in-state

4  claims?

5          MR. SPEIGHTS:  No, I'm talking about the out-of-

6  state.  The putative class claims.

7          THE COURT:  Well, I don't see at this point how those

8  are covered by the putative class claims because they haven't

9  been certified.  The only thing that's been certified as I

10 understand it, and please correct me if I'm in error, are the

11 in-state claims.

12         MR. SPEIGHTS:  You're absolutely right, Your Honor.

13 And that's a distinction.  What I'm saying to Your Honor is

14 that we didn't just consider in passing.  We considered whether

15 we should withdraw the 500 putative class claims --

16         THE COURT:  In-state or out-of-state?

17         MR. SPEIGHTS:  Out-of-state.

18         THE COURT:  Okay.

19         MR. SPEIGHTS:  We considered that and then just argue

20 the motion to certify the class claims when that arises.  And

21 if we win that, we have those 500.  And if we lose that, we

22 never had those 500.

23         THE COURT:  Oh, I see.  You'd argue a motion to

24 certify the out-of-state claims as a putative class.

25         MR. SPEIGHTS:  That's right.

                    **J&J COURT TRANSCRIBERS, INC.**

61

1              THE COURT:  Okay.

2              MR. SPEIGHTS:  And we could have done that.  And it

3    might have been the safer avenue to take for Speights & Runyon.

4    But we were concerned, rightfully or wrongfully, we were

5    concerned with our fiduciary duties if we all of a sudden

6    withdrew these 500 claims without at least getting some

7    direction from the Court.

8              THE COURT:  Well, but if there's no authority to file

9    them in the first place because they're not part of the

10   Anderson putative class, then I don't understand where this

11   fiduciary duty concept if coming from as to those individuals.

12             MR. SPEIGHTS:  They are part of the putative class in

13   our view.  They are part of the putative class, they are

14   building owners with Grace's product who are within the

15   definition of the putative class --

16             THE COURT:  But you've told -- you've been told by

17   the South Carolina courts that that's not the case.

18             MR. SPEIGHTS:  Well, actually --

19             THE COURT:  There is no putative class certified

20   under the -- I'm looking at Anderson -- under the Anderson line

21   of case.

22             MR. SPEIGHTS:  That's not correct, Your Honor, and I

23   should have addressed that and I thank you for asking me these

24   questions as I want to clarify this.

25             All that was involved in the Anderson, we'll call it

                    **J&J COURT TRANSCRIBERS, INC.**

62

1 nationwide, they moved to strike those allegations from the

2 complaint which the court did under the door closing statute.

3 There was never a motion to certify despite what was said

4 today.

5          THE COURT: All right.

6          MR. SPEIGHTS: They were struck from the complaint.

7 We wanted to appeal. We could not appeal because it was

8 interlocutory. In the final order, which I don't rely on for

9 Grace, the judge specifically says that we reserve our right to

10 appeal whether the certification should be broadened to include

11 the nationwide class. There was a split of authority in South

12 Carolina on that issue. Judge Howard, who decided against us,

13 Judge Buckner, another circuit court judge, decided in the Bell

14 case for us. The Central Wesleyan case, Judge Bloch, and the

15 Central Wesleyan appeal in the Fourth Circuit were all on the

16 outside.

17          So we had that issue to go to the Supreme Court. Now

18 we now know with perfect hindsight what the Supreme Court would

19 have done. I not only was on the brief, I argued the case in

20 the Supreme Court. We now know, not for the reasons Judge

21 Howard said, but for other reasons, that the South Carolina

22 Supreme Court said the door closing statute says that a state

23 circuit court cannot entertain these claims for out-of-state

24 people. But a federal court can. That decision came out after

25 the bar order, after the bar order, at the time we were filing

63

1  claims.  Excuse me, after the bar date.

2        THE COURT:  But the point for my purposes is, I

3  think, the question of the fiduciary duty.  As I understood

4  what you told me, I think, in August, you have an opinion from

5  a law professor that says that because there was a

6  certification by the state court in South Carolina of a class,

7  that you have an obligation to file something here on behalf of

8  that class.  And so you did.  But the problem is that that

9  certification doesn't include the out-of-state claims.

10       MR. SPEIGHTS:  Your Honor, if I said that, that's not

11 what I meant to say.  What happened was and what the facts are

12 and what I have an affidavit to show you if we have to get to

13 this, you know, is that the law professor said that we have the

14 obligation to file claims on behalf of putative class members

15 because we had filed that class action on them, on their

16 behalf, and that class action was still alive because we had

17 not had the appeal.  That was also the precise issue which

18 Grace raised in South Carolina.

19       THE COURT:  But it's been decided since.  When did

20 this -- did the decision that said that the door closing

21 statute would prohibit the state court in South Carolina from

22 hearing the out-of-state claims come down before or after the

23 proof of claim was filed here?

24       MR. SPEIGHTS:  After.

25       THE COURT:  All right.  So you filed it based on the

                    **J&J COURT TRANSCRIBERS, INC.**

64

1  fact that the appeal hadn't yet been decided that now you know

2  that the state court in South Carolina is not going to certify

3  that class because the state -- the Supreme Court said it

4  can't.

5          MR. SPEIGHTS:  I think I would be hard pressed to try

6  to convince the Supreme Court on appeal to do something

7  differently than it did in the other case I had up there.

8          But, Your Honor, there are a couple things about

9  that.  I want to go back to the fiduciary and then come back to

10  that.  What the hearing was about in South Carolina was we did

11  the same thing in <u>Celotex</u>.  We filed for members of the

12  putative class in <u>Celotex</u> why we couldn't appeal that ruling,

13  okay.  And Grace took the position that we were inadequate

14  counsel, big-time experts testifying now, we were inadequate

15  counsel because we shouldn't have done that.  And we call

16  experts and the court decided in it implicit and the

17  conditional certification that there was no basis to that

18  adequacy attack on that ground.

19          Then, before we filed claims in Grace, the South

20  Carolina Supreme Court still hadn't ruled, before we filed

21  claims in Grace, we again consulted with that ethics professor

22  who told us we had a fiduciary obligation to file claims on

23  behalf of putative class members, to pursue it.

24          Now, to your direct question, you said, well, you

25  know, we now know that the South Carolina Supreme Court would

65

1  not allow you, Mr. Speights, to proceed with the nationwide

2  class action.  Well, if Grace had never filed bankruptcy, and I

3  wish they had not as I'm sure many of Grace's employees wish

4  that, if Grace had never filed bankruptcy all I would have --

5  could have done was to take my case, okay, once the South

6  Carolina Supreme Court ruled in April of 2003, down to

7  Beaufort, South Carolina, 39 miles from Hampton, and file the

8  complaint in federal court.

9          I could proceed with the putative class.  I could

10 proceed with it because the South Carolina Supreme Court said

11 it only applies to state court and because the Fourth Circuit

12 Court of Appeals had said that the door closing statute does

13 not bar the same type of litigation when the colleges file --

14         THE COURT:  Okay.  Well --

15         MR. SPEIGHTS:  And I could file it here.  There is no

16 -- the door closing statute does not preclude Your Honor, and

17 if we ever get to the motion to certify, we'll brief it, does

18 not preclude Your Honor from deciding as a federal bankruptcy

19 judge whether to certify or not certify this class action.

20         THE COURT:  Okay.  Well, I guess the only difficulty

21 I have at this point is the fact that we have individual claims

22 that have been filed.  And I am still concerned, you know,

23 there -- as I said, there may be some basis once the individual

24 claims are known and fixed, that is who can file them, to put

25 them into assorted classes, perhaps, for disposition.  Maybe

J&J COURT TRANSCRIBERS, INC.

66

1  that makes some sense.

2       But it doesn't make any sense to me at this point

3  that I have individual claims filed unless there is expressed

4  authority from those claimants to file those individual claims.

5  Now, again, I'm excluding the in-state South Carolina

6  plaintiffs from this discussion at the moment because that's

7  really not what I want to focus on at the moment. But I do not

8  see how there is authority either because there was a putative

9  class that could have been filed in another court, but wasn't

10 yet. Or because of any other theory where you can file an

11 individual proof of claim for someone without the authority of

12 that entity to do it.

13      MR. SPEIGHTS: Your Honor, I disagree with you, but I

14 believe there is a solution here that's so simple that we can

15 all have our lives made much easier.

16      What I was saying to you and where I was trying to go

17 is that we believe we had to do this -- we did have a putative

18 class action. South Carolina had not ruled when we did all

19 this. And we thought we had a fiduciary responsibility to file

20 these individuals buildings. Your Honor --

21      THE COURT: But then likely -- excuse me one second.

22 But if there's a fiduciary duty to file them when there is

23 potentially a putative class, there's also a fiduciary duty to

24 withdraw them when there isn't a putative class.

25      MR. SPEIGHTS: But Your Honor, that's not the

                   **J&J COURT TRANSCRIBERS, INC.**

67

1 situation.

2          THE COURT:  But it is.

3          MR. SPEIGHTS:  There was not the potential of a

4 putative class, we had a putative class.

5          THE COURT:  But it was not certified.

6          MR. SPEIGHTS:  It was not certified, it was a

7 putative class.

8          THE COURT:  But it -- once it's certified, it's not a

9 putative class anymore.  It's no class.  It's only putative

10 while it's pending, until the motion to certify is decided.

11 After that, it's either a class or it's not a class.

12          MR. SPEIGHTS:  I understand, but we were in this

13 purgatory with respect to the nationwide buildings.

14          THE COURT:  Yes, until the Supreme Court ruled.  I

15 agree.

16          MR. SPEIGHTS:  I don't believe the Supreme Court

17 ruled -- by the time the Supreme Court ruled, we couldn't do

18 anything about it because we were in federal court.  We were

19 not no longer in a state court.

20          THE COURT:  Wait, you're in bankruptcy court?

21          MR. SPEIGHTS:  I'm in federal bankruptcy court.

22          THE COURT:  Right.  Okay.  You filed the proof of

23 claim on a class basis for the out-of-state plaintiffs alleging

24 that the authority is the Anderson case in South Carolina.  The

25 Anderson case goes up on appeal and the South Carolina Supreme

1 Court says there is no authority under the door closing statute

2 to --

3          MR. SPEIGHTS:  That's not correct, Your Honor.

4          THE COURT:  No.  Okay.  Then straighten me out.

5          MR. SPEIGHTS:  We filed the case in South Carolina

6 nationwide.  The trial judge, on a pleadings issue, says you

7 can't go forward nationwide.  You cannot appeal that now.

8 Grace took the position we could not appeal.

9          THE COURT:  Right.  But you had --

10          MR. SPEIGHTS:  That -- the status -- that was the

11 status when we filed all these claims.

12          THE COURT:  Yes.  But then the case was decided by

13 the Supreme Court.

14          MR. SPEIGHTS:  Another case.

15          THE COURT:  Another case.  Okay.  Was decided by the

16 Supreme Court that says that in virtually identical

17 circumstances, the state court cannot take cognizance of out-

18 of-state plaintiffs for this class action.

19          MR. SPEIGHTS:  Right.

20          THE COURT:  Now, okay.  And I think you just said

21 you're going to be very hard pressed to get the State's Supreme

22 Court to back off that opinion in Anderson because it just

23 decided it in a similar case.

24          MR. SPEIGHTS:  If I was in South Carolina, I would

25 try and head to federal court.

                    **J&J COURT TRANSCRIBERS, INC.**

69

1          THE COURT:  Exactly.  But then the -- but Grace files

2     bankruptcy.  So you can't head to federal court.

3          MR. SPEIGHTS:  Well, no, Grace filed -- they had

4     filed bankruptcy years before.  The bar date's expired.  This

5     happened in 2003 when the Supreme Court rules.  I'm no longer

6     in South Carolina.  I'm in Delaware.

7          THE COURT:  That's what I was trying to say.  You

8     don't have the option of taking what would have been the out-

9     of-state class in the Anderson state court in the federal court

10    in South Carolina as to Grace.  You can't do that anymore

11    because now you're in Delaware bankruptcy court based on

12    Grace's bankruptcy.  So the only putative class that could have

13    existed at the time was the state court class.  And it's now

14    clear that state court class can exist.  And therefore it's not

15    a putative class anymore.

16         MR. SPEIGHTS:  And that's where I take a separate

17    road from you, Your Honor.  And now we're getting into a

18    bankruptcy issue and as you know, I'm not a bankruptcy lawyer,

19    but in my opinion is from what my little knowledge is that once

20    Grace filed its bankruptcy, we freeze the situation here.  Yes,

21    we now know what happened in 2003 in South Carolina, but we

22    cannot use that order against us anymore than I can use a June

23    order certifying South Carolina for us.

24         THE COURT:  That order wasn't entered in the Anderson

25    case.

                    **J&J COURT TRANSCRIBERS, INC.**

70

1      MR. SPEIGHTS:  I understand it, but had it -- what

2  that order tells us is, if I was still in South Carolina, I

3  would lose my appeal.  It doesn't say I've lost my appeal.  It

4  doesn't dismiss my complaint.

5      THE COURT:  Right.  That's right.

6      MR. SPEIGHTS:  It doesn't do any of that, okay.  And

7  what it now says because I'm before you, I can file a motion to

8  certify.  It's still a putative class action.  The fact that we

9  know, we have a crystal ball that's 100 percent accurate here.

10 The fact that we know we would lose if we went on appeal in

11 South Carolina doesn't mean we have win on our appeal or that

12 there's any judgment on that issue.  We still have a putative

13 class.  The fact that an order was entered later on does not

14 terminate the putative class.

15      But I've got a solution I really want to get out.  I

16 mean --

17      THE COURT:  Right.  Go ahead.  I promise not to

18 interrupt you.

19      MR. SPEIGHTS:  No, no, I mean, I'm glad I could put

20 down an outline and all these cases and all these facts and get

21 to the nut of the matter.  I really am.  I wanted to know what

22 it was that Your Honor was concerned about.

23      We could spend hours discussing this and to the

24 extent there are factual issues, we'd want discovery.  But my

25 point is very simple.  The 500 out-of-state complainants will

71

1  rise or fall with the motion to certify. And what my first

2  alternative is and the one I think is legally correct, but it's

3  also what I much prefer is that you sit on these 500 objections

4  and that you decide the certification.

5       Okay. And if you decide the certification, we have

6  it. They're going to be part of the class. And if you decide

7  against us on certification, how -- pursuant to the case, our

8  authority, our authorization evaporates.

9       But I have a backup solution as well. And I don't

10 quite know how to do it. And I probably need to converse some

11 with my co-counsel here. But the backup is that we could --

12 there's been a change today. There's been a change today

13 because Your Honor now has told us, during this hearing, what

14 your views are. I have fulfilled my fiduciary obligations, I

15 believe, subject to talking to Mr. Fairey a little bit. I have

16 fulfilled my fiduciary obligations by coming and explaining to

17 you why I filed these 500 claims. And I can make a record on

18 that with all the affidavits and everything.

19      But if at the end of the day you're telling me you

20 don't think that's the way I proceeded, I can say that I've

21 gotten the guidance now from the Court that that's not the way

22 we proceeded and withdraw those claims without prejudice to

23 their rights in the event that Your Honor certifies a putative

24 class action. It can go away that way.

25      I couldn't do that before. When we talked about it

                    **J&J COURT TRANSCRIBERS, INC.**

72

1  and all in September, somebody suggested in fact, Dan, just

2  save your hide and get rid of those.  You know, that's a tough

3  job for a lawyer.  You know, you're damn if you do and you're

4  damn if you don't.  Well, my view was, and I may be wrong, I

5  would be criticized because I've got a law school professor

6  saying I have ethical obligation to represent those people with

7  whom have not given me a written authority.

8         So I'm happy if Your Honor's guidance gets me over

9  that fiduciary hurdle and those 500 can go away and we can

10 decide.  Again, I want to talk to Mr. Fairey back here a few

11 minutes, but if that's a solution Your Honor would be

12 interested in, I'll go talk to him right now and we'll see if

13 we can get that.  But I couldn't file a brief, in my opinion,

14 and just cavalierly withdraw those 500 claims because I

15 believed, under the cases, I had authority to sign them.  And I

16 agree, the cases go both ways.  Some you file the claims.  Some

17 you file the class proof of claim.  I did both.

18        THE COURT:  Okay.  Thank you.  Ms. Browdy.

19        MS. BROWDY:  Thank you, Your Honor.  Your Honor's

20 heard a lot this morning.  I just want to address three issues.

21 First I want to address the individual proofs of claims that

22 were submitted.  Second, I'm going to address the class proofs

23 of claim that were submitted.  And third, I want to address the

24 latest motion for class certification.

25        Let's start out first with the individual proofs of

                    J&J COURT TRANSCRIBERS, INC.

1  claims.  We're somewhat dancing around the issues here, Your

2  Honor, on those individual, hundreds and hundreds of individual

3  proofs of claim that Mr. Speights signed and submitted without

4  authorization.  But the bottom line, Your Honor, is that those

5  proofs of claims were fraud.  Mr. Speights had no authority to

6  submit those.  Speights has admitted he had no expressed

7  authority to submit those.  Those proof of claim forms that

8  were approved by this Court requires a signature under penalty

9  of perjury that the statements in it are true, accurate and not

10 misleading.  And again, we know that the Speights & Runyon firm

11 has now admitted that they submitted those claims without

12 expressed authorization.

13         And you saw from the examples that in part because

14 they had no expressed authority to do it, they had to make up

15 the information in those.  Those proofs of claims were

16 fraudulent.  And not only that, Your Honor, it took the debtors

17 years to discover that because Speights didn't just come in

18 here with a class proof of claim form and said, let's litigate

19 the issue.  Instead these hundreds of claims were buried in the

20 thousands and thousands of claims that Speights filed.  We had

21 to take discovery.  We had to come to this Court.  We had to

22 get orders to even confirm what was in those claims.  Those

23 were absolutely, again, fraudulent.  There is no case law that

24 says you have the right to go and make up the information and

25 submit individual claim forms.

74

1      So let's put again the class certification aside for

2  those individual claim forms themselves.  Of course Speights

3  had no authority.  He's admitted those.  They should all be

4  disallowed and expunged.  And we should get fees and costs for

5  the effort of having had to go back and discovery those, this

6  information.  And that's true not only for the out-of-state

7  claims, but for the in-state claims because all of the hundreds

8  of claims identified on Exhibit 1 and 2 of our opening brief,

9  Speights has admitted in compliance with this Court's order of

10 September 23rd that he had no express authority to sign and

11 submit those claim forms.

12      Second, moving on to the class proofs of claim, this

13 issue was addressed almost four years ago in 2002 when the

14 Court took up the issue of whether there'd be notice, whether

15 there would be a bar date, what the claim form would look like.

16 The issues were sorted out.  The debtor spent millions of

17 dollars at the Court's direction on a notice program.  And

18 there were no class proof of claim issues raised.  We showed

19 the Court the excerpts from the February 25th, 2002 hearing

20 that if this was going to be addressed, that was the time to do

21 it.  Would we have opposed it at that time?  Absolutely.  Just

22 like we oppose it now.  But that was the time to do it before

23 millions of hours were spent on the notice program.  Speights

24 had no authority to file class proof of claim forms, either

25 Form 9911 or 9914.

75

1          And we know it because the Court said so in 2002.

2   And not only that, Your Honor, as we, again, keep dancing

3   around the issue, let's start out with the out-of-state claims.

4   There was no state court ever certifying that court -- that

5   out-of-state claim.  The South Carolina Supreme Court struck

6   the claims for out-of-state buildings.  There's no South

7   Carolina federal court that's even been asked to address the

8   issue.  There is no South Carolina federal court order that

9   gives Speights authority to file an out-of-state claim.

10  Speights didn't come to this Court and seek permission under

11  American Reserve.  Speights had no authority from the

12  claimants.  There is no putative class.

13          Essentially, what Speights is saying is because I

14  could make these claims in a 1992 complaint that's been

15  rejected and has been superceded in South Carolina, that I now

16  have authority to go forward on the out-of-state basis.  There

17  was no authority.

18          THE COURT:  Well, that -- you know, that's the

19  problem, I guess, I have with the concept of the putative

20  class.  I mean, basically, any creative lawyer can come up with

21  a putative class for anything.

22          MS. BROWDY:  Absolutely.

23          THE COURT:  And therefore try to submit a class proof

24  of claim.  I can agree that if a class action has been filed

25  somewhere and it hasn't been determined whether there is or

                    **J&J COURT TRANSCRIBERS, INC.**

76

1  isn't a class yet by virtue of the certification, that there is

2  a putative class because somebody has filed a pleading, put

3  essentially their own reputation or their clients integrity on

4  the line saying that there is such a putative class.

5       But the problem I have with the out-of-state

6  claimants here is that it seems very clear that at this point

7  in time the South Carolina state courts could not take

8  cognizance of the out-of-state building claims under the

9  authority of the South Carolina Supreme Court.  Maybe it could

10 be refiled as a federal action, but it hasn't been.  So at the

11 moment, I don't see how there is a putative class for out-of-

12 state claims because the one's been rejected and the other

13 hasn't been filed.

14      MS. BROWDY:  Absolutely.  There is no out-of -- this

15 is a fabrication.

16      THE COURT:  Now, what I don't know, and I think this

17 is what Mr. Speights is getting to, is what happens if you file

18 that putative class as a proof of claim in a bankruptcy court.

19 Now had it been -- had it never been filed anywhere else as a

20 putative class, then I think the bankruptcy court has to take a

21 look at the federal standards and determine whether or not you

22 can or can't certify that class.  But his one has been

23 rejected, at least under the state law in which the suit was

24 filed and not -- as I understand Mr. Speights, not in this

25 specific case.  The allegations were stricken against the out-

77

1  of-state claimants in that class.

2          So, there is no putative class anywhere except for

3  this potential class proof of claim filed here.  But I don't

4  see how you have a fiduciary obligation to file that here when

5  the state court has rejected it and the individual claims have

6  already been filed.  So the individual claims have either been

7  filed by people with claims, who've given authority, or not.

8          I just don't see the basis as to the out-of-state

9  claims for class certification.  This is pretty much a gut

10 instinct.  I have -- obviously, I haven't had the benefit of

11 all of your briefing yet, but I'm having a great deal of

12 difficulty understanding that theory given the context of this

13 case.

14         MS. BROWDY:  Your Honor, again, the Court's exactly

15 right.  There is no class for out-of-state claimants.  This is

16 a fabrication just like the hundreds of proof of claim forms

17 for individuals were a fabrication.

18         And Your Honor, let's talk about the class proof of

19 claim for either for in-state or out-of-state claims.  American

20 Reserve and the other cases that have said, and not every court

21 has, but those courts that say that a bankruptcy court can

22 recognize a class action could not be more plain.  You've got

23 to come to the bankruptcy court and get permission from the

24 bankruptcy court to do it.  And that's what this Court

25 recognized in February of 2002.

                    **J&J COURT TRANSCRIBERS, INC.**

78

1          And I would urge Your Honor to look at, for example,

2     the Ephedra decision that's cited in our reply paper.  And also

3     the Zenith opinion because those make clear, it not only leaves

4     it in the discretion of the bankruptcy court, but even if there

5     was a class certified in the state court, the issues are

6     different, and the decision-making is different in the

7     bankruptcy court.

8          So even if there were a state court, which we'll get

9     to in a moment, but even if there were a state court action

10    certified, which there hasn't been here, this Court would still

11    have the opportunity to review and make the decisions in its

12    discretion as to whether or not something should go forward in

13    this court.

14         I think it's funny, Your Honor, this is about the

15    second or third time we've heard about this mysterious

16    affidavit from some South Carolina law professor.  Why hasn't

17    it been given to us?  Why hasn't it been given to this Court.

18         THE COURT:  Well, because at the moment, this isn't

19    an issue on factual allegations.  It's supposed to be an

20    argument as a matter of law.  That's my understanding.

21         MS. BROWDY:  Well, as a matter of law, Your Honor,

22    under American Reserve and the cases that would follow it, if

23    you wanted to have a class to go forward in the bankruptcy,

24    you'd have to come forward and seek permission from the

25    bankruptcy.  And Speights didn't do it.  And he didn't do it

79

1 for the individual claim forms which were improperly submitted.

2 And for the class proof of claim forms for both the out-of-

3 state claimants and the in-state claimants.  He submitted those

4 in direct violation of this Court's direction in February of

5 2002.

6 And with that, I'll move on to this third issue which

7 is this new proposal, gee, we can make this all better by

8 addressing anew this motion for class certification.  I put up

9 again on the overhead the bar chart of the claims.  It has

10 taken us years to sort through, get our arms around what are in

11 these claims.  We're now finally starting to make some

12 progress.  You'll see, we've gotten rid, in the last couple of

13 months, half of the property damage claims that were submitted.

14 And now Speights is saying, let's open it all up

15 again and so now we'll do a motion for class certification.

16 And now, that might include not only these 500 buildings in

17 Anderson, but even more.  I mean, now is the time when were

18 close to the finish line, in this Chapter 11 we have a case

19 management order in place on estimation and on objections.

20 We're hoping to be finish with this in now less than a year.

21 And now he first wants to open up the door through a motion for

22 class certifications on issues that were addressed four years

23 ago by this Court.

24 The Court has addressed the issues.  They address the

25 issues in the context of the notice and the bar date.  The

**J&J COURT TRANSCRIBERS, INC.**

1  Court made a decision.  We spent millions of dollars on a

2  notice program.  Individual claimants around the country have

3  had the opportunity to step forward.  Many of them have.  These

4  claims are completely improper.  The individual claims should

5  be stricken.  The proposed class proof of claims should be

6  stricken.  And we shouldn't waste the time of the Court and the

7  money of the estate further briefing this issue on class

8  certification with stay on four years old.

9        THE COURT:  Okay.  Well, with respect to the out-of-

10  state claims, to the extent that there is no specific authority

11  to file those claims, I think Mr. Speights wants a recess for a

12  few minutes.  I'm going to give him that recess.  And that is

13  also true with the class proof of claim for the out-of-state

14  claims.

15        As to the in-state claims, I still have some concern

16  how you file an individual claim without the expressed

17  authority of a client.  I just don't know how you can do that.

18  I do understand filing the class proof of claim on behalf of

19  the in-state South Carolina entities because there is a

20  putative -- not a putative, there is a class that's been

21  certified with respect to that entity.

22        MS. BROWDY:  Not as to Grace.

23        THE COURT:  I'm sorry?

24        MS. BROWDY:  Not as to Grace.  The final order

25  certifying the class is ultra vires.  Mr. Speights is --

81

1          THE COURT:  Well, the final order is, but there was a

2   conditional certification order surely for filing a class proof

3   of claim representing somebody.  That has to be enough to at

4   least let you file the proof of claim.

5          MS. BROWDY:  Your Honor, I urge the Court to read the

6   submission by the Speights firm that led to that conditional

7   order because it's basically saying you're going to lose

8   jurisdiction.  The automatic stay is going to go into effect --

9          THE COURT:  Well, I understand that, but, you know,

10  any state court worth its salt faced with the prospect of its

11  going to lose jurisdiction because a bankruptcy's going to be

12  filed is going to take the action that it feels is required to

13  be taken based on the litigation that it's heard before that

14  takes affect.  I'm certainly not going to be critical for a

15  state court judge for entering an order that it feels is

16  appropriate especially knowing that a bankruptcy may be filed.

17         MS. BROWDY:  But that's exactly why, Your Honor,

18  under American Reserve and the cases that follow is that the

19  decision of the state court judge is not binding on the federal

20  court.  The bankruptcy court --

21         THE COURT:  Well, I understand, but the only issue

22  for today is whether or not there was some basis for filing

23  that class proof of claim.  That's all I need to decide today.

24  Not whether the class is appropriate.  Not whether each

25  individual who's filed a claim here belongs in the class.  Not

**J&J COURT TRANSCRIBERS, INC.**

1 whether it can be opened up to people who haven't filed claims.

2 None of those issues are here.

3        The only question is, is there at least some

4 colorable basis upon which the Speights & Runyon firm would

5 conclude that it had an obligation to file that class proof of

6 claim.  And frankly, I can see that one.  I can understand why

7 a law professor looking at it would say, yes, you know, you've

8 taken it this far.  You can't drop the ball now.

9        But I can't understand that opinion with respect to

10 the out-of-state claims that were not certified as to anybody

11 including Grace in the state court and where state court law at

12 this point in time would say the state court won't take

13 cognizance of it.

14        MS. BROWDY:  So, by Your Honor's comments, it

15 suggests that we're leaning towards a recess, but what should

16 end up getting stricken, again, depending on what happens when

17 we come back, is the individual claims submitted for out-of-

18 state claimants, the class --

19        THE COURT:  As to which there's no authority.

20        MS. BROWDY:  Which, by definition, is all of them

21 because it was under this September 23rd order this Court said

22 tell me what -- the ones that are filed solely under Anderson

23 Memorial.  That's the definition of all these claims.

24        THE COURT:  Okay.  I just want to make it clear that

25 if a particular claimant is a client of the Speights & Runyon

83

1 firm and said, file that claim for me, I consider that to be

2 authority.

3        MS. BROWDY: Your Honor, and that, again, is exactly

4 what was sorted out in the September 23rd order.

5        THE COURT: All right.

6        MS. BROWDY: And then the class proof of claim for

7 out-of-state claimants, again, we're going to have a recess,

8 but that was inappropriate. And the individual claims for in-

9 state claimants, again, who Speights didn't represent. You're

10 considering now only the class proof of claim as to South

11 Carolina claimants.

12        THE COURT: Yes. I'm accepting that the two of you

13 have stipulated that for any claim that's filed listing only

14 Anderson as the authority that there was no other expressed

15 authority from an individual -- to file an individual claim.

16 With that caveat, that's what I'm considering. So why don't we

17 take a recess.

18        MS. BROWDY: Thank you, Your Honor.

19        THE COURT: Mr. Speights, how much time would you

20 like?

21        MR. SPEIGHTS: Fifteen minutes, Your Honor.

22        THE COURT: All right. We'll be in recess for 15

23 minutes.

24                        (Recess)

25        THE COURT: Mr. Speights.

                    **J&J COURT TRANSCRIBERS, INC.**

84

1          MR. SPEIGHTS:  Thank you, Your Honor.  Thank you for
2  allowing me to confer, too, with the man who studies the cases.
3  I don't think I'm going to say anything new, but hopefully I
4  can, in about two minutes, very concisely state what my view is
5  of where we are.
6          THE CLERK:  Could you move that mic a little closer?
7  Thank you.
8          MR. SPEIGHTS:  Have you got what I said so far?
9  First of all, Your Honor, I understand that we will be going
10  forward on our motion to certify.  We file it and they'll file
11  a response.  We may do it a bit quickly.  There may be
12  discovery or whatever, but we're going forward on our motion to
13  certify.
14          MS. BROWDY:  Your Honor, if I may clarify, that's
15  just in South Carolina.
16          THE COURT:  Well, I'm not sure yet what's happening.
17  Let me find out.
18          MR. SPEIGHTS:  Well, I don't accept that unfriendly
19  amendment.  I -- my understanding is that we're dealing with
20  these individual claims.  I understand your reservations about
21  the national class action.  I didn't just get off the turnip
22  truck.  I know where Your Honor's concerns are.  But we'll file
23  this motion to certify and we want to go forward with it.  They
24  will respond and maybe Your Honor will take something from
25  today and deal with it quickly or maybe we'll convince you that

85

1  there need to be other things, et cetera.  But we still

2  strongly believe, as I'll get into, that we have a fiduciary

3  duty to the actual and putative class actions.  And we want to

4  fulfill our duties on the motion to certify.

5       And that leads me to my next point that first of all,

6  I found it interesting Your Honor said something that I had

7  come across late last night in a decision cited in 2002.  You

8  indicated that there may not have to be a putative class to

9  file a putative class.  And I think that was interregional

10  which was discussed in 2002 with the judge from New Jersey

11  whose name I never know how to pronounce.  And I do think that

12  it's correct.  I do think we had a right to file a putative

13  class without having a putative class already.

14       But the major point I want to make was I am convinced

15  that there was a putative class when we filed all of these

16  claims.  Regardless of what happened later, I also think we had

17  one later, but when we filed these claims based upon the

18  putative class action, all the court had done, and this is my

19  third point, was to say the South Carolina door closing statute

20  does not allow me to entertain a class action for buildings

21  outside of South Carolina.  The court there never got into

22  certification issues.  There was no motion to certify filed.

23       And never -- the court never expressed a view on the

24  merits or on the substance of whether there should or should

25  not be a class action.  Indeed, you know, I don't know what

J&J COURT TRANSCRIBERS, INC.

1  that court would have done had it viewed, Judge Howard at that

2  point, viewed that it did -- that the door closing statute was

3  not an impediment.

4        So that there was a class action.  The trial judge

5  did not think he could proceed to -- there was a putative class

6  action and he could not consider certification because of the

7  door closing and, of course, there was a split of authority on

8  that with the majority being on my side, I might add.

9  Unfortunately, like the trial judge in this case, the majority

10  of the cases were on my side until after we filed all the

11  claims and the Supreme Court ruled.

12        Now, Your Honor, given that, and for reasons we've

13  already explained, and for reasons that we could make a record

14  on if facts were important -- I don't think they are important

15  by the way at this point, it's just a legal issue -- given

16  that, we took what we considered the prudent course and filed

17  both ways.

18        I understand what Your Honor is saying, among other

19  things, I don't mean this is all Your Honor is saying, is that,

20  in effect, these claims are duplicative anyway if they're in

21  the class.  If you have a class, they're in there.  And if you

22  don't have a class, they're not in there.  And that's why I

23  keep arguing all of these cases to say if we don't have a

24  class, we have no problem because they all go away.

25        And I continue to urge that decide the class issue

87

1 and all of these objections resolve themselves. Not only to

2 this, Your Honor, but probably other objections will get

3 resolved by the issue of class, whether there is or is not a

4 class. I'm sure they're attacking other claims under the

5 Anderson umbrella beside those where our only -- where our sole

6 authority is this.

7        So I continue to believe, Your Honor, respectfully,

8 that, you know, we had tentative authority. We didn't even

9 have to have a class action and we tried to cover our bases

10 both ways as Mr. Bernick suggested, et cetera, et cetera, et

11 cetera.

12        However, Your Honor, if you are of the view after

13 reflecting on it, or you come to the view if you take it under

14 advisement that these claims should not go forward, as I said

15 earlier, I've fulfilled my fiduciary obligation now. And I'm

16 happy to withdraw those claims.

17        I'm also understand that as a matter of law, if you

18 decide to strike the claims, if you prefer to strike them as a

19 matter of law, again, facts are not here today, as opposed to

20 my withdrawing them, and you know that, the claims go away

21 subject to whatever do -- they should be without prejudice to

22 those people if, by chance, you certify a class action and

23 somehow they are within the four corners of the class action.

24        That deals with the nationwide class. So we think we

25 have a putative class. We think we did what the cases say. We

                    **J&J COURT TRANSCRIBERS, INC.**

88

1 think we did what Mr. Bernick said.  If Your Honor disagrees,

2 we'll withdraw them.  We've got the advice.  Or if Your Honor

3 wants to strike them as a matter of law, we understand that.

4        Now, the state class, everybody understands, is

5 different.  Again, on the state class, we can deal with it in

6 the certification phase and decide which way to do it because

7 as Your Honor pointed out, there's no notices gone out yet.  I

8 truly believe there are more claims in the state class than the

9 50 or whatever that are in there now that we've been able to

10 identify from Grace's records as where Grace's product went.

11        Unfortunately, many of Grace's records show that the

12 product was shipped to supply houses or to contractors and this

13 sort of thing.  So there's a lot more Grace stuff in South

14 Carolina.  And we were proceeding in South Carolina as a class,

15 not -- you know, we weren't to have individual clients in South

16 Carolina to litigate.  We'd done that for years.  We were

17 trying to proceed as a class.  And so we think it would be

18 inappropriate, at least at this time, to withdraw or strike

19 those absent class members at least before you hear the

20 certification issues and decide where we're going with all of

21 this.  So --

22        THE COURT:  All right.  Well, the issue that I have

23 -- as I said, and I'm happy with respect to the in-state claims

24 to go forward with this issue on the class certification

25 motion.  But the issue that I have is I don't see how at this

J&J COURT TRANSCRIBERS, INC.

89

1  point we're going to get more claims into a class than have

2  already been filed when the bar date notice has gone out.

3        So I really think with respect to the in-state

4  claims, and I don't know how many there are in that category, I

5  think we're going to be looking at the traditional class action

6  issues.  You know, is there sufficient numerosity and whatever

7  else that will require this to be done on a class bases.  And

8  if so, then we should do it.  And if not, they're going to be a

9  class anyway for purposes -- all property damage claims, I

10  guess, would be a class for purposes of the Bankruptcy Code

11  voting and classification standards anyhow.  But that will be

12  something I'm interested in finding out at the class

13  certification hearing.  So as to the in-state, you know, I

14  suppose I'm not opposed to withdrawing that issue on the class

15  proof of claim that was filed.

16        As to the individual in-state claims, though, I still

17  do not see how they're proper because -- and I think you've

18  articulated the reason just now probably better than I did

19  earlier which is you're not looking for individual clients to

20  represent.  You're looking for the class -- the class to

21  represent.  And of course there will be individuals within that

22  class.  But there is a difference between submitting an

23  individual proof of claim, it's almost like opting out of the

24  class in the bankruptcy context, except that in this case, it's

25  not an opt out because there was a bar date.  So people are

90

1  opting in to treatment under the Bankruptcy Code, but not

2  necessarily in the class treatment.

3          So if there was no authority to file the individual

4  claim, I think the individual claim has to be stricken.  I just

5  don't see how I have a claim that can be asserted against the

6  debtor when there's no authority to file that claim.  So as to

7  the individual claims, I have the same view, whether it's in-

8  state or out-of-state.  If there's no authority by the

9  individual to file the claim, I don't see how there is a proper

10 claim.

11         With respect to the in-state class claim, I think

12 that should abide the hearing on the motion to certify.  And

13 with respect to the out-of-state class claim, I will also let

14 that abide the hearing on the motion to certify, but I have a

15 slightly different issue.  And that is that if there are no

16 individual out-of-state claims that have been filed that could

17 even be in that putative class, and the bar date's passed, I

18 don't see how it's possible to have a class.  But again, I'm

19 happy to address that issue.  That's my concern.

20         MS. BROWDY:  Your Honor, may I ask the Court an issue

21 that has been raised?

22         THE COURT:  One minute, please.  Mr. Speights?

23         MR. SPEIGHTS:  I understand where you are, Your

24 Honor.  Thank you very much.

25         MS. BROWDY:  Your Honor, we'll submit an order
                    **J&J COURT TRANSCRIBERS, INC.**

91

1  striking and expunging all the individual class -- individual

2  claims purportedly submitted under Anderson whether in-state or

3  out-of-state.  Those are all the claims listed in the

4  attachments as Exhibit 1 and Exhibit 2 in our opening brief.

5  So we understand Your Honor's opinion on that.

6        As to this new motion to certify an in-state and out-

7  of-state class, though, Your Honor, I mean, we need to take a

8  step back and look at what's going on here.  I mean, the

9  debtors came to this Court in 2001 and said we want a notice

10 and a bar date on property damage claims so we can figure out

11 what the extent of the potential liability is and sort it out.

12 It was --

13       THE COURT:  I agree, Ms. Browdy, I do agree.  The

14 problem is this.  I haven't read that transcript, so maybe

15 somebody can refresh my recollection whether I dealt with the

16 issue at that time of whether the notice that went out should

17 say that a class -- that this was a bar date for class proofs

18 of claim.  I think I did not address the issue of class proofs

19 of claim because what I had expected to come in was a motion to

20 certify a class, if, in fact, there was going to be a class

21 proof of claim.

22       MS. BROWDY:  Exactly, Your Honor.  That's exactly the

23 point.  You said this should go out -- a notice should go out

24 and we spent millions of dollars on this and if the property

25 damage claimants wanted to bring a class proof of claim issue

97

<u>C E R T I F I C A T I O N</u>

    I, Susan Holcomb, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

<u>/s/ Susan Holcomb</u>                Date:   November 7, 2005

Susan Holcomb  AAERT CET **00273

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Civil Action No. 07-287 (RLB) |
| | ) | Hon. Ronald L. Buckwalter |
| | ) | United States District Judge |
| W. R. GRACE & CO., et al., | ) | (by special designation) |
| | ) | |
| Debtors. | ) | Bankruptcy Case No. 01-01339 (JKF) |

## CERTIFICATE OF SERVICE

I, Laura Davis Jones, hereby certify that on the 20th day of August, 2007, I caused

a copy of the following document to be served on the individuals on the attached service list(s) in

the manner indicated:

**Motion for Leave to Counter-Designate an Additional Item in the Record on
Appeal of the Bankruptcy Court's Order Disallowing 71 Unauthorized
Speights & Runyan Claims**

Laura Davis Jones (Bar No. 2436)

WR Grace FAX Core Group, Speights,
Loizides Service List
Case No. 01-1139 (JKF)
August 20, 2007
Document # 130169
**20 – Facsimile**

*Facsimile 302-426-9947*
Mark T. Hurford, Esquire
Marla Rosoff Eskin, Esquire
Matthew G. Zaleski, III, Esquire
(Counsel for Asbestos Personal Injury
Claimants)

*Facsimile 302-658-6548*
Mark D. Collins, Esquire
(Counsel for The Chase Manhattan Bank)

*Facsimile 312-861-2200*
Janet S. Bear, Esquire
(Counsel to Debtor)

*Facsimile 302-658-6395*
Steven M. Yoder, Esquire
(Local Counsel to DIP Lender)

*Facsimile 302-573-6497*
David Klauder, Esquire
(United States Trustee)

*Facsimile 410-531-4545*
Mark Shelnitz
(W. R. Grace & Co.)

*Facsimile 212-644-6755*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
(Official Committee of Personal Injury
Claimants)

*Facsimile 212-806-6006*
Lewis Kruger, Esquire
(Official Committee of Unsecured
Creditors)

*Facsimile 305-374-7593*
Scott L. Baena, Esquire
(Official Committee of Property Damage
Claimants)

*Facsimile 212-715-8000*
Philip Bentley, Esquire
(Counsel for Equity Committee)

*Facsimile 312-993-9767*
J. Douglas Bacon, Esquire
(Counsel to DIP Lender)

*Facsimile 302-657-4901*
Michael R. Lastowski, Esquire
(Counsel to Official Committee of
Unsecured Creditors)

*Facsimile 973-424-2001*
William S. Katchen, Esquire
(Counsel to the Official Committee of
Unsecured Creditors)

*Facsimile 302-552-4295*
Teresa K.D. Currier, Esquire
(Counsel to the Equity Committee)

*Facsimile 202-429-3301*
Peter Van N. Lockwood, Esquire
Albert G. Lauber, Esquire
Nathan D. Finch, Esquire
Max C. Heerman, Esquire
(Counsel for Asbestos Personal Injury
Claimants)

*Facsimile 302-655-4210*
John C. Phillips, Jr., Esquire
(Counsel to David T. Austern as Future
Claimants' Representative)

*Facsimile 202-339-8500*
Roger Frankel, Esquire
Richard H. Wyron, Esquire
Matthew W. Cheney, Esquire
(Counsel to David T. Austern as Future
Claimants' Representative)

*Facsimile 302-575-1714*
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
(Counsel for Property Damage Claimants)

*Facsimile 803-943-4599*
Daniel A. Speights, Esquire
Marion C. Fairey, Jr., Esquire
(Counsel for various PD Claimants)

*Facsimile 302-654-0728*
Christopher D. Loizides, Esquire
(Counsel for Various PD Claimants)

W. R. Grace Email Core Group, Speights,
Loizides Service List
Case No. 01-1139 (JKF)
Document Number: 130168
20 – Electronic Delivery

(Counsel to Debtors and Debtors in
Possession)
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE  19801

*Electronic Delivery*
*mlastowski@duanemorris.com*
*rriley@duanemorris.com*
(Counsel to Official Committee of
Unsecured Creditors)
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246

*Electronic Delivery*
*syoder@bayardfirm.com*
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

*Electronic Delivery*
*meskin@del.camlev.com*
*mhurford@del.camlev.com*
(Local Counsel to Asbestos Claimants)
Marla Eskin, Esquire
Mark T. Hurford
Campbell & Levine
800 North King Street, Suite 300
Wilmington, DE  19801

*Electronic Delivery*
*Collins@RLF.com*
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

*Electronic Delivery*
*mjoseph@ferryjoseph.com*
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899

*Electronic Delivery*
*David.Klauder@usdoj.gov*
(United States Trustee)
David Klauder, Esquire
Office of the United States Trustee
844 King Street, Room 2311
Wilmington, DE  19801

*Electronic Delivery*
*currier@klettrooney.com*
(Equity Committee Counsel)
Teresa K. D. Currier
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE  19801

**Electronic Delivery**
*jbaer@kirkland.com*
*dbernick@kirkland.com*
(Counsel to Debtor)
David B. Bernick, P.C.
Janet Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**Electronic Delivery**
*mark.shelnitz@grace.com*
(W. R. Grace & Co.)
Mark Shelniz
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

**Electronic Delivery**
*lkruger@stroock.com*
*kpasquale@stroock.com*
(Official Committee of Unsecured
Creditors)
Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

**Electronic Delivery**
*ei@capdale.com*
*rct@capdale.com*
(Official Committee of Personal Injury
Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152

**Electronic Delivery**
*sbaena@bilzin.com*
(Official Committee of Property Damage
Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price &
Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

**Electronic Delivery**
*pbentley@kramerlevin.com*
*tmayer@kramerlevin.com*
(Equity Committee Counsel)
Philip Bentley, Esquire
Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

**Electronic Delivery**
*pvnl@capdale.com*
*ndf@capdale.com*
*tws@capdale.com*
*jwd@capdale.com*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

**Electronic Delivery**
*WSKatchen@duanemorris.com*
(Counsel to Official Committee of
Unsecured Creditors)
William S. Katchen, Esquire
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, NJ 07102-3889

***Electronic Delivery***
***carol.hennessey@lw.com***
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

***Electronic Delivery***
***rfrankel@orrick.com***
***rwyron@orrick.com***
***mcheney@orrick.com***
(Counsel to David T. Austern, Future
Claimant's Representative)
Roger Frankel
Richard H. Wyron
Matthew W. Cheney
Orrick Herrington & Sutcliffe LLP
3050 K Street, NW
Washington, DC 20007

***Electronic Delivery***
***jcp@pgslaw.com***
(Counsel to David T. Austern, Future
Claimant's Representative)
Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 North Broom Street
Wilmington, DE 19806

***dspeights@speightsrunyan.com***
Daniel A. Speights, Esquire
Speights & Runyan
(Counsel for various PD Claimants)

***loizides@loizides.com***
Christopher D. Loizides, Esquire
Loizides & Associates
(Counsel for various PD Claimants)