IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace, *et al.*

---

| | |
|---|---|
| Mission Towers, | ) |
| | ) |
| Appellant, | ) Civil Action No. 07-287 |
| | ) |
| v. | ) Bankruptcy Case No. 01-01139 (JKF) |
| | ) Bankruptcy Appeal No. AP 07-16 |
| W.R. Grace, *et al.*, | ) |
| | ) |
| Appellees. | ) |

---

**JOINT APPELLANTS' REPLY BRIEF FILED ON BEHALF
OF 44 CLAIMANTS WHOSE CLAIMS WERE DISMISSED BY THE
<u>BANKRUPTCY COURT'S APRIL 17, 2007 ORDER AND MEMORANDUM OPINION</u>**

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:   (302) 654-0728
E-mail:   loizides@loizides.com

   - and –

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:   (803) 943-4444
Facsimile:   (803) 943-4599

DATED: September 21, 2007

070921160622.DOC

**Table of Contents**

Table of Authorities ........................................................................................ ii, iii

Argument.......................................................................................................... 1

    I. S&R was Class Counsel and Authorized to file claims on behalf of the 44 appellants............................................................................................ 1

    II. The October 31, 2005 Order Did Not Apply to These Claims.............................................................................................. 5

    III. Ratification Defeats No Intervening Rights of Debtors............................................................................................. 6

    IV. Ratification of Class Counsel's Filing Creates no "Loophole" to the Bar Date............................................................................................. 9

Conclusion........................................................................................................ 10

**Table of Authorities**

*Dondore v. NGK Metals Corp.*, 152 F.Supp.2d 662 (E.D.Pa.2001)................................. 9

*Farmer v. Monsanto*, 579 S.E.2d 325 (S.C.2003) ......................................................... 4

*In re: Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (1987)................................ 2

*In re: Birting Fisheries, Inc.*, 92 F3d 939 (9th Cir. 1996)................................................ 3

*In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989) ........................................................... 3

*In re: Trebol Motors Dist. Corp.*, 220 B.R. 500 (BAP 1st Cir.1998) ............................... 3

*In re: Charter Company*, 876 F.2d 866 (11th Cir.1989) .................................................. 3

*In re: Amdura Corp.*, 170 B.R. 445 (D.Colo.1994)......................................................... 8

*In re: Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *vac'd on other grounds,*........................................................................................................ 2, 3

*In re: American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir.1988)........................... 1, 2, 3

*In re: Amdura Corporation*, 170 B.R. 445 (D.Colo.1994).............................................. 3

*In re: Sacred Heart Hospital of Norristown*, 177 B.R. 16 (E.D.Pa.1995)....................... 8

*In re Main*, 157 B.R. 786 (W.D.Pa.1992)....................................................................... 8

*In re: Jamesway Corp.*, 1997 WL 327105 (S.D.N.Y.).................................................... 8

*In re: Savage Industries*, 43 F.3d 714, 721 (1st Cir.1994)............................................... 8

*In re: General Motors Corp Pick-Up Truck Fuel Tank Prducts Liability Litigation*, 55 F.3d 768, 822 (3d Cir.1995).................................................................................... 9

*Pioneer Investment Services v. Brunswich Asso., L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)......................................................................................... 7

*Premium Investments v. Green*, 324 S.E.2d 72, 76 (S.C.1984)........................................ 9

**Argument**

I.  **S&R was Class Counsel and Authorized to file claims on behalf of the 44 appellants**

Nine years before this bankruptcy was commenced by Grace, Anderson Memorial Hospital and its counsel, Speights & Runyan instituted a putative class action for asbestos property damage against Grace and several other former asbestos surfacing treatment manufacturers. The definition of the putative class encompassed each of the forty-four appellants as well as thousands of other building owners who had suffered or would suffer property damage from asbestos contamination. After Grace's bankruptcy petition and the subsequent notice and bar order, Anderson as class representative and Speights & Runyan as class counsel timely filed proofs of claim on behalf of these forty-four class members.[1] Each of the forty-four claimants provided written authorization which ratified the timely filed proof of claim. Nevertheless, Grace argues and the bankruptcy court ruled that the claims were unauthorized under 11 U.S.C. §501(a) and Rule 3001, FRBP. As the holding in *In re: American Reserve* demonstrates, this was error.

The notion that a class representative and its counsel may serve as the authorized agents of the putative class members in bankruptcy courts is well established. *In re American Reserve*, 840 F.2d 487, 493 (7th Cir.1988) (holding that a class representative is the "agent for the missing" for purposes of Rule 501, FRBP). For that reason, Grace attempts to distance itself from this holding by suggesting that the Seventh Circuit could not have meant to permit class

---

[1] There is no evidence that any of the forty-four appellants received actual notice of the bar order pursuant to the Debtors' notice program, despite the fact that the Debtors' own sales and marketing records identified them as potential property damage claimants in this bankruptcy. The Debtors' suggestion that its notice program included direct notice to these forty-four claimants (See Debtor's Responsive Brief at p.4, stating "**the Debtors' program of actual notice to more than 200,000 known asbestos claimants**") (emphasis supplied) is patently false. The only asbestos property damage claimants who received actual notice of the bar order were named parties to the handful of property damage cases pending on the date Grace filed its bankruptcy petition.

1

representatives to file as agents for putative class members because such a result would "eviscerate" the requirement in Rule 3001, FRBP that a proof of claim be "executed by the creditor or the creditors authorized agent." (Respondent's Brief, p. 18).

Expressly rejecting this argument, the court in *American Reserve* reasoned that a class representative was the authorized agent for class members, noting that "the representative in a class action is an agent for the missing." 840 F.2d at 493. Far from eviscerating Rule 3001 FRBP, the Seventh Circuit expressly recognized that a class representative is an authorized agent for absent class members under Rule 3001(b), FRBP.

Additionally, when the Debtors' proposed the bar date and notice program, counsel for the Debtors argued that *In re: American Reserve Corporation* set forth the guidepost for bringing class claims into the bankruptcy court. *[See, Appellants' Motion to Supplement the Record on Appeal, Ex. A]*. The procedure set forth in *American Reserve*, i.e., the filing of individual proofs of claim prior to the bar date and then moving for class certification under Rules 9014 and 7023, FRBP after the Debtors file claim objections is precisely the procedure employed by Anderson.[2]

Apart from the misreading of *In re: American Reserve*, Grace goes on to cite *In re: Standard Metals Corporation*, 817 F.2d 625 (10th Cir.1987), *vac'd on other grounds sub nom., Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (1987), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988) as primary authority that a class representative cannot be considered the authorized agent of all class members of a putative class in a bankruptcy

---

[2]Indeed, Anderson filed its motion for Class Certification of these and other asbestos property damage claims in October of 2005, shortly after the Debtors' filed their claim objections. That motion has been litigated and was finally argued to the bankruptcy court on July 5, 2007 where it remains under advisement.

2

proceeding.[3] *In re Standard Metals* has been rejected by every subsequent circuit court that has considered this issue. *See, In re: American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988); *In re: Birting Fisheries, Inc.*, 92 F3d 939 (9th Cir.1996) (adopting the reasoning of *In re: American Reserve*); *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989) ("We hold that a proof of claim filed on behalf of a class of claimants is valid"); *In re: Trebol Motors Dist. Corp.*, 220 B.R. 500 (BAP 1st Cir.1998) ("We believe that Rule 9010, [Fed. R. Bankr. P.] provides ample basis for our holding that an attorney representing a creditor can execute a proof of claim on behalf of a class action creditor").

More specifically, the efficacy of the Tenth Circuit's holding has been called into serious question by both the Eleventh Circuit and a subsequent disctrict court within the Tenth Circuit. In *In re: Charter Company*, 876 F.2d 866 (11th Cir.1989), the panel noted that the "discussion of class proofs claims in the original *Standard Metals* opinion may be dicta." *See also, In re: Amdura Corp.*, 170 B.R. 445 (D.Colo.1994) ("I concur with the Charter Company Court's reasoning that the analysis regarding class proofs of claim in *Standard Metals I* was dictum, i.e. not necessary to the decision of the case."). Under the circumstances, *Standard Metals* hardly stands as a pillar of persuasive authority.

Grace next argues that in spite of *American Reserve* and its progeny, Anderson and its counsel could not serve as the authorized agents of the forty-four appellant/class members because the Circuit Court in the pre-petition Anderson Memorial case struck the class definition

---

[3] Even if the holding of *In re: Standard Metals* were persuasive, Grace would only have this Court adopt half of the holding. Grace ignores the fact that after the Circuit Court affirmed the bankruptcy court's decision rejecting the class representative as the agent for the absent class members, it went on to reverse and remand the case to the bankruptcy court with instructions to extend the bar date and provide direct notice to the absent class of bondholders. *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (10th Cir.1987). This was done to insure that absent class members were afforded due process and proper notice of their right to participate in the bankruptcy proceeding.

3

limiting the Plaintiffs' class to residents of South Carolina finding that the South Carolina "Door Closing" statute (S.C. §15-5-150) deprived South Carolina courts of subject matter jurisdiction over non-resident class members.[4] This argument fails for two reasons.

First, under the express holding of *Farmer v. Monsanto*, 579 S.E.2d 325 (S.C.2003) the South Carolina Supreme Court has made it clear that the South Carolina door closing statute is not applicable to suit pending in Federal Court. "By its terms, ... **Section 15-5-50 applies only to actions brought in the Circuit Court. The statutes clearly does not apply to Federal suits**" 570 S.E.2d at 558. Accordingly, when Grace filed its bankruptcy petition in federal bankruptcy court, the South Carolina Door Closing statute no longer served as an impediment to non-South Carolina class members in the Anderson class.

Second, at the time Grace filed its bankruptcy petition, the Anderson case was still pending and the time to appeal the interlocutory order striking out-of-state class members from Anderson's complaint had yet to run. Though Grace argues that the 1994 and 1996 Orders in the Anderson Memorial case were immediately appealable, this is both wrong and irrelevant. It is wrong because the trial court's Order striking class allegations related to non-South Carolina residents was not a final order. Rule 54(B), SCRCP provides:

> when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the Court may direct the entry of a final judgment as to one or more but fewer than all of the

---

[4] Grace's brief erroneously suggests that S.C. §15-5-150 is a matter of subject matter jurisdiction, as was originally held by the trial court in the *Anderson Memorial* case. Grace then goes on to argue that a subsequent case, *Farmer v. Monsanto* 579 S.E. 2d 325 (S.C.2003), confirmed the court in the Anderson Memorial case's decision on the door closing statue. This is simply not the case. In fact, in *Farmer v. Monsanto* the Supreme Court actually held that the door-closing statue was not a matter of subject matter jurisdiction but rather related to a party's capacity to sue, in affirmative defense that is clearly waivable by a defendant. More importantly, the Supreme Court in *Farmer v. Monsanto* expressly overruled every appellate decision relating to the door closing statute relied upon by the trial court in the Anderson Memorial case in striking out class allegations for non-South Carolina residents.

4

    claims for parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims of the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision of is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Because the trial judge in the Anderson Memorial case did not certify this door closing decision as a final judgment the ruling was subject to revision at any time before final judgment and was not a final judgment. Furthermore, the ruling did not dispense with the claims and the rights and liabilities of all parties. Accordingly, the 1994 "Door Closing" order and the 1996 order denying reconsideration were clearly interlocutory under South Carolina law, and not immediately appealable.

    The South Carolina cases cited by Grace offer no authority to the contrary. Indeed, the cases cited by the Debtors address whether an order, which dismisses specific causes of action or specific defendants but not all causes of action or all defendants can be immediately appealed. Such is not the case here.

    In any event, even if Anderson could have taken an immediate appeal of the 1994 and 1996 orders, it was not compelled to do so under South Carolina law. Indeed, as Grace conveniently ignores, the successor trial court in the Anderson Memorial case itself specifically recognized in a subsequent order certifying the class for South Carolina residents that Anderson Memorial had **preserved its right to appeal** the "Door Closing" orders. [Dk. 10001, Tab J, p. 2] (emphasis supplied). Therefore, even if the door closing order could have been appealed, it was not incumbent upon Anderson to do so until the end of the case. Of course, the case was superseded by the Debtors voluntary bankruptcy petition on April 2, 2001.

5

## II.     The October 31, 2005 Order Did Not Apply to These Claimants

Grace also argues that appellants are precluded from challenging determination that Speights and Runyan lacked authority to file individual claims on behalf of these forty-four appellants pursuant to the Bankruptcy Court's rejection of that argument at an October 31, 2005 hearing. Again, the Debtors misapprehend the appropriate time to raise an appeal. As in South Carolina, non-filed orders entered by the Bankruptcy Court are not immediately appealable. The October 31, 2005 hearing transcript and the subsequent November 2005 Order expunging claims did not dismiss the claims of these forty-four appellants. Accordingly, these forty-four appellants had no standing to challenge the Bankruptcy Court's determination that the class representative and class counsel could not serve as the authorized agent of putative class members until such times as their claims were finally dismissed by the Bankruptcy Court. Thus the issue of whether the timely filed proofs of claim filed by Anderson and class counsel as the "putative agents" of these forty-four claimants/class members is properly before this Court.

## III.    Ratification Defeats No Intervening Rights of the Debtors

Ratification of a timely filed proof of claim defeats no intervening right of the Debtor. Grace argues and the bankruptcy court found that the post bar date ratification of the forty-four claimants subject to this appeal are ineffective because it defeats the "intervening rights" of the Debtor. This argument might be more convincing if a bar date entered under the bankruptcy code has the same preclusive effect as a statute of limitations or the jurisdictional effect of failing to timely file a notice of appeal. However, unlike statues of limitations and the strict jurisdictional time limitations for filing appeals, there are any number of exceptions that permit the inclusion of post-bar date claims in Chapter 11 Bankruptcy proceedings.

Unlike a statute of limitations or the statutory/jurisdictional time limits for filing a notice of appeal a bar date has flexibility based upon equity. A bar date may be extended at the discretion of the Court and post-bar date claims may be allowed by the bankruptcy court exercising equitable considerations such as

> danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Investment Services v. Brunswich Asso., L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). This is not so for limitations statutes or statutory jurisdictional filing deadlines for appeals.

The Supreme Court has clearly recognized that the policy behind Chapter 11 of the Bankruptcy Code is to preserve rather than to forfeit rights. *Id.* ("Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and **avoiding forfeitures by creditors**") (emphasis supplied). It does not serve that policy to dismiss a timely filed proof of claim by class counsel on behalf of an absent class member simply because the claimant, who had not been provided notice of the bar date by the Debtors, did not provide specific written authorization until after the bar date passed. Nor can the Debtors complain of prejudice or unfairness where, as here, the claims objections process is still ongoing with no current trial scheduled.[5] Indeed, most if not all of the forty-four claimants ratified the filing and provided express written authorization to class counsel before the Debtors filed any claims objections.

---

[5] In fact, by the time the Court entered its order dismissing these forty-four claims, these claimants and the Debtors had completed discovery, argued summary judgment motions and were preparing for trial scheduled in April and May of 2007. Grace can hardly suggest that permitting these claims to go forward would unreasonably deprive the Debtors of knowledge necessary to assess its liability or that the trial of these claims would disrupt the bankruptcy when these claims were on the cusp of being tried. Moreover, the bankruptcy court's superceding order terminating exclusivity (Dk. 16396)

7

Permitting ratification under these circumstances does nothing to undermine the purpose of the bar date.

Additionally, bar dates are generally not binding on known creditors who have not received appropriate notice of bar dates and may not be binding on un-notified unknown creditors. *In re: Amdura Corporation*, 170 B.R. 445 (D.Colo.1994); *In re: Sacred Heart Hospital of Norristown*, 177 B.R. 16 (E.D.Pa.1995); *In re: Jamesway Corp.*, 1997 WL 327105 (S.D.N.Y.). Accordingly, in order to establish that Grace possessed any right in the preclusion of the claims of the forty-four appellants by operation of the bar date, there must be some evidence that these forty-four claimants received actual notice of the bar order.[6] Here, there is none. Hence, the bar date does not bar the claims of these forty-four appellants against Grace.

Moreover the Debtors cannot escape this problem by simply shifting its burden to notify creditors of the bar date to counsel on various creditor constituency committees. The burden of proper notice of the bar order rests squarely on the Debtors. *In re: Savage Industries*, 43 F.3d 714, 721 (1st Cir.1994); *In re Main*, 157 B.R. 786 (W.D.Pa.1992).

In spite of the clear burden of notice, the Debtors argue that it was class counsel's obligation to notify asbestos property damage claimants of the bar order. This is nonsensical given the context of this appeal. Grace originally objected to the timely filed claims of these forty-four asbestos property damage claimants on the grounds that class counsel had no authority to represent them. In making that argument, the Debtors necessarily had to show that there was absolutely no connection between the claimants and class counsel prior to the bar date. Having

---

[6] Not only is there no evidence that the Debtors gave actual notice of the Bar Order to these forty-four claimants, the Court refused to allow the claimants discovery on this issue.

8

taken that position before the bankruptcy court, Grace cannot be heard to now argue that it was class counsel's obligation to notify its "clients" (presumably all absent class members) pursuant to the direction of the Bankruptcy Court. The directions of the Bankruptcy Court were clear. Creditors counsel were instructed to notify their "clients." [Dk. 2503, pp. 104-105]. If the forty-four appellants were "clients" of class counsel prior to the bar date, then clearly there was authority to file the claims and the Bankruptcy Court's Order dismissing them is error. If however, these 44 appellants were not "clients" of class counsel, then it was the Debtors' obligation to ensure that they received proper notice. Grace cannot have it both ways.

IV.     **Ratification of Class Counsel's Filing Creates no "Loophole" to the Bar Date**

Grace also argues that post bar date ratification of the proof of claim filed on behalf of class counsel would create a loophole in the bankruptcy process allowing lawyers to simply file claims randomly and then in order to "save places" in the bankruptcy for creditors. This argument grossly exaggerates the record in this case.

Here Anderson Hospital had a pre-petition class action pending against the Debtors. Attendant to that class action, class counsel and the class representative owed fiduciary duties to protect the claims of absent class members. *In re: General Motors Corp Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 822 (3d Cir.1995); *Dondore v. NGK Metals Corp.*, 152 F.Supp.2d 662 (E.D.Pa.2001); *Premium Investments v. Green*, 324 S.E.2d 72, 76 (S.C.1984). *See also, Appellants' Motion to Supplement the Record on Appeal, Ex. B – Affidavit of Professor John Freeman*. This did not abate when the Debtors filed for bankruptcy. Indeed, if Anderson's pending motion for class certification is granted by the Bankruptcy Court, these claimants would clearly be encompassed in the certified class, making these arguments regarding

9

authority moot.

**Conclusion**

In this case, proofs of claims were filed on behalf of all 44 claimants. Neither the Debtors nor any other creditor group can legitimately suggest that the existence of these claims was unknown to them. There is no reason to believe that these 44 claimants failure to ratify the filing of the proofs of claim prior to the bar date in any way impeded the Debtors or other creditors in assessing the liabilities of Grace. Accordingly, the policies of Chapter 11 weigh in favor of allowing these claimants to proceed with their individual proofs of claims.

Respectfully submitted,

Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com

By: s/ Christopher D. Loizides

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace, *et al.*

| | | |
|---|---|---|
| Mission Towers, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 07-287 |
| | ) | |
| v. | ) | Bankruptcy Case No. 01-01139 (JKF) |
| | ) | Bankruptcy Appeal No. AP 07-16 |
| W.R. Grace, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## CERTIFICATE OF SERVICE

I, Christopher D. Loizides, hereby certify that on the 21st day of September, 2007, I did cause to be served copies of the foregoing **Joint Appellants' Reply Brief** on the parties listed and in the manner indicated on the attached service list.

DATED: September 21, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 654-0248
Facsimile:  (302) 654-0728
E-mail:  loizides@loizides.com

070921160622.DOC

**SERVICE LIST**

**VIA FACSIMILE AND FIRST CLASS MAIL**

Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 No. Market Street, 17th Floor
Wilmington, DE 19801
*Fax:* (302) 652-4400

David M. Bernick, Esquire
Janet S. Baer, Esquire
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601
*Fax:* (312) 861-2200

James J. Restivo, Jr., Esquire
Douglas E. Cameron, Esquire
Traci S. Rea, Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
*Fax:* (412) 288-3063


**VIA FIRST CLASS MAIL**

Teresa K. D. Currier, Esquire
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE 19801

Marla R. Eskin, Esquire
Campbell & Levine, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801

Michael R. Lastowski, Esquire
Duane Morris, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801

David M. Klauder, Esquire
Office of the United States Trustee
844 N. King Street, Room 2207
Wilmington, DE 19801

Theodore Tacconelli, Esquire
Ferry Joseph & Pearce P.A.
824 Market Street, Suite 904
P. O. Box 1351
Wilmington, DE 19899-1351

John C. Phillips, Jr., Esquire
Phillips Goldman & Spence P.A.
1200 No. Broom Street
Wilmington, DE 19806

Lewis Kruger, Esquire
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Roger Frankel, Esquire
Richard H. Wyron, Esquire
Orrick Herrington & Sutcliffe LLP
3050 K Street, N.W., Suite 200
Washington, DC 20007-5135

Scott Baena, Esquire
Bilzin Sumberg Baena Price & Axelrod LLP
First Union Financial Center
200 So. Biscayne Bl., Suite 2500
Miami, FL 33131-2336

David B. Siegel
W.R. Grace & Company
7500 Grace Drive
Columbia, MD 21044