# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MISSION TOWERS, et al.,    :
           :   CIVIL ACTION NO.  07-287
      Appellants,  :
           : BANKRUPTCY CASE NO.  01-01139 (JKF)
     v.      :
           :
W.R. GRACE, et al.,     :
           :
      Appellees.  :

## MEMORANDUM

**BUCKWALTER, S. J.**                 **December 6, 2007**

## I.  INTRODUCTION

    This appeal follows an April 17, 2007  Bankruptcy Court order disallowing and expunging forty-four[1] Asbestos Property Damage Claims filed by the law firm of Speights & Runyan ("S&R") against W.R. Grace, et al. ("Debtors").  Despite S&R timely filing proof of claim forms on behalf of each Appellant (the forty-four dismissed claimants) and in accordance with the March 31, 2003 bar date set by the Bankruptcy Court, Appellants themselves did not expressly authorize the proofs of claim at issue until after the bar date had passed.  The Bankruptcy Court found this post-bar date authorization to be ineffective and thus disallowed and expunged Appellants' claims.  Subsequently, Appellants filed this appeal.  For the reasons stated below, the Bankruptcy Court's opinion is affirmed.

---

1.  The Bankruptcy Court's April 17, 2007 Order expunged seventy-one unauthorized claims, twenty-seven of which were either expunged on other grounds or withdrawn by Speights & Runyan, thus resulting in the remaining forty-four claims at issue here.

## II.  FACTUAL AND PROCEDURAL HISTORY

On December 23, 1992, S&R, a South Carolina law firm, filed suit in South Carolina circuit court on behalf of Anderson Memorial Hospital and against Grace and other manufacturers of asbestos containing materials.  The suit sought certification of a nationwide class of private building owners. (Appellees' Br. 10.)  In 1994, the South Carolina circuit court issued an order striking out-of-state class members from the Anderson Complaint based on the South Carolina "Door Closing Statute."[2]  (Appellants' Br. 1; S.C. Code Anno. §15-5-150.)  This prompted S&R to file a second amended complaint in 1996 limiting the proposed class to buildings in South Carolina which did not include Appellants.  (Appellees' Br. 10.)  On February 9, 2001, the South Carolina circuit court entered an ex parte order conditionally certifying the state-wide class.[3]  (Appellants' Br. 2)  Shortly thereafter, on April 2, 2001, Grace filed its Chapter 11 petition.

Following Debtors' filing for bankruptcy, Debtors, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"),[4] and other interested parties worked with the Bankruptcy Court to establish a claims bar date, notice package, and comprehensive system of publication.  (Appellees' Br. 4; Appellants' Br. 2.)  Due to the complexity of the case, substantial effort was made to develop a proper notice plan.  On April 22,

---

2.  South Carolina's door closing statute reads "an action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court: (1) By any resident of this State for any cause of action; or (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within the State."  (S.C. Code Anno. §15-5-150.)

3.  The South Carolina circuit court issued a final order certifying a class of South Carolina building owners in July 2001, after Grace's Chapter 11 filing.  (Appellees Br. 11.)  The Bankruptcy Court and S&R agree that the final order applied only to the three remaining defendants in the South Carolina proceedings and not to Grace.  (Bankr. Doc. No. 13894, 11/20/06 Tr. at 80.)

4.  Daniel Speights of the S&R law firm serves as co-chair of the PD Committee.

2002, the Bankruptcy Court entered the Bar Date Order, setting March 31, 2003 as the bar date for filing Asbestos Property Damage Claims.  (Appellees Br. 5.)  The Bar Date Order also approved the notice plan negotiated by the PD Committee and the parties, calling for actual notice to roughly 200,000 known asbestos claimants combined with an extensive print media notice program.  (Appellees' Br. 4-5.)  The order also required actual notice to 9700 known asbestos property damage claimants, including all named parties to the handful of property damage cases pending when Grace filed its bankruptcy petition, and all known personal injury and property damage lawyers.  (Bankr. Doc. No. 13077, 8/21/06 Tr. at 251-52.) The lawyers were served with the understanding that they would best know of clients who might be interested in filing property damage claims.  (Id.)

The original Bar Date Order also "required all counsel of record for Asbestos PD Claimants to either (i) certify that they had contacted or attempted to contact their clients, provided them with the Bar Date Package and advised them regarding their rights to assert a claim against the Debtors before the Bar Date; or (ii) provide Grace with the current names and addresses of their clients who may have claims against Grace, so that Grace could send them the Bar Date Notice Package."  (Appellees' Br. 5.)  In September 2002, however, the Bankruptcy Court abated the requirement directing counsel for Asbestos PD Claimants to certify their actions, after the Court made clear and the PD committee acknowledged that the attorneys would bear the risk of claimants not receiving actual notice.  (Id. at 5-6.)

Following the Bar Order, S&R proceeded to file 2,938 asbestos property damage claims, none of which were personally signed by the actual claimants, but were rather signed by Daniel Speights and Amanda Steinmeyer of the S&R firm.  In re W.R. Grace & Co., 366 B.R.

302, 304 (Bankr. D. Del. 2007).  Once the bar date had passed, Debtors thereafter challenged

every Proof of Claim filed by S&R as unauthorized, prompting the Bankruptcy Court to issue an

Order instructing S&R to "catagorize all of its asbestos property damage claims based, <u>inter alia</u>,

upon the authority by which it had filed the claims."  (Appellants' Br. 4.)  For the forty-four

claims at issue here, S&R "provided written authorizations which are either undated or dated

after the March 31, 2003 bar date."  <u>W.R. Grace</u>, 366 B.R. at 304.  Simply put, the proofs of

claim were filed prior to the bar date, but S&R did not receive express authorization from

Appellants until after the bar date.  The Bankruptcy Court entered an order on April 17, 2007

disallowing and expunging these forty-four claims, finding that the post-bar date ratifications by

the forty-four Appellants were ineffective as a result of the intervening bar-date deadline.  <u>W.R.</u>

<u>Grace</u>, 366 B.R. 302.  This appeal followed, with Appellants raising the following specific

issues:

> (1)  Did the Bankruptcy Court err in expunging appellants' asbestos property damage
>
> claims on the basis that a putative class counsel did not have authority to file the claim on
>
> behalf of the claimant who was a member of the putative class?
>
> (2)  Did the Bankruptcy Court err in expunging the appellants' asbestos property damage
>
> claims on the basis that the appellants were precluded as a matter of law from ratifying a
>
> timely proof of claim filed on its behalf by putative class counsel of a class that included
>
> the claimant, even where the claimant/class member had received no direct or actual
>
> notice of the bar date from the Debtors?

(3)  Did the Bankruptcy Court err in expunging the appellants' asbestos property damage

claims without an evidentiary hearing or without making specific findings of fact as to

when the claimant received actual notice of the bar date?

The Court concludes that:  (1) S&R did not have authority to file claims on behalf of Appellants;

(2) Appellants' post-bar date express authorizations did not amount to effective ratifications; and

(3) Appellants were not known claimants entitled to actual notice.

## III.  STANDARD OF REVIEW

This Court must accept the Bankruptcy Court's factual determinations unless

those determinations are clearly erroneous.  See Fed. R. Bankr. P. 8013 ("Findings of fact,

whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . .

. .").  The Court reviews the Bankruptcy Court's legal decisions de novo.  In Re O'Brien Envtl.

Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

## IV.  DISCUSSION

The issues presented to this Court on appeal go hand in hand.  As noted above, the

first issue is whether S&R was authorized to file individual claims on behalf of the forty-four

Appellants.  If so, Appellants' proofs of claim would be timely and valid.  If, however, S&R was

not authorized to file proofs of claim on Appellants' behalf, the second issue the Court must

consider is whether Appellants' subsequent express authorizations apply retroactively to the date

of S&R's timely filing, acting as a ratification.  Such a determination would also make

Appellants' claims timely and valid.  On the other hand, if the Court were to find that the

ratifications were ineffective, the Court must inquire into whether Appellants were known

creditors who did not receive actual notice and therefore are entitled to file their proofs of claim after the bar date.  A discussion of each issue follows.

**A.  S&R was not authorized to file claims on behalf of Appellants.**

While it is undisputed that S&R timely filed individual proofs of claim on behalf of Appellants, the question remains of whether S&R was an authorized agent of each Appellant under Federal Rule of Bankruptcy 3001(b), thereby giving them the authority to file those individual proofs of claim.  Federal Rule of Bankruptcy 3001(b) provides that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent."  "An agent may file a proof of claim only for those individuals who have expressly authorized the agent to do so."  In re Standard Metals, 817 F.2d 625, 631 (10th Cir. 1987), vac'd on other grounds, 839 F.2d 1383 (1988).  "Rule 3001(b) allows a creditor to decide to file a proof of claim and to instruct an agent to do so; it does not allow an 'agent' to decide to file a proof of claim and then inform a creditor after the fact."  Id.

Appellants nonetheless argue that S&R's role as putative class counsel in the Anderson Memorial-South Carolina action authorized them to file proofs of claim on behalf of Appellants, despite not having express authority from Appellants in advance.  Appellants base their argument on, inter alia, the Seventh Circuit's ruling in In re Am. Reserve Corp., 840 F.2d 487, 493 (7th Cir. 1988), where the Court expressly held that class proofs of claim are permissible in bankruptcy.  In reaching this conclusion, the Court explained

> [t]he representative in a class action is an agent for the missing.  Not every effort to represent a class will succeed; the representative is an agent only if the class is certified.  Putative agents keep the case alive pending the decision on certification.  If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim; the putative agent never obtains "authorized agent" status.  If

> the court certifies the class, however, the self-appointed agent has become "authorized," and the original filing is effective for the whole class (the principals). It follows that there may be class proofs of claims in bankruptcy.

Id. (citations omitted). Appellants also point to rulings by the Sixth, Ninth, and Eleventh Circuits where similar conclusions were reached allowing for class proofs of claim in bankruptcy proceedings. See, Reid v. White Motor Corp., 886 F.2d 1462, 1470 (1989); In re Birting Fisheries, 92 F.3d 939, 939 (9th Cir. 1996) ("[W]e conclude that the bankruptcy code should be construed to allow class claims."); In re Charter Co., 876 F.2d 866, 876 (11th Cir. 1989) ("[A] proof of claim filed on behalf of a class of claimants is valid.")[5] Analogizing to these cases, Appellants make the argument that a putative class representative is an authorized agent in accordance with Rule 3001(b).

The Court finds Appellants' argument misplaced. Appellants rely on American Reserve, which reached its conclusion in the context of class proofs of claim. Despite this trend among the Circuit Courts towards permitting class proofs of claim in the bankruptcy context, the appeal before the Court presents a different issue. As Debtors point out, the inquiry "is not when or whether a bankruptcy court may recognize a class proof of claim, but rather whether counsel to a pre-Chapter 11 putative class action may unilaterally file individual proofs of claim on behalf of parties that were not and could not have been in the putative class." (Appellees' Br. 20.) Thus, with respect to individual proofs of claim, the agency relationship required by Rule 3001(b) cannot be sidestepped by putative counsel[6] arguing to be an agent for the missing,

---

5. The Third Circuit has not adopted the rule embodied in the Seventh Circuit's holding in American Reserve permitting class proofs of claim in bankruptcy proceedings.

6. Debtors argue that S&R is not putative class counsel for the Appellants as a result of them being dismissed from the Anderson Memorial-South Carolina action as out-of-state claimants under South Carolina's door closing statute.

(continued...)

because the proofs of claim are filed on behalf of individuals specifically identified by S&R for the purpose of filing the claims.

Under general agency principles, "a class representative cannot be considered the authorized agent of all of the creditors of the putative class." Standard Metals, 817 F.2d at 631. "An agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent to so act." Restatement (second) Agency § 15 (1958). "An agent has only the authority to do certain acts if the authority is given him by the principal prior to doing those acts, or if the principal ratifies those acts after the fact." Restatement 2nd Agency § § 15 and 82 (1958). "Attempts to file proofs of claim on behalf of individual class members have been rejected where there was no showing that each member of the class had authorized the 'agent' to file on his or her behalf." Standard Metals, 817 F.2d at 631 (citing In re Elect. Theatre Rests. Corp., 57 B.R. 147, 148-49 (Bankr. N.D. Ohio 1986)).

In the case at bar, Appellants' argument that S&R was acting for the missing holds no weight in the context of individual claims. As there was no other manifestation by each Appellant permitting S&R to act, the Court does not find that S&R was an authorized agent for purposes of filing the claims.

**B. Claimants' ratifications were ineffective.**

Having found that S&R's filing of proofs of claim on behalf of Appellants were unauthorized, the next issue presented on this appeal is whether Appellants' post-bar date

---

6. (...continued)
Debtors contend that the order was immediately appealable and Appellants elected not to file the appeal, thus precluding S&R from claiming they are putative representative to Appellants. (Appellees' Br. 18-19.) Debtors further claim that no Anderson Memorial class has ever been certified as to Grace, thus providing additional support for their contention that S&R is not putative class counsel to Appellants. (Appellees' Br. 18.) As the Court rules on other grounds, we do not address the merits of this argument.

authorizations of S&R's unauthorized acts amounted to an effective ratification. Such a determination would have the effect of retroactively applying the date of S&R's timely filings to Appellants untimely authorizations, thus making the proofs of claim valid. Ratification

> results when a principal affirms a previous unauthorized act by his agent. The effect of ratification is to give the principal's agent the authority to perform the unauthorized act as of the time the agent performed the unauthorized act. In essence, ratification by a principal of his agent's unauthorized act is equivalent to the agent having that particular authority from the beginning.

In re Packer Ave. Assocs., 1 B.R. 286, 292 (Bankr. E.D. Pa.1979) (internal citations omitted).

As noted by Appellants, bankruptcy proceedings frequently apply ratification principles. See Hager v. Gibson, 108 F.3d 35, 39-40 (4th Cir. 1997) ("The unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally."); In Re E. Supply Co., 267 F.2d 776, 778 (3d Cir. 1959) ("[T]he general rule that the ratification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done. In other words, . . . the ratification 'relates back' in time to the date of the act by the agent."); Boyce v. Chem. Plastics, 175 F.2d 839, 842 (8th Cir. 1949) ("[I]t is settled law that the unauthorized bringing of an action may . . . be ratified by the person in whose name it was brought so as to sustain the action from the beginning.").

Despite well established agency principles allowing for retroactive dating of a subsequent authorization of an unauthorized act, ratifications are deemed ineffective in the face of an intervening deadline. The Bankruptcy Court applied this principle in disallowing and expunging Appellants' claims. "If an act to be effective in creating a right against another or deprive him of a right must be performed before a specific time, an affirmance is not effective

9

against the other unless made before such a time." Restatement (Second) of Agency § 90 (1958).
See also Fed. Elect. Com'n v. NRA Political Victory Fund, 513 U.S. 88, 115 S. Ct. 537 (1994))
(concluding that the Solicitor General's subsequent authorization of the Federal Election
Commission's (FEC) unauthorized timely filing of a writ of certiorari did not relate back to the
date of FEC's unauthorized filing because the 90-day statutory period for filing certiorari
petitions had expired.)[7]; Town of Nasewaupee v. City of Sturgeon Bay, 251 N.W.2d 845, 948
(Wis. 1977) ("Ordinarily, a subsequent ratification relates back to the time of the original
transaction. However, that rule is not applicable when the rights of others have intervened by the
passage of time.").

Appellants argue that Federal Election is not applicable here because contrary to
the "strict jurisdictional requirements of the Supreme Court, the filing of a Proof of Claim
pursuant to a bar order is subject to much greater flexibility and equity." (Appellants' Br. 14.)
The Court disagrees. Appellants are correct that bar dates may be extended under certain limited
circumstances, as in cases of excusable neglect, but the facts presented here do not warrant such
flexibility. See Pioneer Investment Services v. Brunswich Asso., L.P., 507 U.S. 380, 113 S.Ct.
1489 (1993). As in Federal Election, allowing late authorizations here would effectively give
S&R the unilateral power to extend the bar date, and the rights of both the Debtors and the other
creditors who properly and timely filed their claims would be severely impaired by validating
Appellants' untimely claims. As the Bankruptcy Court stated:

---

7. In Federal Election, the Supreme Court reasoned that allowing the late authorization would grant the Solicitor
General unilateral power to extend the ninety-day statutory deadline. "It is essential that the party ratifying should be
able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made."
513 U.S. at 98 (quoting Cook v. Tullis, 85 U.S. (18 Wall.) 332, 338 (1873)).

> The creditors and bankruptcy court must be able to rely on a fixed financial position of the debtor in order to evaluate intelligently the proposed plan of reorganization for plan approval or amendment purpose. After initiating a carefully orchestrated plan or reorganization, the untimely interjection of an unanticipated claim, particularly a relatively large one, can destroy the fragile balance struck by all the interested parties in the plan.

(W.R. Grace, 366 B.R. at 307). Therefore, as a result of the intervening bar date, Appellants' express authorizations amount to ineffective ratifications, and Appellants' proofs of claim remain untimely.

### C. Appellants were unknown creditors at the time of the Bankruptcy Court's Bar Date Order and were therefore not entitled to actual notice.

The final issue presented on appeal is whether Appellants were known creditors and should have been afforded the opportunity to conduct discovery and present evidence of being known creditors. Despite Appellants' untimely proofs of claim, the Third Circuit has recognized that post-bar date claims are permissible if a claimant was a known creditor who did not receive actual notice of the bar order. Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995). Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date, while unknown creditors must be provided only with publication notice. Id. at 346. The Supreme Court has defined "a 'known' creditor as one whose identity is either known or 'reasonably ascertainable by the debtor.'" Id. (quoting Tulsa Prof'l Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988)). Conversely, "an 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" Chemetron, 72 F.3d at 346 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 659 (14950)). Therefore, in this case, as in Chemetron:

> If claimants were "known" creditors, then due process entitled them to actual notice of the bankruptcy proceedings. Absent such notice, their suit may proceed. If claimants were "unknown" creditors, however, then notice by publication was sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief.

Id. at 345-46.

In <u>Chemetron</u>, the Third Circuit also defined the parameters of a debtor's obligation to identify a known creditor.

> A creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts. Reasonable diligence does not require impracticable and extended searches . . . in the name of due process. A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.

<u>Chemetron</u>, 72 F.3d at 346 (internal citations and quotations omitted). Furthermore, the Third Circuit stated that "the requisite search [for a known creditor] focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." <u>Id.</u> at 347.

Appellants argue that they were known creditors entitled to actual notice and should have been afforded the opportunity to take discovery and make an evidentiary showing in this regard. They claim that Debtors maintained sales records for its asbestos-containing products, including thousands of purchase orders and billing invoices providing the physical address and owner's identification of buildings where Debtors' products were delivered. (Appellants' Br. 19.) Appellants continue by stating that "the names and addresses of hundreds of buildings where Grace's asbestos-containing products were installed are readily accessible and have been maintained by Grace in its litigation repository by its asbestos property damage

attorneys for over twenty years." (Id.) It is further argued by Appellants that Grace clearly had

knowledge that remaining, unlitigated buildings could have claims against them. (Id. at 20.)

Debtors, on the other hand, maintain that they have met the required reasonably

diligent standard with respect to notice. They contend that not only did they cease manufacturing

the products at issue almost thirty years prior to the bar date, but in the ensuing decades, many of

the buildings containing their products were demolished, sold, or had changed hands, often

repeatedly. (Appellees' Br. 24.)

In the face of this complexity, the Bankruptcy Court worked with the parties,

attorneys, and the Official Committee of Asbestos Property damage Claimants to develop a

workable notice package and system of publication. The Bankruptcy Court agreed that the most

practical solution was actual notice of the bar order to roughly 200,000 parties, including actual

notice to roughly 10,000 asbestos property damage claimants. (Bankr. Doc. No. 13077, 8/21/06

Tr. at 251-52.). The asbestos property damage claimants receiving actual notice included all

named parties to the property damage cases pending when Grace filed their bankruptcy petition,

as well as all known personal injury and property damage lawyers. (Id.) It was made clear to

claimants' attorneys, including Daniel Speights of S&R, that they had the responsibility to serve

their clients and would best know of clients who might be interested in filing property damage

claims. (Id.)

Applying Chemetron's detailed analysis to the present facts, it is apparent that

Appellants were not entitled to actual notice. Appellants state in their brief that Debtors

"conceded that no effort had been made to identify asbestos-property damage claimants from its

13

sales records, but argued that such an effort would have been unreasonable."[8]  (Appellants' Br. 3, (citing Bankr. Doc. No. 10014, pp. 2-5.))  Debtors' records of buildings and building owners to whom their products were sold to decades ago does little to assist in identifying claimants with reasonably diligent effort.  "Reasonable diligence does not require . . . [a] debtor . . . to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." Chemetron, 72 F.3d at 346 (internal citations omitted).  "Creditors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates."  Id. at 348.  As Debtors point out, they "would have been required to conduct searches for thousands of buildings where Grace asbestos containing building materials might have been installed."  (Appellees' Br. 23.)  The Court finds such a search to far exceed what constitutes reasonable diligence, and thus Appellants were not entitled to actual notice.

Furthermore, the Court will not giveAppellants the opportunity to conduct discovery and present evidence that they were in fact known creditors.  Given Grace's enormously vast database, the Bankruptcy Court placed a responsibility on already established creditors' attorneys to inform Debtors of additional known creditors.  S&R clearly had knowledge of Appellants' identities in order to file individual proofs of claim on their behalf, and therefore, the Court can only conclude that Appellants were in fact "known" by S&R despite not

---

8.  Appellants have provided an incorrect document number and thus the Court is unable to verify the accuracy of this alleged concession of Debtors given the thousands of dockets filed.  However, even accepting the statement as true, the Court maintains that reasonably diligent efforts do not require Debtors to have investigated and determined the current owners of thousands of buildings based on records indicating sales made there decades before.

being reasonably ascertainable via Debtors' records.  As the Bankruptcy Court noted, S&R purports to have had a fiduciary duty to file proofs of claim on Appellants' behalf, yet argue they did not have an obligation to notify Appellants of the bar date and ensure they received proper notice.  (Bankr. Doc. No. 13077, 8/21/06 Tr. at 255-59.)  The cour rejects this argument of Appellants.

## V.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's opinion is affirmed.  An appropriate order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MISSION TOWERS, | : | |
| | : | CIVIL ACTION NO.  07-287 |
| Appellant, | : | |
| | : | BANKRUPTCY CASE NO.  01-01139 (JKF) |
| v. | : | |
| | : | |
| W.R. GRACE, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## ORDER

AND NOW, this 6th day of December, 2007, upon consideration of Appellants'

Brief (Docket No. 7), Appellees' Brief (Docket No. 8), and Appellants' Reply Brief (Docket No.

15), it is hereby **ORDERED** that the Bankruptcy Court's order dated April 17, 2007 is

**AFFIRMED**.

BY THE COURT:


*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.

16